CHARLES T. WRIGHT, ESQ.
Nevada Bar No. 10285
AIMEE PULLEY, ESQ.
Nevada Bar No. 11246
PIET & WRIGHT
3130 South Rainbow Boulevard, Suite 304
Las Vegas, Nevada 89146
*Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | |
| FITZGERALD, RANDY | CASE NO.: BK-S-10-13624-BAM |
| FITZGERALD, TERESA | IN CHAPTER 11 PROCEEDINGS |
| Debtors. | |

## DEBTORS' DISCLOSURE STATEMENT

**TO THE HONORABLE BANKRUPTCY JUDGE BRUCE A. MARKELL, U.S.**

**BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA:**

**COME NOW**, Debtors in possession, Randy and Teresa Fitzgerald (hereinafter referred to as "Debtors"), by and through their attorneys, CHARLES T. WRIGHT, ESQ., and AIMEE PULLEY, ESQ., of the law firm of PIET & WRIGHT, respectfully submit this Disclosure Statement pursuant to the provisions of Section 1125 of Title 11 of the United States Bankruptcy Code.

### TABLE OF CONTENTS

I.      Introduction ........................................................................................................

II.     Nature of Chapter 11 Reorganization Proceedings .........................................

III.    Considerations in Voting on the Chapter 11 Plan ..........................................

IV.    History of the Debtors ......................................................................

    A.    Background ......................................................................

    B.    Events Leading to Chapter 11 Filing ................................................

    C.    Operation and Present Condition .......................................................

    D.    Significant Events Occurring in this Bankruptcy……………………

    E.    Management of Finances……………………………………………...

    F.    Prior Bankruptcy Proceedings……………………………………...

V.    Anticipated Future of the Debtor ..................................................................

VI.    Source of information for this Disclosure Statement .......................................

VII.    Disclaimer ..................................................................................................

VIII.    Professional Fees ......................................................................................

IX.    Description of Current Financial Condition .......................................................

    A.    Assets…………………………………………………………………...

    B.    Liabilities…………………………………………………………….

    C.    Feasibility of Future Success…………………………………………..

X.    Summary of Plan ........................................................................................

    A.    Unclassified Claims…………………………………………………….

        1.    Administrative Expenses …………………………………...

        2.    Professional Fees ……………………………………………

        3.    The United States Trustee …………………………………..

    B.    Classified Claims…………………………………………………….

        1.    Classes of Secured Claims ………………………………….

        2.    Taxing Authorities and Priority Claims …………………………

|  | 3. | Classes of Unsecured Claims …………………………………… |
| C. | | Other Provisions …..…………………………………………………... |
| XI. | | Pending Litigation ............................................................................... |
| XII. | | Alternatives to the Plan Proposed ...................................................... |
| A. | | Conversion ........................................................................... |
| B. | | Dismissal ............................................................................. |
| C. | | Default ................................................................................. |
| XIII. | | Federal Income Tax Consequences to Creditors ............................... |
| XIV. | | Means for Implementation and Execution of the Plan ....................... |
| XV. | | Modification of Disclosure Statement ............................................... |
| XVI. | | Disclosure Required by the Bankruptcy Code ................................... |
| XVII. | | Fraudulent and Preferential Transfers ............................................... |
| XVIII. | | Conclusion ......................................................................................... |

## NOTICE TO CREDITORS AND PARTIES IN INTEREST

**THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATIONS OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

## I.
## INTRODUCTION

On March 5, 2010, the Debtors filed a Voluntary Petition for Reorganization under Chapter 11 of the Bankruptcy Code (hereinafter referred to as the "Code"). The Debtors have

remained in possession of their property pursuant to the provisions of 11 U.S.C. §§1144 and 1107. These Bankruptcy Code Sections provide that the Debtors shall retain possession of and manage their property during the pendency of the Bankruptcy Proceeding. The Debtors have retained the law firm of Piet & Wright as Counsel for the Debtors under a general retainer. The law firm has continued to represent the Debtors in these proceedings.

The first meeting of creditors pursuant to §341 of the Code was held on the 15th day of April, 2010, at 3:00 P.M. at the Federal Courthouse in Las Vegas, Nevada, and concluded.

This Disclosure Statement ("Disclosure Statement") is provided pursuant to 11 U.S.C. §1125 to all of the Debtors' known creditors and other parties-in-interest in connection with the solicitation of acceptance of the Debtors' Plan of Reorganization (hereinafter referred to as the "Plan") filed by the Debtors In Possession. A Summary of the Plan, listing each class and treatment of class of creditors is set forth in this Disclosure Statement. In addition, a listing of each creditor, by class, payment method and amount is attached hereto as **Exhibit "A"** and fully incorporated herein by reference.

This Disclosure Statement contains important information about the Plan. The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable creditor typical of the holders of claims in this reorganization case to make an informed judgment in exercising its vote to either accept or reject the Plan. The Debtors have prepared this Disclosure Statement in order to disclose that information which, in their opinion, is material, important, and necessary to an evaluation of the Plan.

In order to be deemed adequate the Disclosure statement contains the following elements as applicable to these individual debtors:

1. The circumstances that gave rise to the filing of the Bankruptcy petition;
2. A complete description of the available assets and their value;

4

3.    The anticipated future of the Debtors;

4.    The source of information provided in the disclosure statement;

5.    The condition and performance of the Debtors while in chapter 11;

6.    Information regarding claims against the estate;

7.    A liquidation analysis of what creditors would receive under Chapter 7;

8.    The accounting and valuation methods used in producing this disclosure;

9.    Information on the anticipated future of the Debtors;

10.    A summary of the plan of reorganization;

11.    An estimate of administrative fees and expenses;

12.    Information that is relevant to the creditors' evaluation of the plan;

13.    Information as to the risks being taken creditors and interest holders;

14.    The tax consequences of the plan;

15.    The possible values that can be obtained from avoidable transfers;

16.    The relationship of the Debtors with affiliates

The following information that is normally provided has been omitted as it has been determined not to apply to these individual debtors:

1.  The collectability of accounts receivable

2.  The likelihood of success of any non-bankruptcy litigation

**THE PLAN IS NOT A PART OF THIS DISCLOSURE STATEMENT AND MUST BE REVIEWED INDEPENDENTLY**.

This Disclosure Statement must be approved by the Bankruptcy Court and/or District Court, after notice and hearing, prior to the solicitation of creditors with respect to their acceptance of the Plan, on October 4, 2010.

Your vote on the Plan is important. In order for the Plan to be deemed "accepted" by creditors, Sixty-Six and Two-Thirds Percent (66-2/3%) in amount of claims and more than Fifty Percent (50%) in number of claims voting in each class must accept the Plan. In the event the Plan is not accepted by any class, the Debtors will request confirmation of the Plan in

accordance with the provisions of 11 U.S.C. §1129(b). Whether or not you expect to be present at the Confirmation Hearing, you are urged to fill in, date, sign and properly mail the enclosed ballot to Charles T. Wright, Piet & Wright, 3130 South Rainbow Boulevard, Suite 304, Las Vegas, NV 89146; Attorney for the Debtors.

## PURPOSE OF THE DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the information which may be deemed material, important, and necessary to the creditors and security holders of the Debtors to make a reasonably informed decision in exercising their right to vote for acceptance of the Plan. The Disclosure Statement will explain the Plan and assist creditors in determining whether to vote for or against the Plan. This Disclosure Statement will describe the Debtors. Describe events that have occurred in the Bankruptcy case, and explain the Plan and how it works and how to vote for or against it. This Disclosure Statement will illustrate the feasibility of the Plan presented, as well as explain how the treat of each claim under the Plan compares to what a creditor would receive on its' claim if the estate were liquidated. In addition, this document will also describe the effect of confirmation of this plan.

## II.
## NATURE OF CHAPTER 11 REORGANIZATION PROCEEDINGS

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the rehabilitation and reorganization of financially distressed individuals and entities to maximize the return to the Debtors' unsecured creditors. The statutory aims of reorganization proceedings include the following:

    (a)    Preservation of the Debtors' property as a "going concern" and the preservation of any going concern value of the Debtors' business and property;

(b)      Avoidance of the forced and destructive liquidation of the Debtors' assets;

(c)      The protection of the interest of the creditors, both secured and unsecured;

(d)      The restructuring of the debts of the Debtors and their finances to enable them to retain those assets necessary to rehabilitate their finances and produce the greatest recovery for their creditors.

While the formulation and confirmation of a Plan of Reorganization is the principal function of a Chapter 11 case, Congress recognized in 11 U.S.C. Section 1123(a)(5)(d), that the sale of all or any part of the property of the estate and the distribution of all or part of the property of the estate among those having an interest in the property is also a legitimate function of a Chapter 11 proceeding. Therefore, a Plan may affect the interest of all parties and creditors, reject executory contracts, and provide for prosecution and/or settlement of the Debtors' claims against third parties. For a Plan to be confirmed by the Court, the Code requires that the Court find the Plan has received the favorable votes of certain requisite classes and the Plan is "fair, equitable and feasible," as to any dissenting classes of creditors. A more detailed description of the voting requirements of a Plan is set forth in this Disclosure Statement.

To be determined "fair and equitable", a Plan must comply with the "absolute priority rule". The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtors, each class in descending rank or priority must receive full and complete compensation before any inferior or junior classes may participate in the distribution. The Plan must be accepted by the affirmative vote of a majority of creditors holding two-thirds in amount of claims filed and allowed by each class, unless adequate provisions are made for the classes of descending creditors. The foregoing is a brief summary of the requirements for a Plan and should not be relied upon for voting purposes. Creditors are urged to consult their

own counsel before making any decisions on a Plan filed herein.

In addition to the above, 11 U.S.C. §1125 requires that the Debtors compile a Disclosure Statement which provides "adequate information" to creditors before anyone may solicit acceptance of a Chapter 11 Plan. This Disclosure Statement is prepared in accordance with Section 1125 to provide "adequate information" to the creditors in this proceeding. Creditors are urged to consult with their own individual counsel or each other and to review all of the pleadings filed in this bankruptcy proceeding in order to fully understand the disclosures made herein, the Plan of Reorganization filed herein, and any other pertinent matters in this proceeding.

This Chapter 11 proceeding is conducted under the supervision of a Bankruptcy Judge of the United States Bankruptcy Court for the District of Nevada.  Pursuant to the Code, the Court may:

(a)    Authorize the Debtors, as Debtors-in-Possession, to operate their business and manage their properties;

(b)    Permit rejection of executory contracts;

(c)    Authorize the Debtors to issue certificates of indebtedness;

(d)    Authorize the Debtors-in-Possession to lease or sell the properties of the debtors;

(e)    Grant or deny relief from the stay or any suit against the Debtors and of any acts or proceedings to enforce a lien against the Debtors' properties; and

(f)    Approve and confirm any Plans of Reorganization.

### III.
### <u>CONSIDERATIONS IN VOTING ON THE CHAPTER 11 PLAN</u>

Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts, and equity interests. A Chapter 11 Plan may provide less than full satisfaction of senior

indebtedness and payment of junior indebtedness or may provide for return of the stock in a Debtors' corporation to its equity owners absent full satisfaction of indebtedness provided that an impaired class does not vote against the Plan.

If an impaired class votes against the Plan, implementation of the Plan is not necessarily impossible. Provided that the Plan is fair and equitable and that each class is afforded treatment as allowed by and defined in the Bankruptcy Code, treatment of a particular class may be very broadly defined as providing to a creditor the full value of its claim. The value of that creditor's claim is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be confirmed over the dissent of that class, depending on junior claims and interests.

In the event a class is unimpaired, it is automatically deemed to accept the Plan. A class is unimpaired if:

(a)    Its rights after confirmation are the same as existed (or would have existed absent any default) before the commencement of the Chapter 11 case, that any existing defaults are cured or provided for under the plan, and the class is reimbursed actual damages; or

(b)    The allowed claims of the class are paid in full in cash as they are matured. If there is no dissenting class, the test for approval by the Court of a Chapter 11 Plan is whether the Plan is in the best interest of the creditors and interest holders and is feasible.

In simple terms, a Plan is considered by the Court to be in the best interest of creditors and interest holders if the Plan will provide a better recovery to the creditors and interest holders than they would obtain if the debtors were liquidated and the proceeds of the liquidation were distributed in accordance with the Bankruptcy liquidation priorities.  In other words, if the Plan provides creditors and interest holders with money or other property

of value exceeding the probable dividend in liquidation bankruptcy then the Plan is in the best interest of creditors and interest holders (the Court, in considering this factor, is not required to consider any other alternative to the Plan other than liquidation bankruptcy).

In considering feasibility, the Court is only required to determine whether the Plan can be accomplished by the Debtors. This entails determining:

(a)     The availability of cash for payments required at confirmation;

(b)     The ability of the Debtors to make payments called for under the Plan; and

(c)     The absence of any other factor which might make it impossible for the Debtors to accomplish that which it promises to accomplish in the Plan as contemplated in the Plan.

In addition, in order to confirm a Plan the Court must find, among other things, that the Plan was proposed in good faith and that the Plan and its proponent is in compliance with the applicable provisions of Chapter 11.

These determinations by the Court occur at the hearing on confirmation of a Plan. The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity interest or security interest issued to creditors under the Plan. Rather, the Court's judgment is merely that the Plan complies with the applicable Code provisions and has garnered sufficient votes by its creditors for confirmation.

**UPON SATISFACTION OF §1129(a) GENERAL CONFIRMATION STANDARDS, BUT EXCLUDING PARAGRAPH (8), THE DEBTORS MAY REQUEST THAT THE COURT CONFIRM THE PLAN OVER THE DISSENT OF A CLASS. THE COURT IS REQUIRED TO CONFIRM IF THE PLAN MEETS WITH THE CRAM DOWN STANDARDS SET FORTH IN §1129(b). THIS PROCEDURE IS THE PROCESS BY WHICH A DISSENTING CLASS OF CREDITORS OR INTERESTS IS BOUND BY THE TERMS OF A CHAPTER 11 PLAN WITHOUT**

ITS CONSENT. THIS PLAN MAY BE CONFIRMED WITH REFERENCE TO A NON-ACCEPTING IMPAIRED CLASS IF TWO STANDARDS ARE MET: (1) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AGAINST THE CLASS, AND (2) THE PLAN IS FAIR AND EQUITABLE WITH REFERENCE TO THE CLASS. UPON SUCH DETERMINATION, THE COURT WILL BIND THE DISSENTING CREDITOR(S) TO THE PLAN WITHOUT ITS CONSENT.

## IV.
## HISTORY OF THE DEBTORS

**A.      Background.**

Debtors have been married for twenty seven years and have six children. Debtors run a business, which they have operated for the past ten years, R& T Mailing.  As payment for their services rendered in operating said business, Debtors receive distributions from this business on a monthly basis.  These distributions and any income earned from the two rental properties are the Debtors' only sources of income.  The sum total of all income earned by the Debtors on a monthly basis are included in the petition and schedules on file herein, are incorporated herein by reference.

**B.      Events Leading to the Chapter 11 Filing.**

When the economy declined, the Debtors business suffered greatly, which in turn resulted in a drastic reduction in income to the Debtors.  In addition, the adjustable rae mortgages on the properties adjusted to much higher interest rates, and the Debtors were no longer able to turn a profit on their rental property, nor could they qualify for refinancing to fixed rate mortgages.  To make matters worse, when Teresa was pregnant, she had appendicitis which added a large amount of medical bills to the Debtors' already enormous obligations.  Unable to meet their expenses and wanting to retain their properties, the Debtors had no other choice but to file bankruptcy.

**C.      Operation and Present Condition.**

Since the bankruptcy, the Debtors have seen the market for their business begin to

level off and have made changes in order to maintain the business at this level long term. Debtors have experienced more financial stability since the filing of the bankruptcy and look forward to this reorganization as a means to further stabilize themselves.

Debtors' intent is to satisfy all secured claims as determined be 11 U.S.C. § 506 (a), pursuant to payments of principal and interest over the terms listed and identified under the respective class in a modified amount based on the current market interest rates.

Aside from the secured claims, Debtors proposed in the Plan to satisfy unsecured creditors through a five year disposable income plan, under which their "projected disposable income" as defined in 11 U.S.C. § 101 (10A) will be paid into the Plan, upon approval by the Court, to be divided pro rata among the unsecured claimants. *See* 11 U.S.C. 1129 (a)(15). Debtors are not planning any avoidable transfers or objections to claims at this time.

Debtors' post petition operations are clearly detailed on their Monthly Operating Reports, which are current through July 2010. These reports have indicated that the Debtors' cash flow has been adequate to provide for all payments on the properties, including principal, interest, taxes, insurance, property management, repairs, HOA fees, and maintenance. Debtors have sufficient net income per Schedules I and J, on file herein and incorporated by reference, to fund the proposed payments to unsecured creditors under the Plan, as further evidenced by the Cash Flow and Feasibility Analysis, attached hereto as **Exhibit "B."**

D.    **Significant Events Occurring in this Bankruptcy**

Since filing their Chapter 11 petition on March 5, 2010, the Debtors' efforts have been focused on the reorganization of their secured debt so they will be able to turn their properties profitable, which in turn combined with their income, will provide the cash flow necessary to fund the Plan.

The most significant events in Debtors' case is the approval and negotiated Stipulations of their Motions to Value Collateral, "Cram Down" and "Strip Off" and Modify Rights of Creditors pursuant to 11 U.S.C. § 506 (a) and § 1123 ("Motions to Value'). Through these Motions to Value, the Debtors will be able to turn their rental properties into break even or in some instances profitable investments.

To this date Debtors have gained approval from the Court to retain the law firm of Piet & Wright as their attorneys.

E.    **Management of Finances**

Both before and after the filing of the instant proceeding, Debtors have been managing their own affairs, both business and personal. There is currently no intention on the part of the Debtors to retain any financial manager to control their financial affairs, and consequently, they will continue to be their own manager.

As previously stated, in addition to their regular income through the business they operate, Debtors own two rental properties, both of which are currently occupied with paying tenants. Debtors expect, at the very least, to break even on each of these properties after the reduction of secured debt. Debtors will use any surplus in rental income in addition to their regular income to fund the payments to their unsecured creditors through the Plan.

F.    **Prior Bankruptcy Proceedings**

Debtors have not previously filed bankruptcy in any jurisdiction.

**V.**
**ANTICIPATED FUTURE OF THE DEBTOR**

Debtors plan to use their future income, both from the distributions from the business

they operate and the rental properties to fund the plan, based on the figures as set forth in the Cash Flow and Feasibility Analysis, attached hereto as "Exhibit "B."  With the adjusted values and the corresponding adjusted mortgages the Debtors will meet all obligations and achieve a monthly net profit that will cover management and repairs for the rental properties as well as their primary residence.

The Debtors anticipate their plans will be certain other than for any unforeseen downturn in the economy that is beyond the current worst estimates.

## VI
## SOURCE OF INFORMATION FOR THIS DISCLOSURE STATEMENT

The information contained herein has not been subject to a certified audit. Much of the information, descriptions, values and facts contained herein are derived from the Debtors' experience in their business, personal finances, and the unverified opinions of third parties. Accordingly, the Debtors do not warrant or represent that the information contained herein as correct, although great effort has been made to be accurate. This Disclosure Statement contains a summary of the Plan itself which is controlling in the event of any inconsistencies. Each creditor is urged to review the Plan prior to voting.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts as set forth herein since the date hereof. All the terms herein have the same meanings as in the Plan unless the context requires otherwise.

## VII
## DISCLAIMER

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR ASSETS,**

14

PAST OR FUTURE BUSINESS OPERATIONS, OR THE PLAN ARE AUTHORIZED NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. NEITHER THE DEBTOR NOR HIS COUNSEL CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY INACCURACY, ALTHOUGH HE DOES NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES. THE FACTUAL INFORMATION REGARDING THE DEBTORS, THE DEBTORS' ESTATE, THEIR ASSETS AND LIABILITIES HAVE BEEN DERIVED FROM THE DEBTORS' RECORDS, THE DEBTORS' SCHEDULES, PUBLIC RECORDS AND RELATED DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.

APPROVAL OF THIS DISCLOSURE STATEMENT IS NOT A FINDING BY THE COURT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE AND COMPLETE. FURTHER, APPROVAL OF THE DISCLOSURE STATEMENT IS NOT AN INDICATION BY THE COURT OF THE CONFIRMABILITY OF THE PLAN.

THE ABILITY OF THE DEBTORS TO ACHIEVE THEIR PROJECTIONS IS SUBJECT TO SUBSTANTIAL RISKS, THEREFORE, ANY PROJECTIONS PREPARED BY THE DEBTORS DO NOT CONSTITUTE A GUARANTY OF RESULTS.

## VIII.
## PROFESSIONAL FEES

The Debtors engaged the law firm of PIET & WRIGHT, under a general retainer to represent the Debtors in this Chapter 11 proceeding. The Court entered an order approving retention of the law firm on the 23rd day of April, 2010.  The Application to Employ was filed in the ECF system. Debtors' Counsel has not filed any interim applications, as of this date, for compensation. The Debtor anticipates his legal fees will be approximately $16,000.00 to $20,000.00, including the retainer of $7,000.00, which has not been drawn down by the law firm. An application shall be made to the court and only after court approval; with notice having been given to all creditors will any fees be taken. Fees paid to Debtors' Counsel shall remain in its trust account pending approval of the Counsel's fees by the Bankruptcy Court.

No professionals outside of those previously approved were paid to prepare any information in this disclosure statement and no additional estate monies were expended as fees expended to perform the liquidation analysis.

## IX
## DESCRIPTION OF CURRENT FINANCIAL CONDITION

### A.    ASSETS

The Debtors' assets consist of two pieces of improved real property, both located in Las Vegas, Nevada, with a total appraised value of approximately $543,000.00.  Both properties are single family homes, and are potential income generating rental properties, and as such both are currently occupied with paying tenants.

The rest of the Debtors' assets consist primarily of personal property which including vehicles, furnishings, low value electronic equipment, and standard household appliances. These assets are valued at approximately $25,000.00.

The Petition filed herein contains full descriptions of the property listed and is hereby incorporated herein.

### B.    LIABILITIES

The liabilities of the Debtors are set forth in Schedules D through F of the schedules filed herein, as well as in post-petition operating reports.  Those liabilities not listed as disputed are deemed allowed under 11 U.S.C. § 1111 (a).  The claims register in this case lists unsecured claims in the amount of $481,064.74 and secured claims in the amount of $767,352.52, and priority claims in the amount of $34,085.70.

Secured creditors holding an interest in a property that has been crammed down are entitled to a bifurcated claim under the Plan.  For each of these claims, the Plan provides, in

accordance with 11 U.S.C. § 1111 (b)(1)(A), that such creditors shall have a secured claim for the value of their claims as set forth in Article II of the Debtors' Plan.  These secured creditors will also have an unsecured claim for the balance of the claim over and above the value of the collateral.

The Plan proposes to bifurcate certain secured claims as detailed in Article II of the Debtors' Plan into secured and unsecured amounts.  Secured amounts are to be paid through equal monthly payments over no longer than 30 years.  Unsecured creditors are to be paid their pro rata share of Debtors' projected disposable income, in equal payments over no longer than 5 years.

Debtors believe the valuation of their assets, shown on the schedules and on the copies of the appraisals performed on the properties, attached hereto as **Exhibit "C,"** is a fair estimate if the assets were sold at full market value.  In the event, however, of the Debtors being converted to a Chapter 7 bankruptcy and the subsequent liquidation of this property, it is highly possible that a significantly lower value may be received for each property, especially in light of the present economic climate.  These properties are already over-encumbered, and a Chapter 7 bankruptcy would therefore likely bring no dividend to unsecured creditors.  Debtors believe they will achieve the greatest value for their property as well as the greatest recovery for creditors through the Plan which will be proposed herein.

## C.    FEASIBILITY OF FUTURE SUCCESS

The employment income of the Debtors and the rental income generated by the various properties are sufficient to cover necessary payments to all secured creditors, so they may be paid pursuant to the modified value of the various claims.  Other rental income will be used for the payment of taxes, insurance, maintenance and repairs, utilities, HOA fees, and all other necessary expenses for the properties.  The rents generated from each property

appear to be sufficient to cover these expenses plus principal and interest payments pursuant to the valuation per the appraisals.  Additionally, Debtors have income from their business and from the rental properties in the amount of approximately $15,242.00 per month.  After paying their personal expenses, Debtors have roughly $423.11 per month left to pay their unsecured creditors, which will be paid in 20 quarterly installments of $352.71 each. Debtors believe they have sufficient income other than rents to fund the obligations set forth in the Plan as proposed.  The Debtors have completed a Cash Flow & Feasibility Analysis which illustrates their ability to fund the Plan, which is attached hereto as **Exhibit "B."**

## X.
## SUMMARY OF THE PLAN

The following is a brief summary of certain provisions of the proposed Plan of Reorganization to assure that the creditors affected understand its provisions. This summary should not be considered as solicitation for acceptance of that Plan. Additionally, creditors should not rely on this summary to decide whether or not to vote in favor of or against the Plan, but are expressly referred to the Plan itself since it contains many provisions which will not be summarized herein.

The Debtors' Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

The Debtors have utilized actual appraisals and the amounts filed by creditors filing proofs of claims to establish the values for assets, liabilities, and property valuations. The accounting method used on these personal Debtors is the Cash reporting method.

**A.  Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They

may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Debtors did not place the following claims in any class:

### 1.  Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed and given priority under Section 507(a)(1-2) of the Bankruptcy Code.

#### a. Professional Fees

These expenses will consist of fees for services rendered and expenses incurred by the Court appointed Counsel and other professional persons for the Debtors prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid. The members of this class include Charles T. Wright, Esq., of the law firm of Piet & Wright, Lead Counsel for the Debtor.

All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtors to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. The anticipated total fees to be paid in this class are approximately $16,000.00 to $20,000.00, to the Debtors' Attorneys, inclusive of the retainer.  The anticipated payments on these claims are set forth on **Exhibit "A,"** attached hereto.

#### b. The United States Trustee

These expenses consist of the post confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk. These fees are based on the amount of disbursements made by the Debtors

and are paid on a quarterly basis. The Reorganized Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930 (a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Reorganized Debtors shall file with this Bankruptcy Court and shall serve on the United States Trustee a financial report for each month, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

In the event the Debtors owe pre-confirmation U.S. Trustee's fees on the date of confirmation, the Debtors shall pay all past-due fees to the U.S. Trustee on or before the date of the Plan.

## B.  Classified Claims

The following are the classes set forth in the Plan, and the proposed treatment they will receive under the Plan.

### 1.  Classes of Secured Claims

Allowed Secured Claims are claims secured by the property of the Debtors' bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under Section 506 of the Code.  The following list contains and identifies all classes containing Debtors' secured pre-petition claims and their proposed treatment under the plan:

**Class 1.**  Class 1 is impaired and consists of a secured claim, on the rental property of the debtors, located at 6960 Schrills Street, Las Vegas, Nevada 89118, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Residential Credit Solutions | 4.25% | 30 years | $318,000.00 | $1564.37 |

**Class 2.**  Class 2 is impaired and consists of a secured claim, on the rental property of the debtors, located at 652 Homewillow Avenue, Las Vegas, Nevada 89123, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Wells Fargo Home Mortgage | 4.25% | 30 years | $220,624.59 | $1085.34 |

**Class 3.**  Class 3 is impaired and consists of a secured claim, on the rental property of the debtors, located at 652 Homewillow Avenue, Las Vegas, Nevada 89123, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Wells Fargo Home Mortgage | 4.25% | 5 years | $4,375.41 | $81.07 |

Valuation was achieved through full property appraisals by licensed Nevada Appraisers, copies of which are attached hereto as **"Exhibit "C."** These claims are secured by UCC filing statements with liens against the real property against the debtors and will be paid monthly in the amounts listed above and for the time period specified for each loan.

Adequate protection orders entered into on these properties will terminate upon the acceptance of the plan and the regular payments will begin as detailed above in the 1st month following plan acceptance.  The debtors are responsible to pay all post petition taxes and will hold insurance on the subject properties.

In the event of a default, there will be full reinstatement of the collection powers and rights of these secured creditors as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the filing of Notices of Default and the powers of foreclosure and sale of the defaulted property.

**2.  Taxing Authorities and Priority Claims**

**Class 4.**  Class 4 is unimpaired as to the amount set forth on the claim filed which was categorized as a priority claim and consists of those taxes assessed and due and owing the

Internal Revenue Service, in the amount of $25,426.62.  Therefore, Debtors will pay the Internal Revenue Service for the full amount of taxes claimed as priority over a term of five years to include an interest rate of 4%, as follows:

| Taxing Authority | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Internal Revenue Service | 4.0% | 5 years | $25,426.62 | $468.27 |

**Class 5.**  Class 5 is unimpaired as to the amount set forth on the claim filed which was categorized as a priority claim and consists of those taxes assessed and due and owing the Nevada Department of Taxation, in the amount of $8,659.09.  Therefore, Debtors will pay the Internal Revenue Service for the full amount of taxes claimed as priority over a term of five years to include an interest rate of 4%, as follows:

| Taxing Authority | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Nevada Department of Taxation | 4.0% | 5 years | $8,659.09 | $159.47 |

Default of the Plan shall be defined as the failure of the proponent of the plan to make payments or perform any action required to be made under the terms of the confirmed plan.

In the event of a default, there will be full reinstatement of the administrative collection powers and rights of these ad valorem Taxing Authorities as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

A failure by the Reorganized Debtor to make a Plan payment to priority tax creditors pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) calendar days after service of a written notice of default from a priority tax creditor, then the priority tax creditor many (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under

applicable non-bankruptcy law of the tax creditor's state, and (c) seek such relief as may be appropriate in this Court.

### 3. Classes of Unsecured Claims

__Class 6.__  Class 6 consists of all unsecured creditor claims and the class is impaired.

The members in this class shall receive 1% of their claim. These claims shall be paid quarterly over a period of 5 years beginning in the first year of the Plan. The quarterly payment is anticipated to be in the amount of $352.71. A listing of each unsecured creditor, in this class, the payment method and amount is included in **Exhibit "A,"** attached hereto.

Further, pursuant to 11 U.S.C. § 1129 (a) (15), in the event an unsecured creditor objects to the confirmation of the Plan, the Court may still confirm the Plan, so long as the value of the property to be distributed is not less than the amount of the claim; or the value of the property to be distributed under the Plan is not less than the disposable income of the Debtors as defined in §1325 (b) (2), which the unsecured creditor would receive its pro rata share of in monthly payments over the five years following confirmation of the plan.  According to the Plan, Debtors will be paying approximately 1% of the unsecured claims in the amount of $352.71 per quarter.  In the event any creditor objects, that creditor would only receive their pro rate share of the Debtor's current monthly disposable income. Debtors' current disposable monthly income is $423.11, as set forth in **Exhibit "B,"** attached hereto.

Upon completion of the payments to the unsecured creditors in this class, at the end of five years, the Debtors will petition the Court for an Order Discharging any remaining claims.

### C.  Other Provisions

Notwithstanding confirmation of the Plan, the Court will retain jurisdiction (i) to determine the allowance of claims upon objection by a party-in-interest; (ii) to determine

requests for payment of administrative claims and expenses, including compensation, entitled to priority under §507(a)(i) of the Code; (iii) to resolve disputes regarding interpretation of the Plan; (iv) to modify the Plan; (v) to implement provisions of the Plan; (vi) to adjudicate any cause of action brought by the Debtors or Trustee as representatives of the estate; (vii) to enter a final decree; and (viii) for other purposes.

## XI.
## PENDING LITIGATION

At the time of filing, Debtors were not parties to any litigation.

## XII.
## ALTERNATIVES TO THE PLAN PROPOSED

The Debtors expect the Plan will enable it to realize the maximum benefits for all of its creditors. However, if the Plan is not confirmed, the Debtors will continue to seek other avenues for liquidation.

### A.    Conversion

In the event no suitable alternative can be found, the Debtors would be compelled, as well as obligated, to recommend the conversion of the Chapter 11 case to a case under Chapter 7, and a subsequent liquidation by a duly appointed or elected Chapter 7 trustee.

The plan provides that property of the estate will vest in the reorganized Debtors thirty days after entry of the final confirmation order. Creditors shall retain their ability to utilize rights under 11 U.S.C. Section 1112(b)(8). Upon a conversion of this case to Chapter 7, all property re-vested in the Debtors under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case. Although the Debtors are of the opinion that a straight liquidation of the assets would not be in the best interest of the creditors generally, the following is likely to occur:

(a)    The newly appointed Chapter 7 trustee would have to become familiar with the Debtors' operations in order to evaluate all of the Debtors' assets and liabilities;

(b)    In addition to the duplication of efforts that would transpire as a result of the Chapter 7 trustee having to review documents and interview persons in order to become sufficiently acquainted with the Debtors' business, the Chapter 7 trustee would likely retain professionals to aid in administering the estate;

(c)    An additional tier of administrative expenses entitled to priority over general unsecured claims would be incurred. Such administrative expenses would include Chapter 7 trustee's commissions and fees for the professionals likely to be retained; and

(d)    There would likely be no distribution at all to the creditors until the case is ready to be closed.

The Debtors will allow the creditors and parties-in interest to draw their own conclusions with respect to the delay associated with Chapter 7 liquidation. It is certain that the above factors would result in an additional dilution to the projected dividend. The Debtors believe that such a speculative projection should be made by the creditors themselves.

The Debtors believe if the assets of the Debtors were liquidated through a court trustee there would be no dividends to the unsecured creditors, for the following reasons:

1)  Secured creditors must be paid in full first from the sale of the encumbered assets before unsecured creditors may receive any funds.  Therefore, in the case of the a forced bankruptcy liquidation, little recovery, if any may be yielded for the unsecured creditors. Here, with no equity in any non-exempt assets, it is highly unlikely unsecured creditors would receive anything.

2)  All of Debtors' assets are exempt under the bankruptcy code.  The equity the Debtors have in any personal assets such as vehicles are well within the exemptions amounts provided by Nevada Statute.  All rental properties are over encumbered and have no equity, as set forth in the attached appraisals, attached hereto as **Exhibit "C."**

For the review of all creditors, Debtors have prepared a Liquidation Analysis, attached hereto as **Exhibit "D,"** which illustrates the likely outcome of a complete liquidation.

**B.      Dismissal**

Dismissal of the proceeding would, in the Debtors' opinion, lead to an unsatisfactory result. Dismissal would result in immediate state court filings against the debtor. Because all taxes owed by the Debtors are secured by all of the Debtors' business and personal property, no other assets would be available for the unsecured creditors to secure judgments against. Further, these actions would cause the Debtors to incur more expenses in the form of attorney's fees, etc., thereby leaving nothing for distribution to its creditors.

The Debtors have attempted to set forth possible alternatives to the proposed Plan. Accordingly, one should recognize that a vote against the Plan and the ultimate rejection of the Plan would not alter the present status of the Debtors. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan is rejected. If you believe one of the alternatives referred to above is preferable to the Plan and you wish to urge it upon the Court, you should consult your counsel.

Risk Analysis - The economy is the only risk posed to creditors that would result in an amendment or change in the Plan.

**C.      Default**

Upon confirmation of a Chapter 11 Plan, the Plan operates as a contract between the Debtors and its creditors. A default occurs if the Debtors fail to make any required payments contained in the Plan. Each creditor, regardless of class, has the right upon a default under the plan to notify the Debtors and their Counsel of the default and allow ten (10) days for the Debtors to cure such default. Notice of default must be made in writing to the Debtors and

their Counsel and mailed by certified mail, return receipt requested. The ten (10) day period shall begin on the date the Debtors execute the return receipt.

**Notice of default shall be delivered to the following:**

The Debtors:

Randy & Teresa Fitzgerald
802 Long Branch Drive
Henderson, Nevada 89014

and

Charles T. Wright, Esq.
Piet & Wright
3130 South Rainbow Boulevard, Suite 304
Las Vegas, Nevada 89146

If the Debtors fail to cure the default within the ten (10) day period, the Creditor sending notice of default has the right to bring a lawsuit in the State District Court against the Debtors or to apply to the Federal Bankruptcy Court for relief through dismissal of the Chapter 11 Proceeding.

**XIII.**
**FEDERAL INCOME TAX CONSEQUENCES TO CREDITORS**

The Debtors believe the following discussion generally sets forth the Federal income tax consequences to Creditors upon confirmation and consummation of the Plan. No ruling has been sought or obtained by the Debtors from the Internal Revenue Service ("IRS") with respect to any of these matters. The following discussion of Federal income tax consequences is not binding on the IRS and is general in nature. No statement can be made herein with respect to the particular Federal income tax consequences to any Creditor.

**AS A RESULT OF THE COMPLEXITY OF THE APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE, EACH CREDITOR IS URGED TO**

**CONSULT ITS OWN TAX ADVISOR IN ORDER TO ASCERTAIN THE ACTUAL TAX CONSEQUENCES TO IT, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAWS, OF CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Creditors may be taxed on distributions they receive from the Estate. The amount of the income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will depend upon the nature of the Claim of each particular Creditor. The method of accounting utilized by a Creditor for Federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Creditor distributee will be the difference between (i) the Creditor's basis for Federal income tax purposes, if any, in the Claim and (ii) the amount of the distribution received. Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which would otherwise generate ordinary income on the one hand or in payment of a Claim which would constitute a return of capital.

## XIV.
## <u>MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN</u>

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form as filed on _____, 2010.

## XV.
## <u>MODIFICATION OF DISCLOSURE STATEMENT</u>

The Debtors may propose amendments to or modifications of this Disclosure Statement at any time prior to the confirmation, with leave of the Court. After confirmation, the proponent may, with the approval of the Court, so long as it does not materially or adversely

affect the interests of the creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the Order Confirming Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

## XVI.
## DISCLOSURE REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires the disclosure to the Bankruptcy Court of payments made or promised of the kind as set forth in Section 1129(a)(5) of the Bankruptcy Code. The Debtors retained Charles T. Wright, Esq., of the law firm of PIET & WRIGHT, as Bankruptcy Counsel under a general retainer of $7,000.00. The Debtors further agreed to pay PIET & WRIGHT, attorney or paralegal hourly rates for representation in excess of the general retainer. The Bankruptcy Code requires that the Court approve all professional fee applications prior to payment by the Debtors. Therefore, subject to Court approval, the Debtors have agreed to pay for the actual services rendered for representation in this bankruptcy case.

## XVII.
## FRAUDULENT AND PREFERENTIAL TRANSFERS

To the best of Debtors' knowledge and belief there have not been any fraudulent or preferential transfers within one year of the bankruptcy filing.

## XVIII.
## CONCLUSION

The Debtors believe approval of their proposed Plan will provide an opportunity for their creditors to receive more money in the foreseeable future on their claims than would be received in a straight liquidation by a trustee in a Chapter 7 case or from a distress sale of all the assets. If the Plan is not approved, the Debtors will continue to seek other reorganization alternatives, but liquidation might ensue, with the consequences as discussed above in relation to the liquidation alternative.

This Disclosure Statement is subject to the approval by the Bankruptcy Court after notice and hearing.

**THE APPROVAL BY THE UNITED STATES BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE DEBTORS' PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN**.

The Plan of Reorganization contains additional provisions and each creditor should review the provisions of the Plan with particularity.

Respectfully submitted on September 3, 2010.

 /s/  Charles Todd Wright
Charles T. Wright, Esq.
Piet & Wright Attorneys at Law
3130 South Rainbow Boulevard, Suite 304
Las Vegas, NV 89146
Phone:  702-566-1212
Fax:  702-566-4833

# EXHIBIT A

## LIST OF CLASSES, CREDITORS, CLAIMS, AND PAYMENTS

| Class | Creditor | Payment Method & Amount | | | Claim Amount |
|---|---|---|---|---|---|
| | | Method | Term | Amount | |
| Unclassified | Professional Fees | Monthly | TBD | $ 1,000.00 | $16,000.00 - $20,000.00 |
| Unclassified | United States Trustee | Quarterly | TBD | TBD | N/A |
| Class 1 | RCS (Schrills) | Monthly | 30 years | $ 1,564.37 | $318,000.00 |
| Class 2 | Wells Fargo (Home Willow) | Monthly | 30 years | $ 1,085.34 | $220,624.59 |
| Class 3 | Wells Fargo (Home Willow - 2nd Mortgage) | Monthly | 5 years | $ 81.07 | $4,375.41 |
| Class 4 | IRS | Monthly | 5 years | $ 468.27 | $25,426.62 |
| Class 5 | Nevada Department of Taxation | Monthly | 5 years | $ 159.47 | $8,659.09 |
| Class 6 | RCS (Schrills - 1st Mortgage) | Quarterly | 5 years | $ 352.71 | $352,574.24 |
| Class 6 | Ocwen Loan Servicing (Home Willow - 2nd Mortgage) | | | | $51,170.68 |
| Class 6 | Wells Fargo (Home Willow - 2nd Mortgage) | | | | $173,181.84 |
| Class 6 | IRS | | | | $552.76 |
| Class 6 | Pitney Bowes | | | | $120,114.07 |
| Class 6 | GE Consumer Finance | | | | $5,463.65 |
| Class 6 | Nevada Department of Taxation | | | | $988.83 |
| Class 6 | Capital One Bank | | | | $1,371.19 |

**EXHIBIT B**

**CASH FLOW & FEASIBILITY ANALYSIS**

## CASH FLOW & FEASIBILITY ANALYSIS

**Note Regarding Dependence on Assumptions:**  The Cash Flow Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the Debtors' and their advisors, are inherently subject to significant economic, business, and competitive uncertainties and contingencies beyond the control of the Debtors.  The Cash Flow & Feasibility Analysis is also based on the Debtors best judgment of how likely it is that they will be able to retain the same level of income throughout the life of their Plan and not have their workload and income reduced.  Accordingly, there can be no assurance that the cash flow estimates provided in this analysis would be realized if the Debtors were unable to maintain their current income and actual results could vary materially and adversely from those contained herein.

      The first table below entitled "Current Monthly Income & Expenses," illustrates the current financial situation of the Debtors per the terms of the Plan of Reorganization.  This is chart is based on the presumption that the current tenants of the rental properties will continued to pay rent timely and as contracted, and no unforeseen expenses arise, such as repairs or a drop in income of either of the Debtors.  The second table below entitled "Potential Monthly Income & Expenses," illustrates the Debtors' best estimate as to their potential or future income over the five years of the plan, based on the assumption that all properties will be rented for at least the current market value.  Again, the figures presented do not account for any unforeseen expenses or for the event of a tenant's failure to pay the contractual rent.  The third and final table in this analysis entitled "Personal Monthly Expenses Breakdown," provides a detailed breakdown of the personal expenses of the Debtor which includes the monthly plan payments to the unsecured creditor class, the monthly payments towards the arrears of homeowner association dues, monthly payments to Debtors' attorney, and quarterly fees to the U.S. Trustee.

      Based on the figures set forth in these three tables, it is Debtors' contention as stated in the Disclosure Statement, that this plan is feasible and will allow the Debtors' to potentially earn enough income to properly maintain these rental properties as well as create a fund for repairs and renovations needed.

**Cash Flow & Feasibility Analysis**

**Randy & Teresa Fitzgerald**

**Current Monthly Income & Expenses**

**Monthly Income**

| | | |
|---|---|---|
| Distributions from Business | $ 12,117.00 | |
| Rental Income: | | |
|     Homewillow | | $ 1,450.00 |
|     Schrills | | $ 1,675.00 |
| **Total Income** | **$ 15,242.00** | |

**Monthly Expenses**

| | | |
|---|---|---|
| Mortgages - Rentals: | | |
|     Homewillow | | $ 1,166.41 |
|     Schrills | $ 1,564.37 | |
| Property Taxes - Rentals | | |
|     Homewillow | | $ 220.46 |
|     Schrills | $ 317.03 | |
| Property Insurance - Rentals | $ 207.89 | |
| Maintenance - Rentals | $ 200.00 | |
| HOA Fees - Rentals | | |
|     Homewillow | | $ 23.33 |
|     Schrills | $ - | |
| Advertising - Rental | $ 50.00 | |
| Personal Living Expenses ( See below table showing breakdown) | $ 11,069.41 | |
| **Total Expenses** | **$ 14,818.89** | |
| | | |
| ***Current Monthly Cash Flow*** | **$ 423.11** | |

**Cash Flow & Feasibility Analysis**

**Randy & Teresa Fitzgerald**

**Potential Monthly Income & Expenses**

| Monthly Income | | |
|---|---|---|
| Distributions from Business | $ 12,117.00 | |
| Rental Income: | | |
| Homewillow | | $ 1,450.00 |
| Schrills | | $ 1,675.00 |
| **Total Income** | | **$ 15,242.00** |

| Monthly Expenses | | |
|---|---|---|
| Mortgages - Rentals: | | |
| Homewillow | | $ 1,166.41 |
| Schrills | $ 1,564.37 | |
| Property Taxes - Rentals | | |
| Homewillow | | $ 220.46 |
| Schrills | $ 317.03 | |
| Property Insurance - Rentals | $ 207.89 | |
| Maintenance - Rentals | $ 200.00 | |
| HOA Fees - Rentals | | |
| Homewillow | | $ 23.33 |
| Schrills | $ - | |
| Advertising - Rental | $ 50.00 | |
| Personal Living Expenses ( See below table showing breakdown) | $ 11,069.41 | |
| **Total Expenses** | | **$ 14,818.89** |

| | | |
|---|---|---|
| ***Potential Monthly Cash Flow*** | | **$ 423.11** |

**Cash Flow & Feasibility Analysis**

**Randy & Teresa Fitzgerald**

**Personal Monthly Expenses Breakdown**

| | | |
|---|---|---:|
| Rent | $ | 1,250.00 |
| Utilities - Gas & Electric | $ | 1,000.00 |
| Water | $ | 400.00 |
| Telephone | $ | 50.00 |
| Trash & Sewer | $ | 25.00 |
| Home Maintenance | $ | 245.00 |
| Automobile Insurance | $ | 375.00 |
| Car Maintenance & Gasoline | $ | 500.00 |
| Cable/Internet | $ | 50.00 |
| Health & Medical | $ | 400.00 |
| Life Insurance | $ | 200.00 |
| Health Insurance | $ | 200.00 |
| Groceries | $ | 2,000.00 |
| Personal | $ | 310.00 |
| Trustee's Fees | $ | 216.67 |
| Attorneys Fees | $ | 1,000.00 |
| Charitable Contributions | $ | 1,620.00 |
| Internal Revenue Service | $ | 468.27 |
| Nevada Department of Taxation | $ | 159.47 |
| Monthly Assessed Taxes | $ | 600.00 |
| **Total Expenses** | **$** | **11,069.41** |

**EXHIBIT C**

**APPRAISALS FOR REAL PROPERTY AS LISTED ON SCHEDULE A**

# APPRAISAL REPORT OF

**Randall and Teresa Fitzgerald**

**652 Homewillow Ave.**

Las Vegas, NV 89123

# AS OF

March 15, 2010

# PREPARED FOR

**Teresa Fitzgerald**
**Randall and Teresa Fitzgerald**
6960 Schirlls St.
Las Vegas, NV 89118

# PREPARED BY

**B. Kent Vollmer**
**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118



**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118
(702) 876-7799

March 25, 2010

**Randall and Teresa Fitzgerald**
6960 Schirils St.
Las Vegas, NV 89118

RE:     **Randall and Teresa Fitzgerald**
        **652 Homewillow Ave.**
        Las Vegas, NV 89123
File No.  2010020320
Case No.

Dear  Teresa Fitzgerald,

In accordance with your request, I have personally inspected and prepared an appraisal report of the real property located at:

### 652 Homewillow Ave., Las Vegas, NV 89123

The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation of the property.  The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of  **March 15, 2010** is:

### $ 225,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this report.

It has been a pleasure to assist you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _B.K.Vollmer_

**B. Kent Vollmer**
American Real Estate Appraisal

File No.  2010020320
Case No.

## Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | City | Las Vegas | State | NV | Zip Code | 89123 |
| Owner | Randall and Teresa Fitzgerald | Intended User | Randall and Teresa Fitzgerald | County | | | Clark |

Legal Description     Crystal Springs R-2 #22 TM #15 Plat Book 105 Page 4 Lot 6 Block 7
Assessor's Parcel #     177-22-213-006     Tax Year   2010     R.E. Taxes $     3,123.32
Neighborhood Name     Crystal Springs     Map Reference     Census Tract     0028.33
Occupant [ ] Owner [X] Tenant [ ]  Vacant  Special Assessments $     None     PUD   HOA $     [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Intended Use     Bankruptcy Settlement
Client     Randall and Teresa Fitzgerald     Address     6960 Schirlls St., Las Vegas, NV 89118
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No.
Report data source(s) used, offerings price(s), and date(s).  GLVAR MLS Services.

**CONTRACT**

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $     Date of Contract     Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| | | PRICE | AGE | One-Unit | 80 % |
| Location [X] Urban [ ] Suburban [ ] Rural | Property Values [ ] Increasing [ ] Stable [X] Declining | $ (000) | (yrs) | 2-4 Unit | % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [ ] In Balance [X] Over Supply | 25 Low | 1 | Multi-Family | 5 % |
| Growth [ ] Rapid [ ] Stable [X] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 609 High | 47 | Commercial | 5 % |
| Neighborhood Boundaries  Neighborhood is bounded on the north by Windmill Lane, to the south by | | 140 Pred. | 10 | Other Vacant | 10 % |

Cactus Avenue, to the west by Las Vegas Blvd., and to the east by Eastern Avenue.
Neighborhood Description  Area is located approx 10 miles south of the Las Vegas CBD in the Paradise Township.  Area consists of avg to good quality production homes in average condition.  Area is mostly developed.  Freeway access is 2 miles.  All other facilities such as schools, shopping, churches, and employment are within acceptable distances.
Market Conditions (including support for the above conclusions)  The greater Las Vegas Housing Market has been in a depressed state since late 2006, with over 19,000 homes for sale through MLS.  This has created a "buyers market" and depressed prices.  The is in reaction to the heated appreciation rates from 2003 to 2006.  Market activity is depressed.

**SITE**

| | | | | | |
|---|---|---|---|---|---|
| Dimensions | Irregular - See Plat Map | Area | 6,970 SqFt | Shape | Irregular | View | Residential |

Specific Zoning Classification     R-2     Zoning Description     Medium Density Residential
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street | Asphalt | X | |
| Gas | X | | Sanitary Sewer | X | | Alley | | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone     Zone X     FEMA Map #     32003C 2569 E     FEMA Map Date     9/2/2002
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.
No adverse easements or encroachments observed.  Site is a large interior residential lot.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls  Concrete/Avg | Floors  Carpet/C. Tile/Avg |
| # of Stories  2 Story | [ ] Full Basement [ ] Partial Basement | Exterior Walls  Frm/Stucco/Avg | Walls  Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area  sq. ft. | Roof Surface  Conc. Tile/Avg | Trim/Finish  Wood/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish  % | Gutters & Downspouts  None | Bath Floor  Carpet/Ceramic Tile/Avg |
| Design (Style)  Conventional | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type  Alum. Slider/Avg | Bath Wainscot  Fiberglass/C.Tile/Avg |
| Year Built  2004 | Evidence of [ ] Infestation | Storm Sash/Insulated  Insulated | Car Storage  None |
| Effective Age (Yrs)  6 | [ ] Dampness [ ] Settlement | Screens  Screens/Avg | [X] Driveway  # of Cars  2 |
| Attic  None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities  Woodstove(s) # | Driveway Surface  Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel  Gas | [X] Fireplace(s) #  [X] Fence Conc. Block | [X] Garage  # of Cars  2 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck  Open [X] Porch  Covered | [ ] Carport  # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool  Pool/Spa [ ] Other | [ ] Att. [ ] Det. [X] Built-In |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | |

Finished area above grade contains:   9   Rooms   4   Bedrooms   3.00   Bath(s)   2,744   Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.)  See Attached Comments.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  No functional, physical or external inadequacies observed.  Home is rated average condition.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe

American Real Estate Appraisal

File No.    2010020320
Case No.

## Residential Appraisal Report

There are   21   comparable properties currently offered for sale in the subject neighborhood ranging in price from $   195,000   to $   299,000
There are   33   comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $   180,000   to $   329,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 652 Homewillow Ave. | 195 Apache Tear Ct. | | 9194 Cazador St. | | 9232 Marlia St. | |
| | Las Vegas, NV 89123 | Iron Horse Est | | Crystal Springs | | Crystal Springs | |
| Proximity to Subject | | 0.87 miles W | | 0.16 miles E | | 0.10 miles SW | |
| Sale Price | $ | | $ 210,000 | | $ 226,000 | | $ 219,000 |
| Sale Price/Gross Liv. Area | $ 0sq. ft. | $ 90.24 sq. ft. | | $ 93.12 sq. ft. | | $ 90.23 sq. ft. | |
| Data Source(s) | Subject | M.L.S. #1000198 | | M.L.S. #1003506 | | M.L.S. #903526 | |
| Verification Source(s) | Inspection | Doc. #20100126:04011 | | Doc. #20100304:02132 | | Doc. #20100211:00651 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | F.H.A./REO | | F.H.A. | | F.H.A./Short Sale | |
| Concessions | | Seller Pd $3,738 | | No Seller Pts. | | Seller Pd $3,766 | |
| Date of Sale/Time | 3/15/2010 Insp | 12/18/09; 1/26/10 | | 1/9/10; 3/4/10 | | 10/1/09; 2/11/10 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,970 SqFt | 8,184 SqFt | -1,214 | 6,137 SqFt | +833 | 6,534 SqFt | +436 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 6 yrs | 11 yrs | | 8 yrs | | 7 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9  4  3.00 | 7  4  3.00 | 0 | 8  4  3.00 | 0 | 8  4  3.00 | 0 |
| Gross Living Area | 2,744 sq. ft. | 2,327 sq. ft. | +10,425 | 2,427 sq. ft. | +7,925 | 2,427 sq. ft. | +7,925 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2-Garage | 3-Garage | -3,000 | 2-Garage | 0 | 2-Garage | 0 |
| Porch/Patio/Deck | Patio,Porch | Patio,Porch | | Patio,Porch | | Patio,Porch | |
| Fireplace(s) | 0-Fireplace | 1 Fireplace | -1,500 | 1 Fireplace | -1,500 | 0-Fireplace | 0 |
| Pool | Pool/Spa | Pool/Spa | | Pool | | Pool/Spa | |
| Landscaping | Front/Rear | Front/Rear | | Front/Rear | | Front/Rear | |
| Net Adjustment (Total) | | X + - | $ 4,711 | X + - | $ 7,258 | X + - | $ 8,361 |
| Adjusted Sale Price | | Net Adj: 2% | | Net Adj: 3% | | Net Adj: 4% | |
| of Comparables | | Gross Adj: 8% | $ 214,711 | Gross Adj: 5% | $ 233,258 | Gross Adj: 4% | $ 227,361 |

I  X did        did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did  X  did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
My research  X did  did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | 9/23/2008 | 6/11/2009 | N/A |
| Price of Prior Sale/Transfer | N/A | $275,000 Trustees Deed | $165,500 Trustees Deed | N/A |
| Data Source(s) | Clark County Assessor | Clark County Assessor | Clark County Assessor | Clark County Assessor |
| Effective Date of Data Source(s) | 3/25/2010 | 3/25/2010 | 3/25/2010 | 3/25/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Prior transfers reflect the depressed state of the current market.

Summary of Sales Comparison Approach  Sales were researched throughout the subject's market area.  Site area differences have been adjusted at $1/SF.  GLA differences have been adjusted at $25/SF.  All other adjustments reflect typical market reactions to basic amenity differences.  Sale comps provide an indicated range of values of $214,711 to $233,258.  After careful consideration of all influencing factors, a final estimate value of $132,000 is arrived at.

Indicated Value by Sales Comparison Approach $   225,000
Indicated Value by: Sales Comparison Approach $   225,000    Cost Approach (if developed) $   0    Income Approach (if developed) $   0
Market analysis is the best approach to a residential valuation.  Income approach is not consistent and data is minimal.  Cost approach is not considered.

This appraisal is made  X  "as is,"      subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,      subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or      subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Appraisal is made as is.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   225,000   , as of   March 15, 2010   , which is the date of inspection and the effective date of this appraisal.

Res der val  9 2007

American Real Estate Appraisal

File No.    2010020320
Case No.

## Residential Appraisal Report

The subject property is improved with a two-story average quality production built residence with frame and stucco exterior, concrete tile roofing and built-in two-car garage with extended bay. Rear yard is fenced with concrete block wall fencing along the rear and sides. Inground pool/spa with diving board, gas heat, air blower, colorized concrete surround. Large covered entry porch and open concrete patio in the rear yard. Front and rear yard landscaping is desert rock, grass and shrubs.

Living room has carpet flooring, 2 story ceiling. Kitchen has ceramic tiled countertops, maple colored cabinets.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED | REPRODUCTION OR | REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | |
|---|---|---|---|---|---|---|---|
| Source of cost data | | | Dwelling | 2,744 | Sq. Ft @ $ | =$ | |
| Quality rating from cost service | | Effective date of cost data | | | Sq. Ft @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | Sq. Ft @ $ | | |
| COST APPROACH WILL CARRY NO WEIGHT IN THIS APPRAISAL | | | Garage/Carport | 556 | Sq. Ft @ $ | =$ | 0 |
| | | | Total Estimate of Cost-new | | | =$ | 0 |
| | | | Less   Physical  11 | Functional | External | | |
| | | | Depreciation   0 | 0 | 0 | =$ ( | 0 |
| | | | Depreciated Cost of Improvements | | | =$ | 0 |
| | | | "As-is" Value of Site Improvements | | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only) | 50 | Years | Indicated Value By Cost Approach | | | =$ | 0 |

### INCOME APPROACH TO VALUE (if applicable)

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | 0 | Indicated Value by Income Approach |
|---|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)   Rental Data Attached.

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowner's Association (HOA)? | Yes | X | No | Unit type(s) | X | Detached | | Attached | |

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | | Total number of units | | Total number of units sold | |
| Total number of units rented | | Total number of units for sale | | Data source(s) | |

| Was the project created by the conversion of existing building(s) into a PUD? | Yes | | No  If Yes, date of conversion. |
| Does the project contain any multi-dwelling units? | Yes | | No   Data source. |
| Are the units, common elements, and recreation facilities complete? | Yes | | No  If No, describe the status of completion. |

| Are the common elements leased to or by the Homeowner's Association? | Yes | | No   If Yes, describe the rental terms and options |

Describe common elements and recreational facilities.

American Real Estate Appraisal

File No.   2010020320
Case No.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**DEFINITION OF MARKET VALUE:** As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

American Real Estate Appraisal

File No.    2010020320
Case No.

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

American Real Estate Appraisal

File No.    2010020320
Case No.

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name **B. Kent Vollmer** | Name |
| Company Name **American Real Estate Appraisal** | Company Name |
| Company Address **6441 Crystal Dew Dr.** | Company Address |
| **Las Vegas, NV 89118** | |
| Telephone Number **702-876-7799** | Telephone Number |
| Email Address **Kent@VollmerOnline.Net** | Email Address |
| Date of Signature and Report **March 25, 2010** | Date of Signature |
| Effective Date of Appraisal **March 15, 2010** | State Certification # |
| State Certification # **A.00111-CG** | or State License # |
| or State License # **Certified General** | State |
| or Other (describe) **State #   NV** | Expiration Date of Certification or License |
| State **NV** | |
| Expiration Date of Certification or License **4/30/2011** | |

ADDRESS OF PROPERTY APPRAISED
**652 Homewillow Ave.**
**Las Vegas, NV 89123**

APPRAISED VALUE OF SUBJECT PROPERTY $   **225,000**

CLIENT
Name **Teresa Fitzgerald**
Company Name **Randall and Teresa Fitzgerald**
Company Address **6960 Schills St.**
**Las Vegas, NV 89118**
Email Address

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

NL - General Certification 5/2007        This form may be reproduced unmodified without written permission, however Bradford Technologies Inc. must be acknowledged and credited

American Real Estate Appraisal
**ASSESSORS RECORD**

File No.    2010020320
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | | | Randall and Teresa Fitzgerald | | | | |
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirils St., Las Vegas, NV 89118 | | | |

---

### CLARK COUNTY PROPERTY

| | | | | | |
|---|---|---|---|---|---|
| Parcel # | 177-22-213-006 | Address | 652 HOMEWILLOW AVE | | |
| | | PropCity | **LAS VEGAS** | Zip Cd | 89123-3715 |
| TN-RG-SE | 22- 61.0- 22 | Tax Dist | PARADISE TOWN | ReAssd | 2009 |
| Tot Value | $106,576 | Land Use | 1100100001/SFR | Update | 03/19/10 |
| GEO Id | PT S2 NW4 22-61.0-22 | | | Status | |

#### ASSESSOR DESCRIPTION

| | | | | | | |
|---|---|---|---|---|---|---|
| File-Page | PB 0105-0004 | Subdivision | / CRYSTAL SPRINGS R-2 #22 TM #15 | | | |
| Assr Lot | 6 | Block | 7 | Phase | Bldg | Unit |
| Assr Apt | | Parcel | | Area | Tract | Outlot |
| Assr Desc | CRYSTAL SPRINGS R-2 #22 TM #15 PLAT BOOK 105 PAGE 4 | | | | | |
| | LOT 6 BLOCK 7 | | | | | |

#### OWNER & DOC INFORMATION

| | | ETAL | DOC DATE | DOC NUMBER | DV | M.I. |
|---|---|---|---|---|---|---|
| Owner Name | FITZGERALD RANDALL S & TERESA | N | 11/17/03 | 2003111702584 | | 0 |
| 2nd Owner | | | 03/08/02 | 2002030801983 | N | 0 |
| Address (S) | 652/ HOMEWILLOW/ AV | | | | | |
| City | LAS VEGAS | State | NV | Zip Code | 89123- 3715 | |
| Prev Owner | PARDEE HOMES NEVADA | | | | | |
| Own Phone | | | Tenant Phone | | | |

#### LAND & BUILDING INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Land Value | $17150 | | | | Nuisance | | |
| Front/Depth | | | | | | | |
| Acres | 0.16 | Irregular | | Add Parking | | St Lights | |
| Lot Sqft | 6970 | Zoning/Util | | Rec Area | | Curb Gutt | |
| Topography | | Str Paved | | Sidewalks | | Traffic | |
| Schools | | View | | | | Landscaping | |
| Shopping | | | | Metro Map | 85- A1 | Area | 303 |
| Impr Value | $89,426 | Act Yr Blt | 2004 | Carpet | 80 % | Tot Rooms | 9 |
| Type Style | 2 STORY | Eff Yr Blt | 2004 | Ceramic Tl | 5 % | Bedrooms | 4 |
| Architect | | Cost Class | | Vinyl Tile | 15 % | Bathrooms | 3.00 |
| Ext Wall | FRM STUCCO | Units | 1 | Hardwood | | Family Rms | 3 |
| Roof Matrl | CONC TILE | Home Auto | | Contrl Vac | N | Formal Din | N |
| Flooring | CONC | Security | N | Bi Refrig | N | Fireplaces | 1 |
| Heat System | FORCE AIR | Intercom | N | Bi Micro | Y | Garbg Disp | |
| Air Cond | CENT COOL | Range Fan | | Trash Cmpt | N | Dishwasher | |
| Centrl Air | | Range Oven | | | | | |

#### PROPERTY SUB-AREAS SQ FT

| | | | | | |
|---|---|---|---|---|---|
| Living Area | 2745 | First Flr | 1253 | Porch 1 | 151 | Garage | 556 |
| Building 1 | 3301 | Second Flr | 1492 | Porch 2 | | Carport | |
| Total Bldg | 3301 | Abv Second | | Porch 3 | | Storage | |
| Pool (Y) | 450 | Basement F | | Paving 1 | 1/450 | Dock | 300 |
| Fence | | Basement U | | Paving 2 | /200 | | |

#### EXTRA FEATURE INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pool Heatr | Y | Trench Cts | | Pvy Water | 6 | Sprnkl R | MINT |
| Jacuz/Spa? | | Tns Lights | N | Frpn Cover | 5 | Sprnkl P | |
| Deck | KOOL DECK | Tns Fence | N | Frpn Deck | 1 | Water | |
| Fence | | Gth | | | | | |

#### SALES & LOAN INFORMATION

| | PRICE | DATE | TYPE | FST OWN | DT |
|---|---|---|---|---|---|
| Mkt Code | | | | | |
| County 1 | $284,303 | 11-01-03 | R. RECORDED VALUE | | |
| County 2 | | | | | |
| County 3 | | | | | |
| | | | LAND AREA AY | VENDOR | TYPE | INT | TITLE |
| | | | $251002 | 0855 | C | | 1692 |
| | TOTAL V | TOTAL VALUE | IMPR | LAND | EX AMT | YEAR | TAX RATE |
| | $513,632 | $106,576 | $89,426 | $17,150 | | 2010 | |
| | $3,770.05 | $146,037 | $83,337 | $56,700 | | 2009 | |
| | 209306 | | | | | | |

---

American Real Estate Appraisal
## LOCATION MAP ADDENDUM

File No.    2010020320
Case No.

| Borrower | | | | Randall and Teresa Fitzgerald | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**PLAT MAP**

File No.    2010020320
Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
## SKETCH ADDENDUM

File No.   2010020320
Case No.

| | |
|---|---|
| Borrower | Randall and Teresa Fitzgerald |
| Property Address | 652 Homewillow Ave. |
| City Las Vegas | County Clark State NV Zip Code 89123 |
| Lender/Client Randall and Teresa Fitzgerald | Address 6960 Schirlls St., Las Vegas, NV 89118 |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1253.0 | 1253.0 |
| GAR | Garage | 556.0 | 556.0 |
| P/P | Cov. Porch | 152.8 | 152.8 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 35.0  x  13.0 | 455.0 |
| 36.0  x  4.0 | 144.0 |
| 6.0  x  35.0 | 210.0 |
| 4.0  x  15.0 | 60.0 |
| 4.0  x  21.0 | 84.0 |
| 12.0  x  25.0 | 300.0 |

Net LIVABLE Area        (rounded)        1253        6 Items        (rounded)        1253

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020320
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | |
| Property Address | 652 Homewillow Ave. | | | | | |
| City  Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client  Randall and Teresa Fitzgerald | Address  6960 Schirlls St., Las Vegas, NV 89118 | | | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | | |
|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | | Subtotals |
| GLA2 | Second Floor | 1491.4 | 1491.4 | Second Floor | | |
| | | | | | 35.0 x 18.0 | 630.0 |
| | | | | | 4.0 x 22.0 | 88.0 |
| | | | | 0.5 x | 2.0 x 2.0 | 2.0 |
| | | | | | 13.0 x 20.0 | 260.0 |
| | | | | | 25.0 x 9.0 | 225.0 |
| | | | | | 35.0 x 7.0 | 245.0 |
| | | | | 0.5 x | 3.5 x 3.5 | 6.1 |
| | | | | | 8.0 x 3.5 | 28.0 |
| | | | | 0.5 x | 3.5 x 3.5 | 6.1 |
| | | | | Curve | 3.1 ∅ 90.0° | 1.1 |
| | Net LIVABLE Area | (rounded) | 1491 | 10 Items | (rounded) | 1491 |

American Real Estate Appraisal

### SUBJECT PHOTO ADDENDUM

File No. 2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City Las Vegas | | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



FRONT VIEW



FRONT VIEW



STREET SCENE

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.   2010020320
Case No.

| Borrower   Randall and Teresa Fitzgerald | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address   652 Homewillow Ave. | | | | | | | |
| City   Las Vegas | County | | Clark | State | NV | Zip Code | 89123 |
| Lender/Client   Randall and Teresa Fitzgerald | | | Address   6960 Schirlls St., Las Vegas, NV 89118 | | | | |

REAR VIEW



POOL AREA



American Real Estate Appraisal

### SUBJECT PHOTO ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR



INTERIOR

American Real Estate Appraisal

**COMPARABLES 1-2-3**

File No.    2010020320
Case No.

| Borrower | | Randall and Teresa Fitzgerald | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



**COMPARABLE #    1**
195 Apache Tear Ct.
Iron Horse Est



**COMPARABLE #    2**
9194 Cazador St.
Crystal Springs



**COMPARABLE #    3**
9232 Marlia St.
Crystal Springs

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlis St., Las Vegas, NV 89118 | | | | |

Information about the subject property was obtained from public records using the County's websites, and, if a reasonably recent listing of the property was detected, from Multiple Listing data. This information included the age of the improvements, the last date of sale, the tax account number and legal description contained in these records, physical characteristics, including square foot information and room count, the assessed valuation of the land and the improvements, current real estate taxes and zoning information. Maps showing the subject site and the subject market area were examined and prepared for inclusion in the appraisal report.

A physical inspection of the subject property was made, including both the exterior and interior of the subject dwelling, and an analysis was made of the neighborhood, site and improvements. This inspection and analysis included the consideration of any known factors that could be expected to have an impact on the value of the subject property. Although due diligence was exercised, the appraiser is not an expert in matters such as pest control, structural engineering, hazardous substances or environmental hazards, and no warranty is given as to these elements.

The subject improvements were measured and sketched, and the pertinent square foot areas of the improvements were calculated. Personal property was not included within the estimate of value.

An analysis was made of the subject real estate market and of available market/sales data, utilizing Clark County Assessors Records and Multiple Listing data. Those sales considered to provide the best indication of the market value of the subject property were selected and compared to the subject in the Sales Comparison Analysis. Information about the comparables was verified, including pertinent financing information relating to the transaction, using the named sources.

Dollar adjustments were made to each of the comparable properties, reflecting estimated market reaction to those items of significant variation between the subject and comparable properties. If a significant item in a comparable property was superior to, or more favorable than the subject property, a minus (-) adjustment was made to the comparable, thus reducing the indicated value of the subject in comparison to that comparable; if a significant item in a comparable was inferior to, or less favorable than the subject, a plus (+) adjustment was made, thus increasing the indicated value of the subject.

Further analysis was made, considering such factors as the comparables' relative proximity to the subject property, recentness of sale and overall similarity to the subject property, in order to reconcile to the final estimate of the value of the subject property by the Sales Comparison Approach to value.

The appraisal report was prepared, together with attached exhibits, and the completed appraisal report was delivered to the client, which constituted completion of the assignment.

THIS IS APPRAISAL IS PRESENTED IN A SUMMARY REPORT.


DIGITAL PHOTOS AND SIGNATURES
All digital photos are originals and have not been altered or enhanced in any way.

This report has been signed with my digital signature. The appraiser has taken the necessary steps needed to ensure the security of this appraisal. In this particular case, the lender was not provided with a computer file of the appraisal report that could be accessed by the appraisal program used by the appraiser. However, the lender has either received the appraisal report in a .PDF format or has received two hard copies (printed on paper) of the appraisal report, either one which upon receipt shall be considered delivered at that time. Therefore, it is the appraiser's opinion that there is no security risk involved with this report.

PURPOSE - The purpose of this appraisal is to provide an opinion of market value, as defined herein, of a fee simple title of the subject, and to provide sufficient and supportable data for legal proceedings and settlement. This opinion of market value is to be used solely by the client. The function is to provide an opinion of value for legal proceedings and settlement purposes of the client.

| Appraiser Name | B. Kent Vollmer | Supervisor Name | |
|---|---|---|---|

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020320
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | | |
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

INTENDED USERS - The Intended Use of this appraisal and appraisal report are as stated in the report form as follows: "The intended user of this appraisal report is the client". No other intended users have been identified to the Appraiser and none are assumed. Pursuant to USPAP SR1-2.a, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

Use of this appraisal and appraisal report by other users is not intended by the appraiser. Unless otherwise identified by the Client as being an Intended User, all other third parties are considered to be unintended users, including but not limited to the borrower in the pending loan transaction, other mortgage lending institutions and other governmental agencies not involved in the mortgage lending process. Specifically, any potential buyers or outside lenders contemplating purchase or mortgage activity on this property are urged to seek a separate opinion of value from a competent and duly licensed/certified appraiser. Any additional requests in this assignment by third parties must be requested in writing and may either be declined or if performed may be subject to additional billing to recover the costs associated with such requests.

INTENDED USE - The Intended Use of this appraisal and appraisal report as stated in the report form is "for the client to evaluate the property that is the subject of this appraisal for legal proceedings and settlement". No other intended uses have been communicated to the Appraiser and none are assumed.

Pursuant to USPAP SR1-2b, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

If a third party to this appraiser-client relationship desires an appraisal for their own uses, they are urged to seek one developed specifically for their uses from a competent and appropriately licensed/certified appraiser. The Appraiser in this assignment cannot accept responsibility for uses not otherwise identified at the time of engagement. Use of this appraisal report for other purposes is therefore not intended by the appraiser.

USE: Reading the appraisal report or possessing the report does not constitute use. Relying on the appraisal report to understand how the appraiser developed the opinion of value does not constitute use. Use means relying on the appraisal report to make a decision or to take an action.

This report may contain comments, conditions, and/or certifications added by the signing appraiser including, but not limited to, this Supplemental Addendum. These items shall supersede and take precedence over all other language, requirements, or conditions contained in any preprinted and/or third-party forms or documents included in, or incorporated by reference into, the appraisal report.

OWNERSHIP OF INTELLECTUAL PROPERTY AND/OR DATA - American Real Estate Appraisal expressly retains all right, title, and interest in all patents, trademarks, trade names, trade secrets, software, data, conclusions, opinions, valuations, or other information included in, arising out of, or in any way related to this appraisal or the provision of appraisal services to the named client and/or Intended User. The report and information supplied by the staff and/or agents of American Real Estate Appraisal is a culmination of intellectual education, professional experience, personal investigation, and know-how, which shall at all times remain the property of American Real Estate Appraisal. No person shall be entitled to break down, strip out, mine, or disseminate any component or part of this report, including, but not limited to, any conclusions, valuations, opinions, or other data compilations herein. Notwithstanding, the Intended User as defined above may use this appraisal report and the contents herein for the limited purpose and use identified above.

| | |
|---|---|
| Appraiser Name    B. Kent Vollmer | Supervisor Name |

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.   2010020320
Case No.

Borrower   Randall and Teresa Fitzgerald

Property Address   652 Homewillow Ave.

| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
|------|-----------|--------|-------|-------|----|---------|-------|
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

ADEQUACY OF SCOPE - The appraiser has proposed and the Client has agreed (prior to submission) that the level of development and reporting detailed above is sufficient to address the substantiate criteria of a reasonable Scope of Work within the context of the Intended Users and Intended Use.  With the exception of revisions made for the purpose of correction of any errors, the Appraiser does not anticipate further development or reporting requirements for this assignment. Any additional requests from the Client or any third parties may represent a change in the assignment conditions and require the development of a new assignment.  With the exception of corrections of any errors or omissions, any additional requests must be made in writing and may be subject to additional billing to recover the costs associated with the additional work.

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, complete visual observation of the interior and exterior of the subject property, its neighborhood, and selection of comparable sales within the subject's market area.  The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available.  The sources and data are considered reliable.  When conflicting information was provided, the source deemed most reliable has been used.  Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

The appraiser is not a home inspector and the appraisal report is not a home inspection.  The appraisal report cannot be relied upon to disclose hidden defects that are not apparent from a visual observation of the surfaces of the subject property from standing height.  The testing of systems (structural, electrical, mechanical, heating, cooling, plumbing) and components (such as appliances, fixtures, doors, windows, etc.) lies outside of the scope of this appraisal assignment.

This report is not intended for use by the client for the purpose of identifying any adverse conditions in the subject's systems and components which might be revealed by any inspections by licensed professionals in any relevant field.  This appraisal does not guarantee that the subject property is free of undetected problems, possible defects or environmental hazards that could exist.

Complete visual inspection of the interior areas of the subject property: A visual observation from standing height of the accessible areas and unobstructed, exposed surfaces of the living area without removal of personal possessions.  It includes the visual observation of attached automobile storage, if any, as well as of any attached accessory buildings judged by the appraiser to have contributory value.

Complete visual inspection of the exterior of the subject property: A visual observation of the unobstructed, exposed, and accessible perimeter of the residential improvements from standing height.  It includes the visual observation of detached automobile storage, if any, as well as of any detached accessory buildings judged by the appraiser to have contributory value.

Living area: Living area is defined as legal, finished, permanently heated, living space contiguous with other living area and regarded by a typical purchaser as being habitable and as having utility.   This appraisal report attempts to conform to The American National Standards Institute ANSI Z765-2003, approved November 2003.

Estimated marketing time is based on current and/or past studies of sales activity provided by the Las Vegas Multiple Listing Service, and the appraiser's knowledge of the property's market.  The estimate assumes proper pricing and marketing. The estimated marketing time is typically less than three months but could be up to six months.

This appraisal utilizes digitized electronic signatures that prevent the altering of the appraisal report in any manor with the removal of the appraiser's signature.  These signatures are secure and irrevocable, binding the appraiser(s) to the accuracy and completeness of the appraisal report.

ADDITIONAL COMMENTS

•The comments in this addendum are intended to expand on the information provided on the form appraisal. It is our desire to insure that the client fully understands the appraisal process and methodology as well as the facts pertinent to the valuation of the subject property. The expanded narrative provided in this addendum is an effort to clarify those areas of the report that we have found that cause the most concern to our clients.

•In the market grid, ROOM COUNT contains the adjustments for bedrooms and bathrooms. The next line, GROSS LIVING AREA (GLA), contains the adjustment for GLA and the total room count. Note that any extreme in living area and/or room count may result in a functional utility adjustment under the separate line UTILITY.

•The sketch of the subject property is primarily to assist the reader (reviewer) in visualizing the property as we have seen it from our on site inspection. The floor plan provided is not intended to duplicate the builder's plan to scale, but rather to be a guide to the reviewer in evaluating normal traffic patterns within the property.

Appraiser Name   B. Kent Vollmer                    Supervisor Name

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

•Areas of limited access (i.e. attic, crawl spaces, eaves, etc.) may not necessarily be inspected due to limited access. For purposes of this appraisal, a condition for any such applicable area is determined after a visual inspection of related/adjoining parts of the structure. An appraiser is a trained and experienced observer of real estate, but recognizing, detecting, or measuring contamination is often beyond the scope of the appraiser's expertise. Remediation and compliance cost estimation involves knowledge and experience beyond that of appraisers.
•This inspection is not intended to serve as a termite inspection, although any problems observed are noted in the appraisal. The buyer or homeowner should contact a qualified inspection professional for this service if so desired.
•Please be advised that the estimated marketing time for the subject is typically up to three months and sometimes up to six months.
•No items of personal property are included in the appraised value of the subject.
•In the preparation of this appraisal some or all of the photographs may be digitized. In no case have the photos been altered of manipulated in any manner. All photos are accurate representations of the properties.
•The Americans with Disabilities Act (ADA) became effective January 26, 1992. This inspection does not represent a specific compliance survey or analysis to determine whether or not the physical aspects of the improvements meet the ADA accessibility guidelines. This inspection in no way suggests ADA compliance. Since compliance expectations can change with each owner's financial ability to cure deficiencies, the value of the subject does not consider possible noncompliance.

Opinions or estimates expressed herein represent our best judgment but should not be construed as advice or recommendation to act. The appraiser should be contacted with any questions before this report is relied upon for decision making. This appraisal represents an estimate of value based on an analysis of information known to us at the time the appraisal was completed. I do not assume any responsibility for incorrect analysis because of incorrect or incomplete information, which was provided to the appraiser. If new data or documentation is provided to the appraiser, the value in this report is subject to change based on the significance of this new data.

ADVERSE ENVIRONMENTAL CONDITIONS

The existence of any hazardous material, including but not limited to, Urea formaldehyde foam insulation, radon gas, asbestos products, lead based paints or toxic waste contaminant, which may or may not be present in the subject improvements, on the site or in the immediate vicinity of the subject has not been observed by the appraiser. The appraiser has no knowledge of the existence of such hazardous material in or on the property.

It should be noted that homes built before 1978 may contain lead based paint and the client should be advised of its possible existence. Also, the EPA suggests that all homes be tested for radon gas. If the client has a concern then a qualified expert should be contacted.

Homes clad with EIFS (Exterior Insulation and Finish Systems) a.k.a. synthetic stucco or Dryvit have a very strong tendency to retain moisture between the sheathing of the home and the finish system. The design of EIFS, unlike other systems (brick, stone, siding, etc.), does not allow the moisture to drain out. The moisture can sit in contact with the sheathing for a prolonged period and rotting may result. Damage can be serious. Left unchecked, it can affect the structural components of these homes.

Radon gas can be found in any home whether it is new, old, on slab, a crawl space, or a basement. Radon is odorless, colorless, and is a radioactive gas produced by the breakdown of uranium in soil, rock, and water. It typically rises up through the ground and into a home through holes in the foundations. It is the radiation given off by radon and its decay products that is the health risk concern. These decay products become attracted to almost any object including airborne particles such as dust. The Surgeon General has warned that radon is the second leading cause of lung cancer in the United States. The U.S. EPA has established an "action level" for indoor radon at 4 pCi / L (pico curies per liter of air). If a home has a radon level of 4 pCi / L the situation should be remedied. The only way to know if a problem exists is to have the property tested.

Soils known to be unstable (shrink or swell), exist in the Las Vegas valley area. This type of soil condition causes the soil around the foundation of a dwelling to expand and contract due to changes in its water content. Indications of this problem include:

•Foundation walls that are buckled or bowed.
•Doors and windows that stick or don't open.
•Cracks in foundation walls.
•Cracks in exterior walls.
•Cracks in interior walls and ceilings.
•Sunken or buckled interior concrete floors.
While the appraiser has made a diligent observation of the subject property and none of these indicators were noted, the only way to insure that this problem is not present is to have the property tested.

| Appraiser Name  B. Kent Vollmer | Supervisor Name |
|---|---|

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.   2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

NEIGHBORHOOD MARKET CONDITIONS

There is currently an over supply of homes for sale in the subject's market which has resulted in a "depressed market" and as a result homes are generally exposed for a moderate period of time before any offers for purchase are made. Currently few are made in excess of the asking price. As a result there are a sufficient number of recent transfers from which to select comparable sales data. This results in the use of market data that might require significant adjustments in order to compare to the subject property.

Current interest rates continue to remain at normal levels. Discount points and closing costs are typically negotiated between buyers and sellers and it is not uncommon for the Seller to pay some of these costs (between one and three percent of purchase price). A variety of loan packages are available including both conventional and government endorsed mortgages.

HIGHEST AND BEST USE

Highest and Best Use is that reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal. Alternatively, it is that use, from among legally permissible, physically and reasonably possible uses, found to be economically and financially feasible, and which results in the most profitable of the alternatives.

Given the current zoning, location and size of the site, surrounding land uses (recognizing the principle of conformity) and development characteristics of the market area, our opinion of the highest and best use of the property "as vacant" is for single family residential development. Further, the existing use/improvements exceed the value of the site vacant; therefore our opinion of the highest and best use of the site "as improved" is for continued single family residential use.

COMMENTS ON THE SALES COMPARISON ANALYSIS

Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen what are believed to be the best comparable sales available from a thorough and extensive search for comparable sales data in the subject's market. The sales selected for use in the analysis are considered to be the best indicators of value for the subject property. Other sales reviewed would have required excessive adjustments and were not considered to be as reliable as the sales chosen.

Adjustments within the Sales Comparison Analysis are based on the market extraction method, generally employing the matched pair process, and not specifically based on cost figures.

Every effort has been made to conform to FHLMC/FNMA Guidelines and in most cases, an even stricter interpretation found common to most investors in the secondary market.

To the best of the appraisers knowledge, all comparable sales were sold without special or creative financing or excessive sales concessions. Any excess seller concessions have been adjusted appropriately using "cash equivalency" to reflect accurate market response. Closing cost paid by the sellers of the comparable properties are equivalent to typical financing terms offered by third party institutional lenders in the local market. In the appraiser's opinion, these sales represent typical market financing transactions. The sales prices are not considered to be inflated due to special or excessive financing concessions. The indicated values of the comparable sales reflect the value of the subject real estate and include only those sellers closing cost normally paid by tradition or law in the market area.

Gross living areas shown for the comparable sales are estimates based on information form one or more of the following sources: Multiple Listing Service (MLS), county/city tax records, real estate agents, homeowners, builders, appraisers, interoffice data bank or actual measurements. Slight variations in size will have no effect on the estimate of value. All comparable sales are settled to the best of the appraiser's knowledge. Verification is with county records, and/or Realtor.

| Appraiser Name  B. Kent Vollmer | Supervisor Name |
|---|---|

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

Borrower   Randall and Teresa Fitzgerald
Property Address   652 Homewillow Ave.

| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
|------|-----------|--------|-------|-------|-----|----------|-------|
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

FINAL RECONCILIATION
There is insufficient data available in the subject market to derive a gross rent multiplier or a gross monthly rent multiplier. As such, the methodology of the Income Approach was not developed to estimate the market value of the subject property. Furthermore, the Income Approach is not a generally accepted method for estimating the value of owner occupied single family residences in the subject's market.

Although the Cost Approach may not be required for the client specified in this report, the Appraiser is bound by the Uniform Standards of Professional Appraisal Practice (USPAP), which may or may not require the utilization of the Cost Approach for the specific subject property of this report. If the Appraiser has determined that the Cost Approach is necessary to produce a reliable and credible appraisal report than it has been included and supporting documentation is contained in the Appraiser's work file and summarized in the Cost Approach section of this report. If the Cost Approach was not considered necessary to produce a credible and reliable appraisal due to the age of the property and limitations in determining accrued depreciation, then the lack of inclusion of the Cost Approach does not result in departure from the USPAP.

Of the three traditional approaches to value, only the Sales Comparison Analysis has been applied. When sufficient data is available, the methodology of the Sales Comparison Analysis yields the most convincing indication of value for a single family residence in the subject's market area. Although substantial adjustments may be applied to the sales prices of the comparable properties, the data in this analysis is considered to be of sufficient quality and quantity to present a convincing estimate of value. Therefore, most weight is placed on the Sales Comparison Analysis in estimating the market value of the subject property as of the effective date of the appraisal. The value estimated by the Cost Approach, if used, is considered to be supportive.

COMPLIANCE TO INDUSTRY STANDARDS
The appraiser's analysis, opinions and conclusions were developed in accordance with and in conformity to the Uniform Standards of Professional Appraisal Practice (USPAP) standards rule 2-3.

COMPETENCY OF THE APPRAISER
In accordance with the Competency Rule of the Uniform Standards of Professional Appraisal Practice (USPAP), the appraiser certify that they have the education, experience and knowledge sufficient to appraiser the property being valued in this report. No one other than the appraiser signing the report has provided significant real property appraisal assistance in completing this report unless otherwise indicated.

SELF CONTAINMENT
This appraisal is intended to be a summary report with all the necessary information to enable the reader to understand the Appraisers opinion and follow the appraisers reasoning. No third party reports have been presented to, or reviewed by this appraiser, IE; sales contracts and addenda, pest reports, soil reports, title reports, structural, well, septic or roof reports (if applicable).

Appraiser Name   B. Kent Vollmer                    Supervisor Name

# APPRAISAL REPORT OF

**Randall and Teresa Fitzgerald**

**6960 Schirlls St.**

Las Vegas, NV 89118

# AS OF

March 15, 2010

# PREPARED FOR

**Teresa Fitzgerald**
**Randall and Teresa Fitzgerald**
6960 Schirlls St.
Las Vegas, NV 89118

# PREPARED BY

**B. Kent Vollmer**
**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118



**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118
(702) 876-7799

March 25, 2010

**Randall and Teresa Fitzgerald**
6960 Schirlls St.
Las Vegas, NV 89118

RE:     **Randall and Teresa Fitzgerald**
        **6960 Schirlls St.**
        Las Vegas, NV 89118
File No.   2010020321
Case No.

Dear  Teresa Fitzgerald,

In accordance with your request, I have personally inspected and prepared an appraisal report of the real property located at:

**6960 Schirlls St., Las Vegas, NV 89118**

The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation of the property.  The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of  **March 15, 2010** is:

**$ 318,000**

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this report.

It has been a pleasure to assist  you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _____

**B. Kent Vollmer**
American Real Estate Appraisal

**American Real Estate Appraisal**

File No.  2010020321
Case No.

## Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | City | Las Vegas | State NV | Zip Code | 89118 |

Owner   Randall Fitzgerald   Intended User   Randall and Teresa Fitzgerald   County   Clark

Legal Description   Parcel Map File 33 Page 79 Lot 1

Assessor's Parcel #   177-06-702-009   Tax Year   2010   R.E. Taxes $   4,570.89

Neighborhood Name   Clark County   Map Reference   Census Tract   0029.63

Occupant  X Owner   Tenant   Vacant  Special Assessments $   None   PUD   HOA $   per year  per month

Property Rights Appraised  X Fee Simple   Leasehold   Other (describe)

Intended Use   Bankruptcy Settlement

Client   **Randall and Teresa Fitzgerald**   Address   **6960 Schirlls St., Las Vegas, NV 89118**

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   Yes  X No

Report data source(s) used, offering(s) price(s), and date(s).   GLVAR MLS Services.

**CONTRACT**

I  did   X did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   N/A

Contract Price $   Date of Contract   Is the property seller the owner of public record?   Yes   No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser?   Yes   No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location | Urban  X Suburban  Rural | Property Values  Increasing  Stable  X Declining | PRICE | AGE | One-Unit | 60 % |
| Built-Up | Over 75% X 25-75%  Under 25% | Demand/Supply  Shortage  In Balance X Over Supply | $ (000) | (yrs) | 2-4 Unit | % |
| Growth | Rapid  Stable  X Slow | Marketing Time  Under 3 mths X 3-6 mths  Over 6 mths | 50 Low | 0 | Multi-Family | % |

| | |
|---|---|
| 775 High | 40 Commercial 5 % |
| 130 Pred. | 5 Other Vacant 35 % |

Neighborhood Boundaries   Neighborhood is bounded on the north by Hacienda Ave., to the south by Wigwam Ave., to the west by Jones Boulevard, and to the east by Bermuda Road.

Neighborhood Description   Area is located approx 8 miles southwest of the Las Vegas CBD in the Enterprise Township.  Area consists of avg to good quality production and custom homes in average condition.  Area is partially developed.  Freeway access is 1 mile.  All other facilities such as schools, shopping, churches, and employment are within acceptable distances.

Market Conditions (including support for the above conclusions)   The greater Las Vegas Housing Market has been in a depressed state since late 2006, with over 19,000 homes for sale through MLS.  This has created a "buyers market" and depressed prices.  The is in reaction to the heated appreciation rates from 2003 to 2006.  Market activity is depressed.

**SITE**

| | | | | |
|---|---|---|---|---|
| Dimensions | 102 x 300 | Area | 30,600 SqFt | Shape  Rectangular  View  Residential |

Specific Zoning Classification   R-E   Zoning Description   Rural Estates Residential

Zoning Compliance  X Legal   Legal Nonconforming (Grandfathered Use)   No Zoning   Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  X Yes   No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street  Asphalt | X | |
| Gas | | X Propane | Sanitary Sewer | X | | Alley  Other | | |

FEMA Special Flood Hazard Area   Yes  X No  FEMA Flood Zone   Zone X   FEMA Map #   32003C 2554 E   FEMA Map Date   9/2/2002

Are the utilities and/or off-site improvements typical for the market area?  X Yes   No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   Yes  X No  If Yes, describe.

No adverse easements or encroachments observed.  Site is a large interior residential lot.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|---|---|
| Units  X One  One with Accessory Unit | X Concrete Slab  Crawl Space | Foundation Walls  Concrete/Avg | Floors  Carpet/Tile/HdWood/Avg |
| # of Stories  2 Story | Full Basement  Partial Basement | Exterior Walls  Frm/Stucco/Avg | Walls  Drywall/Avg |
| Type  X Det.  Att.  S-Det./End Unit | Basement Area  sq. ft. | Roof Surface  Conc. Tile/Avg | Trim/Finish  Wood/Avg |
| X Existing  Proposed  Under Const. | Basement Finish  % | Gutters & Downspouts  None | Bath Floor  Ceramic/Hardwood/Avg |
| Design (Style)  Conventional | Outside Entry/Exit  Sump Pump | Window Type  Alum. Slider/Avg | Bath Wainscot  Ceramic Tile/Avg |
| Year Built  1990 | Evidence of  Infestation | Storm Sash/Insulated  Insulated | Car Storage  None |
| Effective Age (Yrs)  20 | Dampness  Settlement | Screens  Screens/Avg | X Driveway  # of Cars  2 |
| Attic  None | Heating X FWA  HWBB  Radiant | Amenities  Woodstove(s) # | Driveway Surface  Concrete |
| Drop Stair  Stairs | Other  Fuel  Gas | X Fireplace(s) #  2  X Fence  Conc Block | X Garage  # of Cars  2 |
| Floor  X Scuttle | Cooling  X Central Air Conditioning | X Patio/Deck  Cov  X Porch  Open | Carport  # of Cars |
| Finished  Heated | Individual  Other | X Pool  Pool/Spa  Other | Att.  Det.  X Built-in |

Appliances  Refrigerator X Range/Oven X Dishwasher X Disposal X Microwave   Washer/Dryer   Other (describe)

Finished area **above** grade contains:   7   Rooms   4   Bedrooms   3.00   Bath(s)   3,553   Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   See Attached Comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)   No functional, physical or external inadequacies observed.  Home is rated average condition.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   Yes  X No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  X Yes   No  If No, describe

---

NL - Residential 5/2007       This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal

File No.    2010020321
Case No.

## Residential Appraisal Report

There are 43 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 229,900 to $ 1,600,000 .
There are 24 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 196,000 to $ 550,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6960 Schirlls St.<br>Las Vegas, NV 89118 | 8440 Warbonnet Way<br>Clark County | | 6195 W. Oquendo Rd.<br>Clark County | | 7220 La Cienega St.<br>Clark County | |
| Proximity to Subject | | 4.31 miles SW | | 2.11 miles NW | | 2.06 miles E | |
| Sale Price | $ | $ 285,000 | | $ 297,000 | | $ 290,000 | |
| Sale Price/Gross Liv. Area | $ 0 sq. ft. | $ 97.34 sq. ft. | | $ 89.59 sq. ft. | | $ 105.22 sq. ft. | |
| Data Source(s) | Subject | M.L.S. #949368 | | M.L.S. #999218 | | M.L.S. #988100 | |
| Verification Source(s) | Inspection | Doc. #Not Yet Available | | Doc. #20100223:00936 | | Doc. #20091215:01187 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Conventional/REO | | V.A./REO | | Cash/REO | |
| Concessions | | Seller Pd $8,440 | | No Seller Pts. | | Seller Pd $8,750 | |
| Date of Sale/Time | 3/15/2010 Insp | 9/15/09; 9/25/09 | | 12/21/09; 2/23/10 | | 11/15/09; 12/14/09 | |
| Location | Residential | Residential | | Residential | | Residential Cul-de-Sac | -15,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 30,600 SqFt | 44,968 SqFt | -14,368 | 30,928 Sqft | -328 | 26,550 SqFt | +4,050 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 20 yrs | 28 yrs | | 20 yrs | | 17 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 7 / 4 / 3.00 | 7 / 4 / 3.00 | 0 | 8 / 5 / 4.50 | -2,250 | 7 / 4 / 3.00 | 0 |
| Gross Living Area | 3,553 sq. ft. | 2,928 sq. ft. | +15,625 | 3,315 sq. ft. | +5,950 | 2,756 sq. ft. | +19,925 |
| Basement & Finished<br>Rooms Below Grade | 0 | 0 | | 0 | | 0 | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 3-Garage | 2-Garage | +6,000 | 3-Garage | -3,000 | 3-Garage | -3,000 |
| Porch/Patio/Deck | Cov. Patio,Porch/Deck | Cov. Patio,Porch | | Cov. Patio/Porch | | Cov. Patio/Porch | |
| Fireplaces | 2 Fireplaces | 1 Fireplace | +1,500 | 1 Fireplace | +1,500 | 1 Fireplace | +1,500 |
| Pool | Pool/Spa/Shop | Pool/Spa | +25,000 | Shop | +15,000 | Pool/Spa | +25,000 |
| Landscaping | Front/Rear | Front/Rear | | Front/Rear | | Front/Rear | |
| Net Adjustment (Total) | | X + - | $ 33,757 | X + - | $ 16,872 | X + | $ 32,475 |
| Adjusted Sale Price<br>of Comparables | | Net Adj: 12%<br>Gross Adj : 22% | $ 318,757 | Net Adj: 6%<br>Gross Adj: 9% | $ 313,872 | Net Adj: 11%<br>Gross Adj: 24% | $ 322,475 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) Greater Las Vegas Association of Realtors, Clark County Assessors Office.
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) Greater Las Vegas Association of Realtors, Clark County Assessors Office.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | 2/5/2009 | 6/8/2007 | 10/15/2009 |
| Price of Prior Sale/Transfer | N/A | $585,227 Trustees Deed | $740,000 | $221,250 Trustees Deed |
| Data Source(s) | Clark County Assessor | Clark County Assessor | Clark County Assessor | Clark County Assessor |
| Effective Date of Data Source(s) | 3/25/2010 | 3/25/2010 | 3/25/2010 | 3/25/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales Comp #2 also transferred 10/23/2009 for a reported price of $260,000
as a trustees deed as a repo.  Prior transfers reflect the depressed state of the current market.

Summary of Sales Comparison Approach   Sales were researched throughout the subject's market area.  Site area differences have been adjusted
at $1/SF.  GLA differences have been adjusted at $25/SF.  All other adjustments reflect typical market reactions to basic amenity
differences.  Sale comps provide an indicated range of values of $313,983 to $322,475.  After careful consideration of all influencing factors, a
final estimate value of $318,000 is arrived at.

Indicated Value by Sales Comparison Approach $   318,000
Indicated Value by: Sales Comparison Approach $   318,000   Cost Approach (if developed) $   0   Income Approach (if developed) $   0
Market analysis is the best approach to a residential valuation.  Income approach is not consistent and data is minimal.  Cost approach is not
considered.

This appraisal is made [X] "as is,"  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  [ ] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   Appraisal is made as is.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   318,000  , as of   March 15, 2010  , which is the date of inspection and the effective date of this appraisal.

NL - Residential 5/2007          This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal

File No.   2010020321
Case No.

## Residential Appraisal Report

The subject property is improved with a two-story average quality custom built residence with frame and stucco exterior, concrete tile roofing and built-in two-car garage.   Detached shop at the rear of the property has 14.5' ceiling height with 3 overhead doors 11'W by 12.5'H.  Interior is segregated into office areas and a work area.  Office has central HVAC, work area has gas space heater and evap cooler.

Rear yard is a large area with inground pool and spa with diving board and propane heat.  Rear yard is fenced, and front yard has short fencing with drive through gate.  Concrete driveway along the entire south side of the property provide drive-through access to the garage and shop at the rear of the property.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED | REPRODUCTION OR | REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | |
|---|---|---|---|---|---|---|---|
| Source of cost data | | | Dwelling | 3,553 | Sq. Ft. @ $ | =$ | |
| Quality rating from cost service | Effective date of cost data | | | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | | | |
| COST APPROACH WILL CARRY NO WEIGHT IN THIS APPRAISAL | | | Garage/Carport | 552 | Sq. Ft. @ $ | =$ | 0 |
| | | | Total Estimate of Cost-new | | | =$ | 0 |
| | | | Less    Physical | 29 | Functional | External | |
| | | | Depreciation    0 | | 0 | 0 | =$ ( 0 ) |
| | | | Depreciated Cost of Improvements | | | =$ | 0 |
| | | | "As-is" Value of Site Improvements | | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only) | 50 | Years | Indicated Value By Cost Approach | | | =$ | 0 |

### INCOME APPROACH TO VALUE (if applicable)

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | 0 | Indicated Value by Income Approach | |

Summary of Income Approach (including support for market rent and GRM)  Rental Data Attached.

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowners' Association (HOA)? | | Yes | | No  Unit type(s) | | Detached | | Attached | |

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | | Total number of units | | Total number of units sold | |
| Total number of units rented | | Total number of units for sale | | Data source(s) | |

| Was the project created by the conversion of existing building(s) into a PUD? | | Yes | | No  If Yes, date of conversion. | |
| Does the project contain any multi-dwelling units? | | Yes | | No  Data source. | |
| Are the units, common elements, and recreation facilities complete? | | Yes | | No  If No, describe the status of completion. | |

| Are the common elements leased to or by the Homeowners' Association? | | Yes | | No  If Yes, describe the rental terms and options. | |

Describe common elements and recreational facilities

NL - Residential 5/2007          This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

Produced by ClickFORMS Software  BradfordSoftware.com                    Page    4  of  27

American Real Estate Appraisal

File No.    2010020321
Case No.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**DEFINITION OF MARKET VALUE:** As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

American Real Estate Appraisal

File No.    2010020321
Case No.

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

NL - General Certification 5/2007    This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

Produced by ClickFORMS Software BradfordSoftware.com    Page    6    of    27

American Real Estate Appraisal                    File No.    2010020321
                                                  Case No.

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name **B. Kent Vollmer** | Name |
| Company Name **American Real Estate Appraisal** | Company Name |
| Company Address **6441 Crystal Dew Dr.** | Company Address |
| **Las Vegas, NV 89118** | |
| Telephone Number **702-876-7799** | Telephone Number |
| Email Address Kent@VollmerOnline.Net | Email Address |
| Date of Signature and Report **March 25, 2010** | Date of Signature |
| Effective Date of Appraisal **March 15, 2010** | State Certification # |
| State Certification # **A.00111-CG** | or State License # |
| or State License # **Certified General** | State |
| or Other (describe) State # **NV** | Expiration Date of Certification or License |
| State **NV** | |
| Expiration Date of Certification or License **4/30/2011** | |

ADDRESS OF PROPERTY APPRAISED

**6960 Schirlls St.**
Las Vegas, NV 89118

APPRAISED VALUE OF SUBJECT PROPERTY $ **318,000**
CLIENT

| Name **Teresa Fitzgerald** |
| Company Name **Randall and Teresa Fitzgerald** |
| Company Address **6960 Schirlls St.** |
| **Las Vegas, NV 89118** |
| Email Address RTMailServices@lvcm.com |

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

NL - General Certification 5/2007          This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal
**ASSESSORS RECORD**

File No.  2010020321
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | | | Randall and Teresa Fitzgerald | | | |
| Property Address | 6960 Schirlls St. | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

---

### CLARK COUNTY PROPERTY

| | | | | |
|---|---|---|---|---|
| Parcel # | 177-06-702-009 | Address | 6960 SCHIRLLS ST | |
| | | PropCity | LAS VEGAS | Zip Cd  89118-5158 |
| TN-RG-SE | 22-61.0-6 | Tax Dist | ENTRPRS-ARTSN-FR-911 | ReAssd  2009 |
| Tot Value | $155,971 | Land Use | 1107010001/SFR | Update  03/19/10 |
| GEO Id | PT NW4 SE4 22-61.0-6 | | | Status |

#### ASSESSOR DESCRIPTION

| | | | | |
|---|---|---|---|---|
| File-Page | PM 0033-0079 | Subdivision | 9999 | |
| Assr Lot | 1 | Block | Phase | Bldg | Unit |
| Assr Apt | | Parcel | Area | Tract | Outlot |
| Assr Desc | PARCEL MAP FILE 33 PAGE 79 LOT 1 | | | |

#### OWNER & DOC INFORMATION

| | | ETAL | DOC DATE | DOC NUMBER | DV | MU |
|---|---|---|---|---|---|---|
| Owner Name | FITZGERALD RANDALL S | N | 12/22/04 | 2004122204006 | | 0 |
| 2nd Owner | | | 07/21/94 | 1994072100327 | F | 1 |
| Address (S) | 6960/ SCHIRLLS/ ST | | | | | |
| City | LAS VEGAS | State  NV | | Zip Code | 89118- 5158 | |
| Prev Owner | TERRY TOMMY J & BARBARA A FAM | | | | | |
| Own Phone | | | Tenant Phone | | | |

#### LAND & BUILDING INFORMATION

| | | | | | | |
|---|---|---|---|---|---|---|
| Land Value | $70000 | | | | Nuisance | N |
| FrontxDepth | 102x300 | | | | | |
| Acres | 0.70 | Irregular | | Addj Parking | Y | Str Lights | N |
| Lot SqFt | 30600 | Undrg Util | Y | Rec Area | N | Curb-Guttr | N |
| Topography | LEVEL | Str Paved | Y | Sidewalks | N | Traffic | AVERG |
| Schools | RESNBL DIS | View | | | | Landscaping | MODRT |
| Shopping | RESNBL DIS | | | Metro Map | 74- B2 | Area | 504 |
| Impr Value | $85,971 | Act Yr Blt | 1990 | Carpet | 40 % | Tot Rooms | 7 |
| Type Style | 2 STORY | Eff Yr Blt | 1990 | Ceramic Tl | | Bedrooms | 4 |
| Architectr | | Cost Class | | Vinyl Tile | | Bathrooms | 3.00 |
| Ext wall | FRM STUCCO | Units | 1 | Hardwood | 60 % | Family Rms | 1 |
| Roof Matrl | CONC TILE | Home Auto | N | Centrl Vac | N | Formal Din | N |
| Flooring | CONC | Security | N | El Refrig | N | Fireplaces | 2 |
| Heat Systm | FORCE AIR | Intercom | Y | El Micro | Y | Garbg Disp | |
| Air Cond | CENT COOL | Range Fan | Y | Trash Cmpt | N | Dishwasher | Y |
| Centrl Air | 100 % | Range Oven | | | | | |

#### PROPERTY SUB-AREAS SQ-FT

| | | | | | | |
|---|---|---|---|---|---|---|
| LivingArea | 3361 | First Flr | 1993 | Porch 1 | 400 | Garage | 744 |
| Building 1 | 7305 | Second Flr | 1368 | Porch 2 | 77 | Carport | |
| Total Bldg | 7305 | Abv Second | | Porch 3 | 400 | Storage | |
| Pool (Y) | 450 | Basement F | | Paving 1 | 1/793 | Deck | 800 |
| Fence | | Basement U | | Paving 2 | | | |

#### EXTRA FEATURE INFORMATION

| | | | | | | |
|---|---|---|---|---|---|---|
| Pool Heatr | Y | Tennis Cts | | Prch/Patio | 1/1/1 | Sprinklr | AVE |
| Sauna/Sprl | Y | Tns Lights | N | Prch Cover | 2 | Sprinklr | |
| Deck | KOOL DECK | Tns Fence | N | Prch Deck | 1/1/7 | Other | |
| Fence | | Oth | | | | |

#### SALES & LOAN INFORMATION

| | PRICE | DATE | TYPE | PCT OWN | BY |
|---|---|---|---|---|---|
| MLS Sale | | | | | |
| County 1 | $750,000 | 12/01/04 | R-RECORDED VALUE | | |
| County 2 | $280,000 | 07/01/94 | R-RECORDED VALUE | | |
| County 3 | $21,000 | 12/01/87 | R-VAC LND ABV-BLW MRK | | |

| | | | LOAN AMOUNT | LENDER | TYPE | INT | TITLE | |
|---|---|---|---|---|---|---|---|---|
| | | | $600000 | 0090 | C | A | 3/13 | |

| | TOTAL TAX | TOTAL ASSD | IMPRV | LAND | FULL CASH | YEAR | EXEMPTION |
|---|---|---|---|---|---|---|---|
| | $515,70.89 | $155,971 | $85,971 | $70,000 | | 2010 | |
| Tax | $4904.01 | $166,539 | $93,039 | $73,500 | | 2009 | |
| Tax Dist | 2.9306 | | | | | | |

American Real Estate Appraisal
## LOCATION MAP ADDENDUM

File No.    2010020321
Case No.

| Borrower | | Randall and Teresa Fitzgerald | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**PLAT MAP**

File No.    2010020321
Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address  6960 Schirlls St., Las Vegas, NV 89118 | | | | |



Sketch by Apex Medina™

Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | | | |
|---|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | | | Subtotals |
| GLA1 | First Floor | 2185.0 | 2185.0 | First Floor | | | |
| GAR | Garage | 552.0 | 552.0 | 0.5 x | 66.0 x | 4.0 | 264.0 |
| P/P | Cov. Patio | 400.0 | | 0.5 x | 4.0 x | 4.0 | 8.0 |
| | Walled Opoen Patio | 140.0 | 540.0 | | 8.0 x | 24.0 | 192.0 |
| | | | | | 32.0 x | 50.0 | 1600.0 |
| | | | | | 8.0 x | 4.0 | 32.0 |
| | | | | 0.5 x | 2.0 x | 2.0 | 2.0 |
| | | | | 0.5 x | 5.0 x | 5.0 | 12.5 |
| | | | | 0.5 x | 4.0 x | 4.0 | 8.0 |
| | | | | | 6.0 x | 2.0 | 12.0 |
| | | | | | 8.0 x | 5.0 | 40.0 |
| | | | | 0.5 x | 2.0 x | 2.0 | 2.0 |
| | | | | 0.5 x | 5.0 x | 5.0 | 12.5 |
| | Net LIVABLE Area | (rounded) | 2185 | 12 Items | (rounded) | | 2185 |

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| | | | | | |
|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | |
| Property Address | 6960 Schirlls St. | | | | |
| City Las Vegas | County | Clark | State | NV | Zip Code 89118 |
| Lender/Client Randall and Teresa Fitzgerald | Address 6960 Schirlls St., Las Vegas, NV 89118 | | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | | |
|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | | Subtotals |
| GLA2 | Second Floor | 1368.0 | 1368.0 | Second Floor | | |
| | | | | | 50.0 x 22.0 | 1100.0 |
| | | | | 0.5 x | 2.0 x 2.0 | 2.0 |
| | | | | | 14.0 x 18.0 | 252.0 |
| | | | | | 6.0 x 2.0 | 12.0 |
| | | | | 0.5 x | 2.0 x 2.0 | 2.0 |
| | Net LIVABLE Area | (rounded) | 1368 | 5 Items | (rounded) | 1368 |

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | | AREA BREAKDOWN | |
|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | Subtotals |
| OTH | Shop Building | 2500.0 | 2500.0 | | |

American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

File No.   2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|----------|-------------------------------|--|--|--|--|--|--|
| Property Address | 6960 Schirlls St. | | | | | | |
| City   Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address   6960 Schirlls St., Las Vegas, NV 89118 | | | | |



FRONT VIEW



FRONT VIEW



FRONT VIEW

American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client Randall and Teresa Fitzgerald | | | Address 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

STREET SCENE



POOL AREA



DETACHED SHOP



American Real Estate Appraisal
**SUBJECT PHOTO ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR
SHOP



INTERIOR
SHOP



INTERIOR
SHOP

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**    File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client    Randall and Teresa Fitzgerald | | | | Address   6960 Schirlls St., Las Vegas, NV 89118 | | | |



REAR VIEW



REAR VIEW



VIEW OF SHOP AREA

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.  2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR
GARAGE



PATIO BBQ



FRONT WALLED PATIO

American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

File No.  2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR



INTERIOR

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.    2010020321
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | |
| Property Address | 6960 Schirlls St. | | | | | |
| City Las Vegas | | County Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address 6960 Schirlls St., Las Vegas, NV 89118 | | | |



DRIVEWAY TO THE
REAR SHOP AREA



VIEW FROM DECK
TOWARDS LAS VEGAS

American Real Estate Appraiser

**COMPARABLES 1-2-3**

| | | | | | File No. | 2010020321 |
| --- | --- | --- | --- | --- | --- | --- |

Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



**COMPARABLE #** 1
8440 Warbonnet Way
Clark County



**COMPARABLE #** 2
6195 W. Oquendo Rd.
Clark County



**COMPARABLE #** 3
7220 La Cienega St.
Clark County

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321

Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

Information about the subject property was obtained from public records using the County's websites, and, if a reasonably recent listing of the property was detected, from Multiple Listing data. This information included the age of the improvements, the last date of sale, the tax account number and legal description contained in these records, physical characteristics, including square foot information and room count, the assessed valuation of the land and the improvements, current real estate taxes and zoning information. Maps showing the subject site and the subject market area were examined and prepared for inclusion in the appraisal report.

A physical inspection of the subject property was made, including both the exterior and interior of the subject dwelling, and an analysis was made of the neighborhood, site and improvements. This inspection and analysis included the consideration of any known factors that could be expected to have an impact on the value of the subject property. Although due diligence was exercised, the appraiser is not an expert in matters such as pest control, structural engineering, hazardous substances or environmental hazards, and no warranty is given as to these elements.

The subject improvements were measured and sketched, and the pertinent square foot areas of the improvements were calculated. Personal property was not included within the estimate of value.

An analysis was made of the subject real estate market and of available market/sales data, utilizing Clark County Assessors Records and Multiple Listing data. Those sales considered to provide the best indication of the market value of the subject property were selected and compared to the subject in the Sales Comparison Analysis. Information about the comparables was verified, including pertinent financing information relating to the transaction, using the named sources.

Dollar adjustments were made to each of the comparable properties, reflecting estimated market reaction to those items of significant variation between the subject and comparable properties. If a significant item in a comparable property was superior to, or more favorable than the subject property, a minus (-) adjustment was made to the comparable, thus reducing the indicated value of the subject in comparison to that comparable; if a significant item in a comparable was inferior to, or less favorable than the subject, a plus (+) adjustment was made, thus increasing the indicated value of the subject.

Further analysis was made, considering such factors as the comparables' relative proximity to the subject property, recentness of sale and overall similarity to the subject property, in order to reconcile to the final estimate of the value of the subject property by the Sales Comparison Approach to value.

The appraisal report was prepared, together with attached exhibits, and the completed appraisal report was delivered to the client, which constituted completion of the assignment.

THIS IS APPRAISAL IS PRESENTED IN A SUMMARY REPORT.

DIGITAL PHOTOS AND SIGNATURES
All digital photos are originals and have not been altered or enhanced in any way.

This report has been signed with my digital signature. The appraiser has taken the necessary steps needed to ensure the security of this appraisal. In this particular case, the lender was not provided with a computer file of the appraisal report that could be accessed by the appraisal program used by the appraiser. However, the lender has either received the appraisal report in a .PDF format or has received two hard copies (printed on paper) of the appraisal report, either one which upon receipt shall be considered delivered at that time. Therefore, it is the appraiser's opinion that there is no security risk involved with this report.

PURPOSE - The purpose of this appraisal is to provide an opinion of market value, as defined herein, of a fee simple title of the subject, and to provide sufficient and supportable data for legal proceedings and settlement. This opinion of market value is to be used solely by the client. The function is to provide an opinion of value for legal proceedings and settlement purposes of the client.

| | |
|---|---|
| Appraiser Name   B. Kent Vollmer | Supervisor Name |

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

INTENDED USERS - The Intended Use of this appraisal and appraisal report are as stated in the report form as follows: "The intended user of this appraisal report is the client". No other intended users have been identified to the Appraiser and none are assumed. Pursuant to USPAP SR1-2.a, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

Use of this appraisal and appraisal report by other users is not intended by the appraiser. Unless otherwise identified by the Client as being an Intended User, all other third parties are considered to be unintended users, including but not limited to the borrower in the pending loan transaction, other mortgage lending institutions and other governmental agencies not involved in the mortgage lending process. Specifically, any potential buyers or outside lenders contemplating purchase or mortgage activity on this property are urged to seek a separate opinion of value from a competent and duly licensed/certified appraiser. Any additional requests in this assignment by third parties must be requested in writing and may either be declined or if performed may be subject to additional billing to recover the costs associated with such requests.

INTENDED USE - The Intended Use of this appraisal and appraisal report as stated in the report form is "for the client to evaluate the property that is the subject of this appraisal for legal proceedings and settlement". No other intended uses have been communicated to the Appraiser and none are assumed.

Pursuant to USPAP SR1-2b, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

If a third party to this appraiser-client relationship desires an appraisal for their own uses, they are urged to seek one developed specifically for their uses from a competent and appropriately licensed/certified appraiser. The Appraiser in this assignment cannot accept responsibility for uses not otherwise identified at the time of engagement. Use of this appraisal report for other purposes is therefore not intended by the appraiser.

USE: Reading the appraisal report or possessing the report does not constitute use. Relying on the appraisal report to understand how the appraiser developed the opinion of value does not constitute use. Use means relying on the appraisal report to make a decision or to take an action.

This report may contain comments, conditions, and/or certifications added by the signing appraiser including, but not limited to, this Supplemental Addendum. These items shall supersede and take precedence over all other language, requirements, or conditions contained in any preprinted and/or third-party forms or documents included in, or incorporated by reference into, the appraisal report.

OWNERSHIP OF INTELLECTUAL PROPERTY AND/OR DATA - American Real Estate Appraisal expressly retains all right, title, and interest in all patents, trademarks, trade names, trade secrets, software, data, conclusions, opinions, valuations, or other information included in, arising out of, or in any way related to this appraisal or the provision of appraisal services to the named client and/or Intended User. The report and information supplied by the staff and/or agents of American Real Estate Appraisal is a culmination of intellectual education, professional experience, personal investigation, and know-how, which shall at all times remain the property of American Real Estate Appraisal. No person shall be entitled to break down, strip out, mine, or disseminate any component or part of this report, including, but not limited to, any conclusions, valuations, opinions, or other data compilations herein. Notwithstanding, the Intended User as defined above may use this appraisal report and the contents herein for the limited purpose and use identified above.

Appraiser Name    B. Kent Vollmer                        Supervisor Name

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

Borrower    Randall and Teresa Fitzgerald

| Property Address | 6960 Schirlls St. | | | | | | |
|---|---|---|---|---|---|---|---|
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

ADEQUACY OF SCOPE - The appraiser has proposed and the Client has agreed (prior to submission) that the level of development and reporting detailed above is sufficient to address the substantiate criteria of a reasonable Scope of Work within the context of the Intended Users and Intended Use. With the exception of revisions made for the purpose of correction of any errors, the Appraiser does not anticipate further development or reporting requirements for this assignment. Any additional requests from the Client or any third parties may represent a change in the assignment conditions and require the development of a new assignment. With the exception of corrections of any errors or omissions, any additional requests must be made in writing and may be subject to additional billing to recover the costs associated with the additional work.

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, complete visual observation of the interior and exterior of the subject property, its neighborhood, and selection of comparable sales within the subject's market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

The appraiser is not a home inspector and the appraisal report is not a home inspection. The appraisal report cannot be relied upon to disclose hidden defects that are not apparent from a visual observation of the surfaces of the subject property from standing height. The testing of systems (structural, electrical, mechanical, heating, cooling, plumbing) and components (such as appliances, fixtures, doors, windows, etc.) lies outside of the scope of this appraisal assignment.

This report is not intended for use by the client for the purpose of identifying any adverse conditions in the subject's systems and components which might be revealed by any inspections by licensed professionals in any relevant field. This appraisal does not guarantee that the subject property is free of undetected problems, possible defects or environmental hazards that could exist.

Complete visual inspection of the interior areas of the subject property: A visual observation from standing height of the accessible areas and unobstructed, exposed surfaces of the living area without removal of personal possessions. It includes the visual observation of attached automobile storage, if any, as well as of any attached accessory buildings judged by the appraiser to have contributory value.

Complete visual inspection of the exterior of the subject property: A visual observation of the unobstructed, exposed, and accessible perimeter of the residential improvements from standing height. It includes the visual observation of detached automobile storage, if any, as well as of any detached accessory buildings judged by the appraiser to have contributory value.

Living area: Living area is defined as legal, finished, permanently heated, living space contiguous with other living area and regarded by a typical purchaser as being habitable and as having utility. This appraisal report attempts to conform to The American National Standards Institute ANSI Z765-2003, approved November 2003.

Estimated marketing time is based on current and/or past studies of sales activity provided by the Las Vegas Multiple Listing Service, and the appraiser's knowledge of the property's market. The estimate assumes proper pricing and marketing. The estimated marketing time is typically less than three months but could be up to six months.

This appraisal utilizes digitized electronic signatures that prevent the altering of the appraisal report in any manor with the removal of the appraiser's signature. These signatures are secure and irrevocable, binding the appraiser(s) to the accuracy and completeness of the appraisal report.

ADDITIONAL COMMENTS

•The comments in this addendum are intended to expand on the information provided on the form appraisal. It is our desire to insure that the client fully understands the appraisal process and methodology as well as the facts pertinent to the valuation of the subject property. The expanded narrative provided in this addendum is an effort to clarify those areas of the report that we have found that cause the most concern to our clients.

•In the market grid, ROOM COUNT contains the adjustments for bedrooms and bathrooms. The next line, GROSS LIVING AREA (GLA), contains the adjustment for GLA and the total room count. Note that any extreme in living area and/or room count may result in a functional utility adjustment under the separate line UTILITY.

•The sketch of the subject property is primarily to assist the reader (reviewer) in visualizing the property as we have seen it from our on site inspection. The floor plan provided is not intended to duplicate the builder's plan to scale, but rather to be a guide to the reviewer in evaluating normal traffic patterns within the property.

Appraiser Name  B. Kent Vollmer                                    Supervisor Name

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

Borrower   Randall and Teresa Fitzgerald

| Property Address | 6960 Schirlls St. | | | | | | |
|---|---|---|---|---|---|---|---|
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

•Areas of limited access (i.e. attic, crawl spaces, eaves, etc.) may not necessarily be inspected due to limited access. For purposes of this appraisal, a condition for any such applicable area is determined after a visual inspection of related/adjoining parts of the structure. An appraiser is a trained and experienced observer of real estate, but recognizing, detecting, or measuring contamination is often beyond the scope of the appraiser's expertise. Remediation and compliance cost estimation involves knowledge and experience beyond that of appraisers.
•This inspection is not intended to serve as a termite inspection, although any problems observed are noted in the appraisal. The buyer or homeowner should contact a qualified inspection professional for this service if so desired.
•Please be advised that the estimated marketing time for the subject is typically up to three months and sometimes up to six months.
•No items of personal property are included in the appraised value of the subject.
•In the preparation of this appraisal some or all of the photographs may be digitized. In no case have the photos been altered of manipulated in any manner. All photos are accurate representations of the properties.
•The Americans with Disabilities Act (ADA) became effective January 26, 1992. This inspection does not represent a specific compliance survey or analysis to determine whether or not the physical aspects of the improvements meet the ADA accessibility guidelines. This inspection in no way suggests ADA compliance. Since compliance expectations can change with each owner's financial ability to cure deficiencies, the value of the subject does not consider possible noncompliance.

Opinions or estimates expressed herein represent our best judgment but should not be construed as advice or recommendation to act. The appraiser should be contacted with any questions before this report is relied upon for decision making. This appraisal represents an estimate of value based on an analysis of information known to us at the time the appraisal was completed. I do not assume any responsibility for incorrect analysis because of incorrect or incomplete information, which was provided to the appraiser. If new data or documentation is provided to the appraiser, the value in this report is subject to change based on the significance of this new data.


ADVERSE ENVIRONMENTAL CONDITIONS

The existence of any hazardous material, including but not limited to, Urea formaldehyde foam insulation, radon gas, asbestos products, lead based paints or toxic waste contaminant, which may or may not be present in the subject improvements, on the site or in the immediate vicinity of the subject has not been observed by the appraiser. The appraiser has no knowledge of the existence of such hazardous material in or on the property.

It should be noted that homes built before 1978 may contain lead based paint and the client should be advised of its possible existence. Also, the EPA suggests that all homes be tested for radon gas. If the client has a concern then a qualified expert should be contacted.

Homes clad with EIFS (Exterior Insulation and Finish Systems) a.k.a. synthetic stucco or Dryvit have a very strong tendency to retain moisture between the sheathing of the home and the finish system. The design of EIFS, unlike other systems (brick, stone, siding, etc.), does not allow the moisture to drain out. The moisture can sit in contact with the sheathing for a prolonged period and rotting may result. Damage can be serious. Left unchecked, it can affect the structural components of these homes.

Radon gas can be found in any home whether it is new, old, on slab, a crawl space, or a basement. Radon is odorless, colorless, and is a radioactive gas produced by the breakdown of uranium in soil, rock, and water. It typically rises up through the ground and into a home through holes in the foundations. It is the radiation given off by radon and its decay products that is the health risk concern. These decay products become attracted to almost any object including airborne particles such as dust. The Surgeon General has warned that radon is the second leading cause of lung cancer in the United States. The U.S. EPA has established an "action level" for indoor radon at 4 pCi / L (pico curies per liter of air). If a home has a radon level of 4 pCi / L the situation should be remedied. The only way to know if a problem exists is to have the property tested.

Soils known to be unstable (shrink or swell), exist in the Las Vegas valley area. This type of soil condition causes the soil around the foundation of a dwelling to expand and contract due to changes in its water content. Indications of this problem include:

•Foundation walls that are buckled or bowed.
•Doors and windows that stick or don't open.
•Cracks in foundation walls.
•Cracks in exterior walls.
•Cracks in interior walls and ceilings.
•Sunken or buckled interior concrete floors.
While the appraiser has made a diligent observation of the subject property and none of these indicators were noted, the only way to insure that this problem is not present is to have the property tested.

Appraiser Name   B. Kent Vollmer                    Supervisor Name

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

Borrower   Randall and Teresa Fitzgerald

| Property Address | 6960 Schirlls St. | | | | | | |
|---|---|---|---|---|---|---|---|
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

NEIGHBORHOOD MARKET CONDITIONS

There is currently an over supply of homes for sale in the subject's market which has resulted in a "depressed market" and as a result homes are generally exposed for a moderate period of time before any offers for purchase are made. Currently few are made in excess of the asking price. As a result there are a sufficient number of recent transfers from which to select comparable sales data. This results in the use of market data that might require significant adjustments in order to compare to the subject property.

Current interest rates continue to remain at normal levels. Discount points and closing costs are typically negotiated between buyers and sellers and it is not uncommon for the Seller to pay some of these costs (between one and three percent of purchase price). A variety of loan packages are available including both conventional and government endorsed mortgages.

HIGHEST AND BEST USE

Highest and Best Use is that reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal. Alternatively, it is that use, from among legally permissible, physically and reasonably possible uses, found to be economically and financially feasible, and which results in the most profitable of the alternatives.

Given the current zoning, location and size of the site, surrounding land uses (recognizing the principle of conformity) and development characteristics of the market area, our opinion of the highest and best use of the property "as vacant" is for single family residential development. Further, the existing use/improvements exceed the value of the site vacant; therefore our opinion of the highest and best use of the site "as improved" is for continued single family residential use.

COMMENTS ON THE SALES COMPARISON ANALYSIS

Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen what are believed to be the best comparable sales available from a thorough and extensive search for comparable sales data in the subject's market. The sales selected for use in the analysis are considered to be the best indicators of value for the subject property. Other sales reviewed would have required excessive adjustments and were not considered to be as reliable as the sales chosen.

Adjustments within the Sales Comparison Analysis are based on the market extraction method, generally employing the matched pair process, and not specifically based on cost figures.

Every effort has been made to conform to FHLMC/FNMA Guidelines and in most cases, an even stricter interpretation found common to most investors in the secondary market.

To the best of the appraisers knowledge, all comparable sales were sold without special or creative financing or excessive sales concessions. Any excess seller concessions have been adjusted appropriately using "cash equivalency" to reflect accurate market response. Closing cost paid by the sellers of the comparable properties are equivalent to typical financing terms offered by third party institutional lenders in the local market. In the appraiser's opinion, these sales represent typical market financing transactions. The sales prices are not considered to be inflated due to special or excessive financing concessions. The indicated values of the comparable sales reflect the value of the subject real estate and include only those sellers closing cost normally paid by tradition or law in the market area.

Gross living areas shown for the comparable sales are estimates based on information form one or more of the following sources: Multiple Listing Service (MLS), county/city tax records, real estate agents, homeowners, builders, appraisers, interoffice data bank or actual measurements. Slight variations in size will have no effect on the estimate of value. All comparable sales are settled to the best of the appraiser's knowledge. Verification is with county records, and/or Realtor.

Appraiser Name   B. Kent Vollmer                    Supervisor Name

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020321
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | | |
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

FINAL RECONCILIATION

There is insufficient data available in the subject market to derive a gross rent multiplier or a gross monthly rent multiplier. As such, the methodology of the Income Approach was not developed to estimate the market value of the subject property. Furthermore, the Income Approach is not a generally accepted method for estimating the value of owner occupied single family residences in the subject's market.

Although the Cost Approach may not be required for the client specified in this report, the Appraiser is bound by the Uniform Standards of Professional Appraisal Practice (USPAP), which may or may not require the utilization of the Cost Approach for the specific subject property of this report. If the Appraiser has determined that the Cost Approach is necessary to produce a reliable and credible appraisal report than it has been included and supporting documentation is contained in the Appraiser's work file and summarized in the Cost Approach section of this report. If the Cost Approach was not considered necessary to produce a credible and reliable appraisal due to the age of the property and limitations in determining accrued depreciation, then the lack of inclusion of the Cost Approach does not result in departure from the USPAP.

Of the three traditional approaches to value, only the Sales Comparison Analysis has been applied. When sufficient data is available, the methodology of the Sales Comparison Analysis yields the most convincing indication of value for a single family residence in the subject's market area. Although substantial adjustments may be applied to the sales prices of the comparable properties, the data in this analysis is considered to be of sufficient quality and quantity to present a convincing estimate of value. Therefore, most weight is placed on the Sales Comparison Analysis in estimating the market value of the subject property as of the effective date of the appraisal. The value estimated by the Cost Approach, if used, is considered to be supportive.

COMPLIANCE TO INDUSTRY STANDARDS
The appraiser's analysis, opinions and conclusions were developed in accordance with and in conformity to the Uniform Standards of Professional Appraisal Practice (USPAP) standards rule 2-3.

COMPETENCY OF THE APPRAISER
In accordance with the Competency Rule of the Uniform Standards of Professional Appraisal Practice (USPAP), the appraiser certify that they have the education, experience and knowledge sufficient to appraiser the property being valued in this report. No one other than the appraiser signing the report has provided significant real property appraisal assistance in completing this report unless otherwise indicated.

SELF CONTAINMENT
This appraisal is intended to be a summary report with all the necessary information to enable the reader to understand the Appraisers opinion and follow the appraisers reasoning. No third party reports have been presented to, or reviewed by this appraiser, IE; sales contracts and addenda, pest reports, soil reports, title reports, structural, well, septic or roof reports (if applicable).

Appraiser Name   B. Kent Vollmer                         Supervisor Name

**EXHIBIT D**

**LIQUIDATION ANALYSIS**

**Randy & Teresa Fitzgerald**
**Liquidation Analysis**

The Debtors believe the Plan satisfies the "best interest of creditors" test that is set forth in section 1129(a)(7) of the Bankruptcy Code with respect to each impaired class under the Plan. There are nine impaired Classes under the Plan: (a) Class 1-8 Claims (Secured Claims); and (b) Class 9 Claims (Unsecured Claims).  The Debtors believe that these Classes will receive at least as much as they would if the Debtors' assets were liquidated in an orderly manner through a case under chapter 7 of the Bankruptcy Code. The Debtors believe this Liquidation Analysis and the conclusions set forth herein are fair and accurate, and represent management's best judgment with regard to the results of a liquidation of these Debtors.

The Liquidation Analysis was prepared by the debtors, with the assistance of both Charles T. Wright, Esq., and other professionals, if any, retained by the Debtors. The Liquidation Analysis is based on the Debtors' ongoing operating reports as of March 5, 2010, and is predicated on the assumption that the Debtors would file chapter 7 cases of the Bankruptcy Code on or about November 1, 2010.

The Liquidation Analysis assumes that the liquidation of the Debtors would be completed by a chapter 7 trustee during a four month period after the November 1, 2010 filing date, during which time all of the Debtors' major assets would either be conveyed to the respective lien holders or sold and initial distributions to creditors would be made, net of liquidation-related costs. Although the liquidation of some assets might not require four months, other assets would be more difficult to collect or sell, thus requiring a liquidation period that could require substantially longer than four months. For certain assets, estimates of the liquidation values were made for each asset individually. For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through an

orderly disposition. It is presumed that over an additional 18 month period, the chapter 7 trustee would resolve all claims and other matters involving the Debtors' estate and make additional distributions.

The Lender Claims arising under the Existing Mortgage Contracts are secured claims against the Debtor, as the borrower, and are secured by liens on the real property of the Debtors.

The Liquidation Analysis reflects the estimated cash proceeds, net of liquidation-related costs, which would be realized if the Debtors were to be liquidated in an orderly manner through the filing of a bankruptcy under chapter 7. Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by the debtors and by the Debtors' professionals, are inherently subject to significant economic uncertainties and contingencies beyond the control of the Debtors and their professionals, and are also based upon assumptions with respect to certain liquidation decisions which could be subject to change. **ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.**

The Liquidation Analysis assumes that liquidation proceeds would be distributed in accordance with section 726 of the Bankruptcy Code. If a chapter 7 liquidation were pursued for the Debtors, the amount of liquidation value available to unsecured creditors would be reduced, first, by the costs of the liquidation, including fees and expenses of the trustee appointed to manage the liquidation, fees and expenses of other professionals retained by the trustee to assist with the liquidation and asset disposition expenses, second, by the claims of secured creditors to the extent of the value of their collateral except as described herein, and third, by the priority and

41

administrative costs and expenses of the bankruptcy estates, including unpaid operating expenses incurred during the chapter 11 cases and any accrued and unpaid professional fees allowed in the chapter 7 cases.

The liquidation itself would trigger certain priority payments that would be made in full before any distribution of proceeds to pay general unsecured claims or to make distributions in respect of equity interests.

The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims, but generally assumes that Disputed Claims against the Debtors will be resolved in favor of the Debtors. Accordingly, estimates for various classes of Claims are based solely upon the debtor's own books and records. No order or finding has been entered by any Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in this Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors have projected amounts of certain Claims that are consistent with the estimated Claims reflected in the Plan with certain modifications as specifically discussed herein.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances, or other causes of action and does not include the estimated costs of pursuing those actions.

The table on the following page summarizes the recovery estimates for proceeds that would be available for distribution in Randy & Teresa Fitzgerald's hypothetical chapter 7 bankruptcy case.

**RANDY & TERESA FITZGERALD**

*Liquidation Analysis*

| | Notes | Book Value as of 9/25/2009 | Potential Recovery | | | |
|---|---|---|---|---|---|---|
| | | | Low | | High | |
| | | | ($) | (%) | ($) | (%) |
| Cash and Cash Equivalents | (A) | $  - | $  - | 100.0% | $  - | 100.0% |
| Other Assets | | Exempt | Exempt | Exempt | Exempt | Exempt |
| Real Property | | | | | | |
|    Homewillow | (B) | $225,000.00 | $135,000.00 | 60.0% | $168,750.00 | 75.0% |
|    Schrills | (B) | $318,000.00 | $190,800.00 | 60.0% | $238,500.00 | 75.0% |
|         Total | | $543,000.00 | $325,800.00 | 60.0% | $407,250.00 | 75.0% |
| **Gross Liquidation Proceeds** | | **$543,000** | **$325,800** | **60.0%** | **$407,250** | **75.0%** |
| | | | | | | |
| **_Less: Wind-Down Costs_** | | | | | | |
|    Trustee Fees | (C) | | $9,774 | 3.0% | $12,218 | 3.0% |
|    Professional Fees | (C) | | $4,887 | 1.5% | $6,109 | 1.5% |
|    **Total Liquidation Costs** | (C) | | **$14,661** | | **$18,326** | |
| | | | | | | |
| **Net Liquidation Proceeds Available for Secured Debt** | | | **$311,139** | | **$388,924** | |
| | | | | | | |
|    Other Secured Claims | | $0.00 | | | | |
| **Total Secured Debt** | | $  543,000.00 | $325,800.00 | 60.0% | $407,250.00 | 75.0% |
| | | | | | | |
| **Net Liquidation Proceeds Available for Admin. & Priority Claims** | | | **$0** | | **$0** | |
| | | | | | | |
| **Net Liquidation Proceeds Available for Unsecured Claims** | | | **$0** | | **$0** | |
| | | | | | | |
| **Total Unsecured Claims** | | $705,417.26 | **0** | **0.0%** | **0** | **0.0%** |
| | | | | | | |
| **Net Liquidation Proceeds Available for Equity Interests** | | | **$0** | | **$0** | |

## NOTES TO LIQUIDATION ANALYSIS

*Note A – Cash and Cash Equivalents*

The Liquidation Analysis assumes that rents during the liquidation period would not generate additional cash available for distribution except for those pledged as rents to secured creditors as an Order of Adequate Protection. All other outstanding cash balances are assumed to be 100% recoverable.

*Note B – Secured Claims - Real Property*

Real Property includes all land owned by the Debtors. The recovery rate is assumed to be

equal to 60% to 75% of the most recent fair market value estimates of each Property based on the appraised values included in the Plan and Disclosure Statements.

*Note C – Costs Associated with Liquidation*

Chapter 7 trustee fees include those fees associated with the appointment of a chapter 7 trustee in accordance with section 326 of the Bankruptcy Code. Trustee fees are calculated at a flat rate of 4% to 5% of the total liquidation value of the Debtors, which serves to understate such liabilities. Chapter 7 professional fees include legal, appraisal, broker and accounting fees expected to be incurred during the liquidation period that are not already deducted from liquidation values.

Professional fees are assumed to be 1-2% of the total liquidation value.

*Note D – Unsecured Claims*

For purposes of the Liquidation Analysis, the Debtors have assumed that unsecured claims will consist of those listed in the schedules as of the Petition Date, less any amounts entitled to priority under section 503(b)(9) and 507(a)(4) of the Bankruptcy Code. Unsecured Claims are estimated to be $705,417.26.