CHARLES T. WRIGHT, ESQ.
Nevada Bar No. 10285
AIMEE PULLEY, ESQ.
Nevada Bar No. 11246
PIET & WRIGHT
3130 South Rainbow Boulevard, Suite 304
Las Vegas, Nevada 89146
*Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>FITZGERALD, RANDY,<br><br>FITZGERALD, TERESA,<br><br>Debtor(s). | CASE NO.: BK-S-10-13624-BAM<br><br>IN CHAPTER 11 PROCEEDINGS |

## DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

In accordance with 11 U.S.C. §1121 and §1106, Randy and Teresa Fitzgerald (hereinafter referred to as "Debtors"), the Debtors herein, by and through their attorneys, CHARLES T. WRIGHT, ESQ., and AIMEE PULLEY, ESQ., of the law firm of PIET & WRIGHT, file this Debtors' First Amended Plan of Reorganization (hereinafter referred to as the "Plan").

## I. DEFINITIONS

The following terms, when used in the Plan, shall unless the context otherwise requires, have the following meanings, respectively:

1.      **"Administrative Claim"** shall mean any claim constituting a cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code (hereinafter referred to as the "Code"), including, without limitation, any actual and necessary expenses of preserving the estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any

fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

2.  **"Administrative Claimant"** shall mean any Person, including a Professional, entitled to payment on account of an Administrative Claim.

3.  **"Allowed Amount"** shall mean the dollar amount of a claim approved and allowed by final order of the Bankruptcy Court.

4.  **"Bankruptcy Code"** is the Bankruptcy Code of 1978 as contained in Title 1.1 U.S.C. Section 101 et seq. and amendments thereto.

5.  **"Business Day"** shall mean any day other than Saturday, Sunday, a legal holiday or a day on which national banking institutions in Nevada are authorized or obligated by law or executive order to close.

6.  **"Bar Date"** is the deadline previously established by the court, after which any proof of claim filed will have no effect on this Plan and no right to participate with other creditors under the Plan. Pursuant to the Notice of Meeting of Creditors promulgated by the Court, the bar date occurs 90 days after the first date set for the meeting of creditors. In the instant case, the meeting of creditors was held on April 15, 2010, and the bar date is July 14, 2010.

7.  **"Claim"** shall mean a right to payment from the Debtors' Estate, which is evidenced by a timely filed Proof of Claim which is allowed by the Court, or if a Proof of Claim is not filed by the creditor, a right which otherwise appears in the Debtors' bankruptcy schedules and (i) is not listed as disputed, contingent or unliquidated, (ii) has not been resolved by Final Order of the Court in this reorganization case or, (iii) which has been otherwise satisfied.

8.  **"Class"** shall mean any class into which Claims are classified.

9.  **"Confirmation"** shall mean the entry by the Bankruptcy Court of an order confirming the plan in accordance with Chapter 11 provisions of the Bankruptcy Code.

2

10.     **"Confirmation Date"** shall mean the date set by the Court pursuant to § 1128 of the Bankruptcy Code for hearing on confirming the Plan on which the Court determines that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

11.     **"Confirmation Hearing"** shall mean the hearing conducted as it may be continued from time to time by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan.

12.     **"Confirmation Order"** shall mean an order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

13.     **"Court"** shall mean the United States Bankruptcy Court for the District of Nevada, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

14.     **"Creditors"** shall mean all creditors of the Debtors holding claims for debts, liabilities, demands or claims of any character whatsoever, as defined in § 101(10) of the Bankruptcy Code.

15.     **"Creditors Committee"** shall mean the Creditors Committee appointed by order of the Court, the members thereof and any successor members. No creditors committee was appointed in this proceeding.

16.     **"Debtors"** shall mean Randy and Teresa Fitzgerald, as Joint Debtors.

17.     **"Debtors' Assets"** shall mean all right, title and interest in and to all property of every kind of nature, whether known or unknown, owned by Debtors or the Estate, including, but not limited to, any cash, real property interests, tax-refunds, equipment, furniture, or other tangible property, accounts receivable, work-in-process, contract rights, insurance policies, intangible property, books and records, and whether known or unknown, causes of action, including, but not limited to, (i) all claims and rights against insiders and

affiliates of Debtors and third parties and (ii) all claims and rights arising under or related to the Bankruptcy Code, including but not limited to, sections 362, 505, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

18.    **"Discharge"** shall mean that confirmation of the Plan is intended to, will, and does fully discharge the Debtors as provided in Section 1141(d) of the Bankruptcy Code and the Plan does not provide for exceptions to discharge under 1141(d)(3), except as to any post-petition claims.

19.    **"Disputed Claim"** shall mean a Claim against the Debtors (a) that is listed in the Debtors' Schedules as disputed, contingent or unliquidated; (b) that is listed in the Debtors' Schedules as undisputed, liquidated and not contingent and as to which a proof of claim has been filed with the Court, to the extent the proof of claim amount exceeds the scheduled amount; (c) that is not listed in the Debtors' Schedules, but as to which a proof of claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection related to the allowance of only part of a claim, such claim shall be a Disputed Claim only to the extent of the objection.

20.    **"Distribution Date"** shall mean the date designated by the Plan on which distribution of payment of Dividends to Allowed Unsecured Claims.

21.    **"Dividend"** shall mean a payment in cash in the amount provided by the Plan for a designated class of claimants.

22.    **"Effective Date"** shall mean the thirtieth (30th) day following the date of the order confirming the plan, if no notice of appeal is timely filed, or if a notice of appeal is filed, during which time no motion for stay pending appeal is granted or supersedes bond is approved and filed; but, in the event a stay is granted or supersedes bond is approved and filed,

4

then it shall be the date on which the order confirming plan is a final order.

23. **"Final Decree"** shall mean the order of the Court entered after all payments and distributions of monies called for under the Plan have been made (i) discharging the Trustee and canceling his bond, (ii) making provision by way of injunction or otherwise as maybe equitable, and (iii) closing the reorganization case.

24. **"Final Order"** shall mean an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

25. **"Insider"** shall have that meaning defined by 11 U.S.C. §101(31).

26. **"Lien"** shall mean mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on property which is effective under applicable law as of the date of the commencement of the reorganization case.

27. **"Official Committee of Creditors"** shall mean those creditors appointed by the Office of the United States Trustee to serve in this case.

28. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

29. **"Priority Claim"** shall mean those allowed claims which are entitled to the priority provided for under §507(a) of the Bankruptcy Code.

30. **"Pro Rata Share"** shall mean the amount which is the result of multiplying the monies available for distribution to a named class of creditors by that fraction in which the numerator is the allowed amount of a particular claim in the named class and the denominator is the total of the amounts of all the claims in the named class.

31. **"Reorganized Debtors"** shall mean the Debtors after the entry of Order

Confirming the Plan.

32.    **"Secured Claim"** shall mean the claim of any creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with §506 of the Bankruptcy Code.

33.    **"Secured Tax Claim"** shall mean a claim described in 11 U.S.C. §507(a)(8) together with all accrued interest and penalties, which is also a Secured Claim.

34.    **"Substantial Consummation"** shall occur upon the payment of the first Distribution under the Plan.

35.    **"Unsecured Claims"** shall mean all business claimants or other claimants of any nature, holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

36.    **"Unsecured Creditor"** shall mean the holder of an unsecured claim.

## <u>General Terms and Conditions</u>

This Plan is intended to deal with all claims against the Debtors of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code. However, only those claims allowed pursuant to §502(a) of the Bankruptcy code will receive treatment afforded by the Plan.

## <u>II.  CLASSES OF CREDITORS AND SPECIFIC TREATMENT OF CLAIMS</u>

The Plan of Reorganization proposes the continued operation of the Debtors' business with the net profits to be utilized to fund the Plan. The Debtors' Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

## Holders of Secured Claims

Pursuant to the Bankruptcy Code, Claims which are secured by a lien or other security interest may be categorized into a secured and an unsecured component. In general, Claims are Secured Claims to the extent of the value of the collateral that secures the Claims and they are Unsecured Claims to the extent of any deficiency in the value of the collateral. All payment on secured claims will be paid based on the value of the property.

The secured creditors in this case are listed as follows:

| | | |
|---|---|---|
| Residential Credit Solutions | in the amount of | $318,000.00 |
| Wells Fargo Home Mortgage | in the amount of | $220,624.59 |
| Wells Fargo Home Mortgage | in the amount of | $4,375.41 |

## Holders of Unsecured Claims

The Debtors' Schedules contain a list of unsecured claims. This list was compiled from data from the Debtors' records and may not be entirely accurate. Creditors should consult the Schedules attached as **Exhibit "A".** The total amount of unsecured claims is $705,417.26. The last day to file a proof of claim is to be set by the Court. The Debtors have reviewed both the schedules and the claims filed to determine the accuracy of both. Some of these creditors filed their Proof of Claims as secured claims and some creditors filed Proof of Claims containing amounts different from those scheduled by the Debtors. Debtors will file an amended Schedule F to reflect these changes in claim status.

The Debtors reserve the right, in the event it is unable to make the full quarterly or monthly payment to any Class of Creditors, ("the affected Class"}, in any given year, to pay the unpaid amount over the remaining three quarters of that year. In the event the Debtors are unable to make a quarterly payment, the Debtors shall send notice of the inability to make the payment to all of the Creditors in the affected Class. The Creditors in the affected Class shall have the

right, with reasonable notice, to audit the Debtors books and records from the prior quarter to determine that a payment is not able to be made during that quarter. Such a delay in payment shall not constitute a default under the Plan of Reorganization. The Debtors shall be allowed only one missed payment per Class per 12 month period and shall bring the missed payment current during the following 11 months.

The Debtors' Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

### Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, Debtors did not place the following claims in any class:

**Allowed Administrative Claims**. Each holder of an Administrative Claim that becomes an Allowed Administrative Claim prior to the Effective Date shall be paid in cash and in full without interest on the Effective Date, the date on which such claim becomes an Allowed Claim or on such later date as the Debtors and the Holder of any Administrative Claims shall agree. An Administrative Claim that becomes an Allowed Administrative Claim on or after the Effective Date shall receive without interest within fifteen (15) days of such Administrative Claim becoming an Allowed Administrative Claim the amount of such claim. Except as provided for herein, a claim for an Administrative claim shall be forever barred and shall not be enforceable against the Debtors, the Plan Trust, the Reorganized Debtors or their respective properties, agents, successors or assigns, unless a request for payment of Administrative Claim is filed with the Court and served upon the Reorganized Debtors, Debtors' counsel and the Official Committee of Creditors no later than thirty (30) days after the Confirmation Date.

**Professional Fees.**  Administrative claims are unimpaired and are Claims entitled to priority by Section 507(a)(1) of the Bankruptcy Code and will consist of fees for services rendered and expenses incurred by the Court appointed Counsel and other professional persons for the Debtors prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid.  The members of this class include the law firm of PIET & WRIGHT, Counsel for the Debtors.

All professional fees claims shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtors to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. The anticipated total fees to be paid in this class are in the range of $16,000.00 to $20,000.00, to the Debtors' Attorneys, inclusive of the retainer.

**The United States Trustee.**  Administrative expenses claims of the United States Trustee are unimpaired and consist of the post confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk. These fees are based on the amount of disbursements made by the Debtors and are paid on a quarterly basis. The Reorganized Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930 (a)(6) until such time as this Bankruptcy Court; enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Reorganized Debtors shall file with this Bankruptcy Court and shall serve on the United States Trustee a financial report for each month, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

In the event that the Debtors owe pre-confirmation U.S. Trustee's fees on the date of

9

confirmation, the Debtors shall pay all past-due fees to the U.S. Trustee on or before the effective date of the Plan.

## Classified Claims

**Secured Claims**

Valuation was achieved through full property appraisals by licensed Nevada Appraisers, copies of which are attached hereto as **"Exhibit "B."** These claims are secured by UCC filing statements with liens against the real property against the debtors and will be paid monthly in the amounts listed above and for the time period specified for each loan.

Adequate protection orders entered into on these properties will terminate upon the acceptance of the plan and the regular payments will begin as detailed above in the 1st month following plan acceptance.  The debtors are responsible to pay all post petition taxes and will hold insurance on the subject properties.

In the event of a default, there will be full reinstatement of the collection powers and rights of these secured creditors as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the filing of Notices of Default and the powers of foreclosure and sale of the defaulted property.

**Class 1.**  Class 1 is impaired and consists of a secured claim, on the rental property of the debtors, located at 6960 Schrills Street, Las Vegas, Nevada 89118, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Residential Credit Solutions | 4.25% | 30 years | $318,000.00 | $1564.37 |

The claim is secured by liens on the real property and will be paid monthly during the plan in regular amounts of  the totals listed in the above table in the payment column and shall continue at the above interest rate and term specified.

In the event of a total default, there will be full reinstatement of the collection powers

and rights of the class 1 creditors as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

A failure by the Reorganized Debtors to make a Plan payment to Class 1 pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtors fail to cure an event of default as to tax payments within ten (10) calendar days after service of a written notice of default from a priority tax creditor, then the priority tax creditor many (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law of the tax creditor's state, and (c) seek such relief as may be appropriate in this Court.

**Class 2.** Class 2 is impaired and consists of a secured claim, on the rental property of the debtors, located at 652 Homewillow Avenue, Las Vegas, Nevada 89123, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Wells Fargo Home Mortgage | 4.25% | 30 years | $220,624.59 | $1085.34 |

The claim is secured by liens on the real property and will be paid monthly during the plan in regular amounts of  the totals listed in the above table in the payment column and shall continue at the above interest rate and term specified.

In the event of a total default, there will be full reinstatement of the collection powers and rights of the class 2 creditors as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

A failure by the Reorganized Debtors to make a Plan payment to Class 2 pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtors fail to cure an event of default as to tax payments within ten (10) calendar days after service of a written notice of

default from a priority tax creditor, then the priority tax creditor many (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law of the tax creditor's state, and (c) seek such relief as may be appropriate in this Court.

**Class 3.**  Class 3 is impaired and consists of a secured claim, on the rental property of the debtors, located at 652 Homewillow Avenue, Las Vegas, Nevada 89123, as follows:

| Secured Creditor | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Wells Fargo Home Mortgage | 4.25% | 5 years | $4,375.41 | $81.07 |

The claim is secured by liens on the real property and will be paid monthly during the plan in regular amounts of  the totals listed in the above table in the payment column and shall continue at the above interest rate and term specified.

In the event of a total default, there will be full reinstatement of the collection powers and rights of the class 3 creditors as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

A failure by the Reorganized Debtors to make a Plan payment to Class 3 pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtors fail to cure an event of default as to tax payments within ten (10) calendar days after service of a written notice of default from a priority tax creditor, then the priority tax creditor many (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law of the tax creditor's state, and (c) seek such relief as may be appropriate in this Court.

**Taxing Authorities & Priority Claims**

**Class 4.**  Class 4 is unimpaired as to the amount set forth on the claim filed which was

categorized as a priority claim and consists of those taxes assessed and due and owing the Internal Revenue Service, in the amount of $25,426.62. Therefore, Debtors will pay the Internal Revenue Service for the full amount of taxes claimed as priority over a term of five years to include an interest rate of 4%, as follows:

| Taxing Authority | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Internal Revenue Service | 4.0% | 5 years | $25,426.62 | $468.27 |

**Class 5.**  Class 5 is unimpaired as to the amount set forth on the claim filed which was categorized as a priority claim and consists of those taxes assessed and due and owing the Nevada Department of Taxation, in the amount of $8,659.09. Therefore, Debtors will pay the Internal Revenue Service for the full amount of taxes claimed as priority over a term of five years to include an interest rate of 4%, as follows:

| Taxing Authority | Interest | Term | Principal | Payment |
|---|---|---|---|---|
| Nevada Department of Taxation | 4.0% | 5 years | $8,659.09 | $159.47 |

Default of the Plan shall be defined as the failure of the proponent of the plan to make payments or perform any action required to be made under the terms of the confirmed plan.

In the event of a default, there will be full reinstatement of the administrative collection powers and rights of these Taxing Authorities as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

A failure by the Reorganized Debtor to make a Plan payment to priority tax creditors pursuant to the terms of the Plan shall be an event of default. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) calendar days after service of a written notice of default from a priority tax creditor, then the priority tax creditor many (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under

13

applicable non-bankruptcy law of the tax creditor's state, and (c) seek such relief as may be appropriate in this Court.

**Unsecured Claims**

**Class 6**.  Class 6 is impaired and consists of all allowed unsecured creditor claims. The members in this class shall receive 1% of their claim. All Class 6 creditors shall be paid their Pro Rata share of the funds in the Unsecured Creditors' Fund quarterly over a period of years beginning in the first year after the Effective Date of the Plan and continuing for 60 months (20 quarters) within the plan period.  The Unsecured Creditors' Fund shall be funded by a payment of $352.71 per quarter by the Debtors.

## III.  BAR DATES FOR FILING PROOFS OF CLAIM

Any creditor desiring to receive a distribution under the provisions of this Plan, and whose claim is not evidenced by a court order or set forth on the Debtors' schedules, must file a proof of claim or request for compensation with the Bankruptcy Court not later than July 14, 2010. This bar date is set by the Bankruptcy Court and noticed to all creditors pursuant to the Notice of Creditor's Meeting.

The Debtors have filed as a part of its schedules a list of all creditors, setting forth the identity of each creditor and an indication of the amount due each creditor. Unless a claim is listed as disputed, contingent or unliquidated, each creditor's claim will be allowed in the amount and status stated on the Debtors' schedules. Any creditor may file a proof of claim in a different amount or status not later than July 14, 2010. Failure to file a timely proof of claim will force a creditor to accept the amount of his/her claim as listed on the Debtors' schedules.

Claims listed as disputed, contingent, or unliquidated will not be allowed unless a proof of claim with all supporting documents are filed prior to the Bar date. In the event a creditor has

filed a proof of claim in these proceedings with which the Debtors disagree, the Debtors have the option to file an objection to that claim and request the Court to determine the true value of the claim. The Debtors shall attempt to resolve all objections to claims prior to confirmation. However, the Debtors shall have 120 days from the effective date of the Plan to file objections to claims.

Any proof of claim for a debt listed on the Debtors' Schedules as disputed, contingent, or unliquidated which is not timely filed shall be of no force and effect. No distribution will be made to any creditor that has not timely complied with this provision.

<h2 align="center">IV. TRANSFER OF CLAIMS</h2>

In the event any creditor shall transfer its claim, it shall do so only in compliance with Bankruptcy Rule 3001, and it shall promptly notify the Debtors in writing of such transfer. The Debtors shall be entitled to assume that no such transfer of any claim has been made by any creditor until after compliance and receipt of notice. Each transferee of any claim shall take the claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken under the Plan; and except as expressly otherwise provided in the notice. The Debtors shall be entitled to assume conclusively that the transferee named in the notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

<h2 align="center">V.  MEANS FOR EXECUTION OF THE PLAN</h2>

**Plan Distributions**

The Plan sets forth the amount and timing of distributions that are to be made to holders of Claims. The Debtors will work as the disbursing agents.  All rents received for Debtors' properties will be first devoted to principal and interest payments to secured creditors, maintenance and repairs for each property, taxes, insurance, and management.  All other "current

monthly income" of Debtors will be utilized to pay unsecured creditors as required by the confirmed Plan over the 60 month period.

**Vesting of Property of the Estate in the Reorganized Debtor**

On the Effective Date of the Plan all property of the Debtors and of the Estate shall vest in the Reorganized Debtors free and clear of liens, claims, interests and encumbrances arising on or before the Effective Date, except as otherwise provided in the Plan or the Confirmation Order. If the Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under Chapter 7 prior to Substantial Consummation of this Plan, all property vested in the Reorganized Debtors and all subsequently acquired property owned by the Reorganized Debtors as of or after the conversion date shall revert in the Debtors and constitute property of the bankruptcy estate in the converted case.

**Continuation of Business Operations**

From and after the Effective Date of the Plan, the Reorganized Debtors are authorized to continue normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

**Discharge of Debtor and Injunction**

Except as otherwise provided in the Plan, upon completion of the quarterly payments set forth in this Plan to occur over a period of five years, the Debtors will seek discharge of all Claims against the Debtors of any nature at all, including, without limitation, any liability of a kind specified in sections 502(g), 502(h) or 501(i) of the Bankruptcy code, that arose, or has been asserted against the Debtors any time before the Effective Date or that arises from any pre-confirmation conduct of the Debtors whether or not the Claim is known to or knowable by the current or any former holder of the Claim. The discharge of the Debtors will be effective as to

each Claim whether or not the Claim constituted an Allowed Claim and whether or not the holder of the Claim voted to accept the Plan.

In Addition, the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor and its assets and properties and any proceedings not yet instituted against the Debtor and its assets and properties, except as otherwise provided in the Plan. As provided in section 524 of the Bankruptcy Code, the discharge operates as an injunction against the prosecution of any Claim so discharged.

Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from:

(a)    commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, or the Reorganized Debtors, or their property, with respect to any such Claim or Equity Interest,

(b)    the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors, or their property,

(c)    creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or the Reorganized Debtors, or their property with respect to such Claim, and

(d)    asserting any right of subrogation of any kind against any obligation due the Debtors, or the Reorganized Debtors, or the property of the Debtors or the Reorganized Debtors.

Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this case pursuant to section 105, if any, or section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date will remain

in full force and effect until the Effective Date.

**Continuation of Anti-Discrimination Provisions of Bankruptcy Code**

A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, the Reorganized Debtors, or another Person with whom the Debtors have been or is associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

**Employment of Professionals and Experts**

The Reorganized Debtors may, but shall not be required to, consult with attorneys, accountants, appraisers, brokers or other parties necessary to assist in the proper administration of this Plan and the affairs of the Reorganized Debtors. The Reorganized Debtors may select and employ such persons without Bankruptcy Court review or approval.

**General Powers**

The Reorganized Debtors shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable corporate law. The members of the Reorganized Debtors shall have the power to take all such actions as in their judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to each power expressly granted in the subsections below and any power reasonably incidental thereto. The members of the Reorganized Debtors shall have the power to:

      a.      Make all distributions for or contemplated by this Plan.

      b.      Consistent with maintaining the value and liquidating the residual assets of the Reorganized Debtors, invest in time or demand deposits, including certificates of

deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof Any and all investment instruments must have a maturity of not more than six (6) months from the date of issuance.

c.    Supervise and administer the resolution, settlement and payment of Claims and the distributions to the holders of Allowed Claims in accordance with this Plan.

d.    Enter into any agreement required by or consistent with the Plan and perform all of his obligations there under.

e.    Abandon any of the assets of the Reorganized Debtors if he concludes that such assets are of no benefit to the Creditors.

f.    Market and sell the Debtors' assets in accordance with the exercise of prudent business judgment.

g.    Participate in or initiate any proceedings before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Reorganized Debtors, including without limitation all causes of action under Chapter 5 of the Bankruptcy Code and all state and federal causes of action or any other litigation which constitute an asset of the Reorganized Debtor and pursue to settlement or judgment such actions.

h.    Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Case.

i.    Act in the name of or in the place of the Debtors in any action before the United States Bankruptcy Court or any other judicial or administrative body.

j.        Select and employ such professionals, agent or employees as they deem necessary to assist in the administration of the affairs of the Reorganized Debtors and compensate such persons.

k.        Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan.

l.        Propose any amendment, modification or supplement to this Plan or the Reorganized Debtors' corporate governance documents.

m.        Receive, conserve and manage the assets of the Reorganized Debtors and sell or otherwise dispose of such assets for a price and upon such terms and conditions as they deem most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith.

n.        Open and maintain bank accounts on behalf of or in the name of the Reorganized Debtors.

o.        Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Reorganized Debtors.

p.        Pay all lawful expenses, debts, charges and liabilities of the Reorganized Debtors.

q.        Enforce all provisions of this Plan.

r.        Protect, perfect and defend the title to any of the assets of the Reorganized Debtors and enforce any bonds, mortgages or other obligations or liens owned by the Reorganized Debtors.

s.        Carry insurance coverage, including insurance to protect the post confirmation officers and directors against claims brought against the post-confirmation officers and directors acting in their capacities with the Reorganized Debtors, in such

20

amounts as they deem advisable.

t.      Establish such reserves for taxes, assessments and other expenses of administration of the Reorganized Debtors as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Reorganized Debtors.

u.      Exercise such other powers and duties as are necessary or appropriate in his discretion to accomplish the purposes of the Plan.

**Limitations on the Powers of the Reorganized Debtors' Management**

Notwithstanding anything in this Plan to the contrary and only with a Bankruptcy Court Order entered after notice and hearing, may the Reorganized Debtors' management:

a.      Modify and amend this Plan, except in the manner set forth herein.

b.      Loan Available Cash or any of the assets of the Reorganized Debtors to any officer, manager or partner.

c.      Make any compromise regarding the amount of any payment due to the Reorganized Debtors, agree to a discounted payment on any obligation to the Reorganized Debtors, or sell any obligation to the Reorganized Debtors, if the compromise, discount or sale results in payments to the Reorganized Debtors in an amount that is 30% less than the amount at which such payment or obligation could otherwise be prepaid.

d.      Settle any claim objection, which settlement results in cumulative payments of more than $10,000.

e.      Settle any lawsuit or adversary proceeding commenced against the Reorganized Debtors which settlement results in cumulative payments of more than $10,000.

21

**Records**

The Reorganized Debtors shall maintain books and records relating to the affairs of the Reorganized Debtors, and all expenses incurred by or on behalf of the Reorganized Debtors. The Reorganized Debtors shall also maintain records relating to all distributions either required to be made or effectuated under this Plan.

**Effectuating Documents and Necessary Authorizations**

The Plan Documents, which consist of all documents and exhibits that aid in effectuating the Plan will be executed and, if appropriate, filed with the appropriate governmental authorities on or before the Effective Date of the Plan, and they will become effective on the Effective Date of the Plan. The Members of the Reorganized Debtors will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtors, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

**Reliance by Officer and Management**

The Reorganized Debtors' Members may relay, and shall be fully protected in acting or refraining from acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which he reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Reorganized Debtors' members may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The Reorganized Debtors' members may consult

with counsel, and any opinion of counsel shall be frill and complete authorization and protection in respect of any action taken or suffered by him in accordance therewith.

## VI.  CLAIM OBJECTION

**Deadline**

The Reorganized Debtors shall have the exclusive right to object to the allowance of any Claims provided for under the Plan. All Claim objections must be filed within 120 days after the Effective Date of the Plan. All requests for a determination under 11 U.S.C. § 505 must be filed within 120 days after the Effective Date of the Plan.

**Distributions to Holders of Disputed General Unsecured Claims**

At such time as a Disputed General Unsecured Claim becomes an Allowed Claim, then the Reorganized Debtors shall pay to all of the General Unsecured Creditors the Allowed Amount of their Claims, or, if the amount available is insufficient to pay all of the Claims in full, then each Claimant shall received a pro rata distribution of the proceeds remaining from the sale of the Debtors' real property.

**Provisions Governing Distributions**

No distributions shall be made to any Class until all of the Claims in that class are resolved and an Allowed Amount is reached either by agreement or by Court Order. Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the Debtors have been notified in writing of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtors are notified in writing of such holder's then current address

All claims for undeliverable distributions must be made on or before the later of the first

anniversary of the Effective Date of the Plan, or the ninetieth (90th) day following the date on which such Claim is allowed. After such date, all unclaimed distributions will revert to the Debtors, and the Claim of any holder with respect to such distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof.

## VII.  CONFIRMATION PROCEDURES

**Confirmation Hearing**

Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan ("Confirmation Hearing"). The Confirmation Hearing will be scheduled before the Honorable Judge Bruce A. Markell on the 16th day of November, 2010 at 9:00 a.m. at 300 Las Vegas Blvd South, Las Vegas, NV 89101 in Courtroom No. 3 on the third floor. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) provides that any party in interest may object to confirmation of the Plan. However, an impaired Creditor, who votes to accept the Plan, may not have standing to object to the Plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and any applicable Local Rules of the Bankruptcy Court. Any objection to confirmation must be made in writing and filed with Bankruptcy Court with proof of service and served upon and actually received on or before the effective Bar Date.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The proponent of the Plan complies with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or to be made by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

5.    The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint Plan with the Debtors, or a successor to the Debtors under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interest of creditors and equity security holders and with public policy; and the proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insider.

6.    Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Plan Proponent has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.      With respect to each class of impaired claims or equity interest:

(a)      each holder of a claim or interest of such class:

i.      has accepted the Plan; or

ii.      will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Plan Proponent were liquidated under Chapter 7 of the Bankruptcy Code on such date; or

(b)      if section 111 (b)(2) of the Bankruptcy Code applied to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secured such claims.

8.      With respect to each class of claims or interest:

(a)      such class has accepted the Plan; or

(b)      such class is not impaired under the Plan;

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides:

(a)      with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the Allowed Amount of such Claim;

(b)      with respect to a class of Claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim

of such class will receive:

(i)      if such class has accepted the Plan, deferred the payments of a value, as of the Effective Date of the Plan, equal to the Allowed Amount of such Claim; or

(ii)     if such class has not accepted the Plan, cash on the Effective Date of the Plan equal to the Allowed Amount of such Claim; and

c.      with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim of a value, as of the Effective Date of the Plan, equal to the Allowed Amount of such Claim.

10.     If a class is impaired under the Plan, at least one class of claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11.     This plan is not paying 100% to all creditors.

12.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Plan Proponent or any successor to the Plan Proponent under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtors believe the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that it has complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Debtors further believe the holders of all Claims and Equity Interests impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received by such holders if the Debtors were liquidated in a case under Chapter 7 of the Bankruptcy Code.

27

Finally, the Debtors believe confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors.

## VIII. VOTING PROCEDURES AND REQUIREMENTS

**Ballots and Voting Deadline**

A ballot to be used to vote to accept or reject the Plan is enclosed. A Creditor who is voting must (1) carefully review the ballot and instructions thereon, (2) complete and execute the ballot indicating the Creditor's vote to either accept or reject the Plan and (3) return the executed ballot to the address indicated thereon by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors by 5:00 P.M. Pacific time, on the 9th day of November, 2010.

If you hold an impaired Claim against the Debtors PLEASE return your ballot to:

Charles T. Wright, Esq.
PIET & WRIGHT
3130 South Rainbow Boulevard, Suite 304
Las Vegas, Nevada 89146

### TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY

### 5:00 P.M. PACIFIC TIME ON NOVEMBER 9, 2010.

**Creditors Entitled to Vote**

Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) the Debtors have scheduled its Claim on its Statement of Liabilities and such Claim is not scheduled as disputed, contingent or unliquidated, or (ii) such Creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for filing Proofs of Claim and no objection has been filed to such Claim.

Holders of Disputed Claims are not entitled to vote on the Plan. Any Claim to which an

28

objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor who holds a Disputed Claim temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan. Any such motion must be heard and determined by the Bankruptcy Court before the date established by the Bankruptcy Court as the final date to vote on the Plan. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor was not solicited or obtained in good faith or according to the provisions of the Bankruptcy Code.

Classes of Claims that are not impaired are deemed to have accepted a plan of reorganization pursuant to 11 U.S.C. § 1126(f) and, therefore, are not entitled to vote on a plan. Pursuant to 11U.S.C. § 1126(f), only classes of claims or interests that are "impaired" are entitled to vote on a plan of reorganization. Generally, a claim is impaired if the plan of reorganization alters the legal, equitable, or contractual rights to which the holder of such claim is otherwise entitled.

**Voting Procedures**

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, revocation, or withdrawal of Ballots will be determined by the Debtors, in its sole discretion, and the Debtor's determination will be final and binding. The Debtors also reserve the right to reject any Ballot not in proper form, the acceptance of which would, in the opinion of the Debtors or its counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions or delivery as to any particular Ballot.

The interpretation by the Debtors of the provisions of this Disclosure Statement and the Ballots will be final and binding on its parties in interest unless otherwise directed by the Bankruptcy Court. Unless waived, any defects or irregularities concerning deliveries of Ballots

must be cured within such time as the Debtors (or the Bankruptcy Court) determines. Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liability for failure to provide such notification.

Unless otherwise directed by the Bankruptcy court, delivery of Ballots will not be deemed to have been made and will invalidated unless or until all defects and irregularities have been timely cured or waived.

**Vote Required for Class Acceptance**

The Bankruptcy Code defines acceptance of a plan of reorganization by a class of Claims as the acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half in number of the Allowed Claims of the Class actually voting to accept or reject the proposed plan of reorganization.

**Specific Considerations in Voting**

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

1.      While the Plan provides for certain payments at confirmation, such payments will only apply to allowed claims including claims arising from defaults. Under the Bankruptcy Code a claim may not be paid until it is allowed. A claim will be allowed in the absence of objection.

2.      A claim, including a claim arising from default, which has been objected to, will be heard by the Court at a regular evidentiary hearing and allowed in full or disallowed in full or in part. While the Debtors bear the principal responsibility for claim objections, any interested party, including the creditors committee, may file claim objections. Accordingly, payment on

30

some claims, including claims arising from defaults, maybe delayed until objections to those claims are ultimately settled.

## IX.  EFFECT OF REJECTION BY ONE OR MORE CLASSES

**Impaired Classes to Vote**

Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated and undisputed in the Debtors' Schedules.

**Confirmation without Acceptance of All Impaired Classes**

The Bankruptcy Court may confirm a plan even if not all impaired classes accept the Plan. For the Plan to be confirmed over the rejection of an impaired class, the proponent must show, among other things, that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class that has not accepted the plan.

Under Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class if, among other things, the plan provides: (a) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain, on account of its claim, property that has a value as of the Effective Date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interest, that the holder of any claim or interest that is junior to the claims or interest of such class will not receive or retain, on account of such junior claim or interest, any property unless the senior class is paid in full. The Bankruptcy Court must further find that the economic terms of a plan do not unfairly discriminate as provided in Section 1129(b) of the Bankruptcy Code with respect to the particular objecting class.

31

**THE DEBTORS BELIEVE THE PLAN HAS BEEN STRUCTURED SO IT WILL SATISFY THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AND CAN BE CONFIRMED OVER THE REJECTION OF THE PLAN BY SECURED CREDITORS, IF A CRAMDOWN IS REQUESTED. HOWEVER, THE AFFIRMATIVE VOTE OF THE UNSECURED CREDITORS IS NEEDED TO ALLOW FOR PLAN APPROVAL.**

**Acceptance by Class of Creditors**

A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

**Reservation of Cram Down Rights**

In the event any impaired class shall fail to accept this Plan in accordance with section 1129 (a) of the Bankruptcy Code, the Debtors reserve the right to request the Bankruptcy Court to confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable". A plan of reorganization does not discriminate unfairly with the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.

In the event any impaired class of Claims and Equity Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan.  "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

    1.      With respect to a class of secured claims, the Plan provides:

    (a)    (i)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Plan

Proponent or transferred to another entity, to the extent of the Allowed Amount of such Claims; and

(ii)    that each holder of a claim of such class receive on

account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)    for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or for the realization by such holders of the indubitable equivalent of such claims.

2.    With respect to a class of unsecured claims, the Plan provides:

(a)    that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the Allowed Amount of such Claim; or

(b)    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

3.    With respect to a class of interests, the Plan provides:

(a)    that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the Effective Date of the Plan, equal to the greatest of the Allowed Amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or

the value of such interest; or

(b)    the holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property.

The Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims and Equity Interests. The Debtors believe that the Bankruptcy Court will find these requirements satisfactory and will confirm the Plan.

## X.  EFFECT OF CONFIRMATION

**Precedent to Effectiveness of Confirmation Order and Plan**

The Plan will not be effective unless (a) the Confirmation Order becomes a Final Order; and, (b) all Plan Documents and other applicable corporate documents necessary or appropriate to the implementation of the Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities. The Debtors reserve the right to waive any of the conditions.

**Legally Binding Effect**

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim against the Debtors or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

**Revesting of Property in the Debtors**

Upon the Effective Date of the Plan, all remaining property of the Estate shall vest in and become property of the Reorganized Debtors.

**Liens, Claims and Encumbrances**

Except as otherwise specifically provided in this Plan, or in the Confirmation Order, on the Effective Date of the Plan all property vesting in and becoming property of the Reorganized Debtors shall be free of all liens, claims and encumbrances.

## XI. LEGAL PROCEEDINGS

**Post-Petition Legal Proceedings**

The Debtors have not commenced any post-petition lawsuits. No post-petition lawsuits have been commenced against the Debtors.

**Pre-Petition Legal Proceedings**

The Debtors were not involved in any pre-petition lawsuits. However, if they had been, as a result of this bankruptcy case, those proceedings would have been stayed.

**Injunction**

Except as otherwise provided in the Plan, holders of Claims are enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against the Debtors, the Contributing Partners or their property to recover any Claim or Interest.

The Nevada Comptroller of Public Accounts (Comptroller) shall not be enjoined by any plan provision from pursuing its enforcement rights against the Debtors' officers, directors, or employees (or contributing partners should they also be officers and directors) for sales taxes that are due. Provided, however, that so long as the Reorganized Debtors are making all required plan payments, the Comptroller shall not pursue those enforcement rights. Any applicable statute of limitations against the collection of a "responsible individual" assessments shall be tolled while plan payments are being made.

## XII. CAUSES OF ACTION

All claims and causes of action, including but not limited to claims recoverable under section 550 of the Bankruptcy Code are hereby preserved and retained for enforcement by the Reorganized Debtors after the Effective Date.

**Preferences**

Under the Bankruptcy Code, Debtors may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the Debtors been liquidated under Chapter 7 of the Bankruptcy Code.

In the case of "insiders", the Bankruptcy Code provides for a one-year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the Debtors' and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property.

If a transfer is recovered by the Debtors, the transferee has an Unsecured Claim against the Debtors to the extent of the recovery. In this case Debtors made no payments during the preference periods for either regular creditors or insiders.

**Fraudulent Transfers**

Under the Bankruptcy Code and various state laws, the Debtors may recover certain transfers of property, including the granting of a security interest in property, made while insolvent or which rendered the Debtors insolvent. The Debtors reserve the right to bring any

36

fraudulent conveyance claims although it does not believe at this time that any exist.

**Preservation of Claims**

All claims and causes of action, including but not limited to claims recoverable under section 550 of the Bankruptcy Code and claims for the collection of amounts due from any third party, are hereby preserved and retained for enforcement by the Reorganized Debtors after the Effective Date.

## XIII. RETENTION OF JURISDICTION

**Exclusive Bankruptcy Court Jurisdiction**

The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes after the Effective Date:

a.   to insure that the purpose and intent of the Plan are carried out;

b.   to consider any modification of the Plan under section 1127 of the Bankruptcy Code before Substantial Consummation as defined in section 1101(2) of the Bankruptcy Code;

c.   to hear and determine all Objections to Claims, controversies, motions, applications, suits and disputes that may be pending at or initiated after the Effective Date;

d.   to classify the Claims of any creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

e.   to hear, determine, and enforce all claims and causes of action which may exist on behalf of the Debtors or its Estate, including but not limited to all causes of action available to the Debtors under Chapter 5 of the Bankruptcy Code;

f.   to consider and act on the compromise and settlement of any Claim against or

37

cause of action on behalf of the Debtors or the Estate;

g.    to hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, execution, or enforcement of the Plan;

h.    to hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the Effective Date which may be made after the Effective Date of the Plan;

i.    to enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

j.    to enter an order closing the Chapter 11 Case;

k.    to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Confirmation Order which may be necessary or helpful to purposes and intent of the Plan;

l.    to consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

m.    to issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of this Plan; and

n.    to decide issues concerning the Federal or state tax liability of the Debtors or the Reorganized Debtors which may arise in connection with the confirmation or consummation of this Plan.

**Limitation on Jurisdiction**

In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## XIV. CONDITIONS TO CONFIRMATION AND CONSUMMATION OF PLAN

**Conditions to Confirmation of Plan**

The Plan will not be effective unless (a) the Confirmation Order becomes a Final Order, and, (b) all Plan Documents and other applicable corporate documents necessary or appropriate to the implementation of the Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities.

**Annulment of Plan if Conditions Not Waived or Satisfied**

The Debtors reserve the right to waive any of the conditions precedent to the effectiveness of either the Confirmation Order or the Plan. If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtors and all parties in interest will return to the status quo ante immediately before the entry of the Confirmation Order.

## XV. MISCELLANEOUS PROVISIONS

**Liabilities and Claims against the Debtor**

The Debtors' Schedules contain a detailed listing of creditors, together with the estimated amount of Claims. Creditors are referred to the Debtors' Schedules, a copy of which is attached as **Exhibit "A".** The Debtors' Schedules generally organize creditors into three general groupings: (1) Schedule D - Secured Claims, (2) Schedule E - Unsecured Priority Claims, and (3) Schedule F - Unsecured Non Priority Claims. Under the Bankruptcy Code, the Debtors may amend or supplement the Schedules as needed to ensure accuracy, completeness and fairness of disclosure.

**Payment of Fees**

The Reorganized Debtors shall timely pay post-confirmation quarterly fees assessed under 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree

39

closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Reorganized Debtors shall file with the Bankruptcy Court and shall transmit to the United States Trustee and true and correct statement of all disbursements made by the Reorganized Debtors for each quarter, or portion thereof, that this Chapter 11 case remains open.

**Compliance with Tax Requirements**

In connection with this Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions hereunder shall be subject to such withholding and reporting requirements.

**Method of Surrender**

In the event that any property is surrendered pursuant to this Plan, the surrender shall be effective by the filing of a notice with the Clerk within 30 days of the Effective Date reflecting the Debtors' intent to surrender the property.

**Amendment of the Plan**

This Plan may be amended or modified by the Debtors before, or by the Reorganized Debtors after, the Effective Date as provided in section 1127 of the Bankruptcy Code. The Plan may be amended or modified by the Debtor with the approval of the Court after notice and hearing. If the Court finds after hearing on notice to any committee appointed under the Code and any other person designated by the Court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

**Withdrawal of Plan**

The Debtors reserve the right to withdraw this Plan at any time prior to the Confirmation

40

Date. If the Debtors withdraw this Plan prior to the Confirmation Date, or, if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtors or any other person, or to prejudice in any manner the rights of the Debtors, the Debtors' estate or any person in any further proceedings involving the Debtors.

**Notices**

Any notices required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; or (b) the date the notice is actually received. Notices shall be sent to:

(a)    If to the **Debtor**, at:

Randy & Teresa Fitzgerald
802 Long Branch Drive
Henderson, Nevada 89014

And

Charles T. Wright, Esq.
PIET & WRIGHT
3130 South Rainbow Boulevard, Suite 304
Las Vegas, Nevada 89146

(b)    If to the **U.S. Trustee**, at:

United States Trustee's Office
300 Las Vegas Boulevard South
Las Vegas, Nevada 89101

(c)    If to any Creditor in its capacity as such, at its address or facsimile number as reflected

41

on its proof of claim or Notice of Appearance, if any.

(d)    To any counsel for the Reorganized Debtors at such address or facsimile number as provided by the Reorganized Debtor.

**Due Authorization By Creditors**

Each and every Creditor who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**Filing of Additional Documentation**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**Implementation**

The Debtors and the Reorganized Debtors shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**Importance of Obtaining Professional Assistance**

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN IS COMPLEX AND, IN MANY AREAS, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OWN TAX ADVISOR REGARDING SUCH TAX CONSEQUENCES.**

**Interim Operation**

From and after the filing of this Plan and until such time as the order confirming this Plan has become final, this Plan has failed and another plan is proposed and acted upon, or an appeal has been filed and disposed of, or an order of adjudication of bankruptcy is entered, the Debtors shall continue in its current status on the terms and conditions heretofore authorized by orders of the Bankruptcy Court. When the order of confirmation approving and confirming the Plan has become final and non-appealable, the rights and duties of the Debtors as Debtors-in-Possession appointed pursuant to order of the Bankruptcy Court: shall terminate, provided that the Debtors perform all acts and executes any and all documents, instruments, and agreements which it is required to execute to consummate and carry out this Plan.

The Debtors also propose that all debts incurred after the filing of the petition initiating this proceeding and during the tendency of this proceeding, will be or shall have been paid in full and if not paid shall be entitled to payment under Class 1 hereunder.

The stay of actions and lien enforcement and all other matters provided for by Bankruptcy Code §362 shall remain effective and in full force until consummation of this Plan.

Respectfully submitted October 7, 2010.


 /s/  Charles  T. Wright                         
Charles T. Wright, Esq.
3130 South Rainbow Blvd. Ste. 304
Las Vegas, NV 89146
Phone:  702-566-1212
Fax:  702-566-4833
*Attorney for Debtors*

43

# EXHIBIT A

## DEBTORS' SCHEDULES

B6D (Official Form 6D) (12/07)

In re   **Randy Fitzgerald,**
        **Teresa Fitzgerald**
                                                                            Case No. ___**10-13624**_____

_____Debtors_____,

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

    State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

    List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

    If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

    Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxx3160** <br><br> **Ocwen Loan Servicing L** <br> **12650 Ingenuity Dr** <br> **Orlando, FL 32826** | | H | Opened 12/15/04  Last Active  1/15/10 <br> **Second Mortgage** <br> **Rental: 2 story 4 bedroom house with separate garage and a swimming on a .75 acre lot** <br> Location: 6960 Schirlls Street <br> Las Vegas, NV  89118 | | | | | |
| | | | Value $              **318,000.00** | | | | **51,170.68** | **51,170.68** |
| Account No. **1930** <br><br> **RCS** <br> **4282 N. Freeway** <br> **Fort Worth, TX 76137** | | C | **First Mortgage** <br><br> **Rental: 2 story 4 bedroom house with separate garage and a swimming on a .75 acre lot** <br> Location: 6960 Schirlls Street <br> Las Vegas, NV  89118 | | | | | |
| | | | Value $              **318,000.00** | | | | **592,553.88** | **274,553.88** |
| Account No. **xxxxxxxxxxxxx1998** <br><br> **Wells Fargo Bank Nv Na** <br> **Po Box 31557** <br> **Billings, MT 59107** | | C | Opened 11/04/06  Last Active 11/01/09 <br> **Second Mortgage** <br><br> **Rental: 2 story 5 bedroom house with 3 car garage and a swimming pool.** <br> Location: 652 Homewillow Ave <br> Las Vegas, NV 89123 | | | | | |
| | | | Value $              **225,000.00** | | | | **177,557.25** | **173,181.84** |
| Account No. **xxxxxxxx8296** <br><br> **Wells Fargo Hm Mortgag** <br> **8480 Stagecoach Cir** <br> **Frederick, MD 21701** | | C | Opened 11/17/03  Last Active  2/05/10 <br> **First Mortgage** <br><br> **Rental: 2 story 5 bedroom house with 3 car garage and a swimming pool.** <br> Location: 652 Homewillow Ave <br> Las Vegas, NV 89123 | | | | | |
| | | | Value $              **225,000.00** | | | | **220,624.59** | **0.00** |

___**0**___ continuation sheets attached

| | | |
|---|---|---|
| Subtotal <br> (Total of this page) | **1,041,906.40** | **498,906.40** |
| Total <br> (Report on Summary of Schedules) | **1,041,906.40** | **498,906.40** |

B6E (Official Form 6E) (12/07)

In re    **Randy Fitzgerald,**                                                    Case No. ___**10-13624**_____
         **Teresa Fitzgerald**
_____,
                              Debtors

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts <u>not</u> entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**  (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____**1**_____ continuation sheets attached

B6E (Official Form 6E) (12/07) - Cont.

In re    **Randy Fitzgerald,**                             Case No.    **10-13624**
         **Teresa Fitzgerald**

                                   ,
                       Debtors

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | | |
| Account No. **xxxxx5875** <br><br> **IRS** <br> **110 City Parkway** <br> **Las Vegas, NV 89106** | J | | | **2007-2008-2009** <br><br> **Income Tax** | | | | 30,000.00 | 0.00 <br><br> 30,000.00 | |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |
| Account No. | | | | | | | | | | |

| | | |
|---|---|---|
| Sheet **1** of **1** continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims | Subtotal <br> (Total of this page) | 0.00 <br> 30,000.00     30,000.00 |
| | Total <br> (Report on Summary of Schedules) | 0.00 <br> 30,000.00     30,000.00 |

B6F (Official Form 6F) (12/07)

In re  **Randy Fitzgerald,**
**Teresa Fitzgerald**

Case No. __**10-13624**__

Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxx6001<br><br>Allied Collection Serv<br>3080 S Durango Dr Ste 20<br>Las Vegas, NV 89117 | | H | Opened 3/09/09 Last Active 11/01/08<br>Collection Radiology Asoc Of Ne | | | | 57.00 |
| Account No. 5314<br><br>Anethsiology Consultants, Inc.<br>P.O. Box 50209<br>Henderson, NV 89016-0209 | | C | Medical | | | | 100.00 |
| Account No. 1283<br><br>APL<br>POB 79074<br>Phoenix, AZ 85062-9074 | | C | Medical | | | | 149.00 |
| Account No. 4224<br><br>Bank Of America<br>Po Box 1598<br>Norfolk, VA 23501 | | W | Opened 8/24/06 Last Active 2/09/10<br>Credit Card | | | | 2,709.00 |
| __8__ continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | 3,015.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

S/N:37349-100528   Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Randy Fitzgerald,**                                          Case No.   **10-13624**
      **Teresa Fitzgerald**

                                      Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H | W J | C | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account No. **8575**<br><br>**Bank Of America**<br>**Po Box 17054**<br>**Wilmington, DE 19850** | C | | | | Opened 4/11/07 Last Active 2/04/10<br>Credit Card | | | | 1,734.00 |
| Account No. **9097**<br><br>**Bank Of America**<br>**Po Box 1598**<br>**Norfolk, VA 23501** | C | | | | Business Credit Card | | | | 4,500.00 |
| Account No. **xxxx-xxxx-xxxx-2413**<br><br>**Cap One**<br>**Po Box 85520**<br>**Richmond, VA 23285** | C | | | | Opened 1/04/00 Last Active 2/01/10<br>Credit Card | | | | 1,302.00 |
| Account No. **xx9390**<br><br>**Clark Cntycu**<br>**2625 N Tenaya Po Box 36490**<br>**Las Vegas, NV 89133** | W | | | | Opened 12/01/85 Last Active 1/01/03<br>CreditCard | | | | 0.00 |
| Account No. **xxxxxx0850**<br><br>**Clark County Credit Un**<br>**2625 N Tenaya Way**<br>**Las Vegas, NV 89128** | C | | | | Opened 12/24/85 Last Active 1/01/03 | | | | 0.00 |

Sheet no. __1__ of __8__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**7,536.00**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Randy Fitzgerald,**                                               Case No.   **10-13624**
       **Teresa Fitzgerald**
_____,
                          Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxx0875**<br><br>**Clark County Credit Un**<br>**2625 N Tenaya Way**<br>**Las Vegas, NV 89128** | | W | Opened  3/14/86  Last Active  6/01/02 | | | | 0.00 |
| Account No. **xxxxxxxxxxxx2324**<br><br>**Cmre Finance**<br>**3075 E Imperial Hw Suite 200**<br>**Brea, CA 92821** | | W | Opened 12/05/08<br>Collection Med1 02 Desert Radio | | | | 192.00 |
| Account No. **8500**<br><br>**Desert Perinatal**<br>**5761 S. Fr. Apached, Bldg. 8**<br>**Las Vegas, NV 89148-5506** | | C | Medical | | | | 2,220.00 |
| Account No. **8989**<br><br>**Desert Valley Pediatrics**<br>**POB 50150**<br>**Henderson, NV 89016** | | C | Medical | | | | 2,552.00 |
| Account No. **xxxx6712**<br><br>**Escallate Llc**<br>**5200 Stoneham Rd**<br>**North Canton, OH 44720** | | H | Opened 12/31/08  Last Active  4/21/09<br>Collection Epmg/St Rose Dominic | | | | 0.00 |

Sheet no. __**2**___ of __**8**___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**4,964.00**

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                              Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Randy Fitzgerald,**                                        Case No.    **10-13624**
      **Teresa Fitzgerald**

_____,
                 Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxxx8508**<br><br>**First Horizon Home Loa**<br>**4000 Horizon Way**<br>**Irving, TX 75063** | C | | **Opened 6/05/03 Last Active 8/03/05**<br>**Mortgage** | | | | **0.00** |
| Account No. **0992**<br><br>**First Tennessee Bank**<br>**1555 Lynnfield Rd**<br>**Memphis, TN 38119** | C | | **Opened 6/11/03 Last Active 9/07/05**<br>**Mortgage** | | | | **0.00** |
| Account No. **xxxxxxxx1531**<br><br>**Gemb/Care Credit**<br>**Po Box 981439**<br>**El Paso, TX 79998** | | W | **Opened 6/20/08 Last Active 2/01/10**<br>**ChargeAccount** | | | | **5,691.00** |
| Account No. **xxxxxxxx0033**<br><br>**Gemb/Care Credit**<br>**Po Box 981439**<br>**El Paso, TX 79998** | | H | **Opened 10/09/00 Last Active 7/10/01**<br>**ChargeAccount** | | | | **0.00** |
| Account No. **xxxxxxxx9901**<br><br>**Gemb/Ge Money Bank Low**<br>**Po Box 103065**<br>**Roswell, GA 30076** | | W | **Opened 10/24/07 Last Active 11/29/07**<br>**ChargeAccount** | | | | **0.00** |

Sheet no. __3__ of __8__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)      **5,691.00**

B6F (Official Form 6F) (12/07) - Cont.

In re    **Randy Fitzgerald,**
         **Teresa Fitzgerald**

Case No.    **10-13624**

_____,
Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. **-xx2330**<br><br>**Gemb/Jcp**<br>**Po Box 984100**<br>**El Paso, TX 79998** | | W | | Opened 12/07/96 Last Active 9/01/00<br>ChargeAccount | | | | 0.00 |
| Account No. **xxxxxxxx0005**<br><br>**Gemb/Kirklands**<br>**Po Box 981400**<br>**El Paso, TX 79998** | | W | | Opened 4/28/06<br>ChargeAccount | | | | 0.00 |
| Account No. **xxxxxxxx9033**<br><br>**Gemb/Lowes** | | W | | Opened 10/01/07 Last Active 11/01/07<br>ChargeAccount | | | | 0.00 |
| Account No. **3591**<br><br>**Hand Surgery Specialists**<br>**4530 S. Eastern Ave. #1**<br>**Las Vegas, NV 89119-6100** | | C | | Medical | | | | 356.50 |
| Account No. **xxxxxx1063**<br><br>**Hsbc Bank**<br>**Po Box 5253**<br>**Carol Stream, IL 60197** | | C | | Opened 7/02/95 Last Active 7/29/98 | | | | Unknown |

Sheet no. __4___ of __8___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**356.50**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Randy Fitzgerald,**
       **Teresa Fitzgerald**

Case No.  <u>**10-13624**</u>

_____ ,
Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | |
| Account No. **xxxxxxx9852** | | | Opened 12/18/08  Last Active 12/04/09 | | | | |
| **Kohls/Chase**<br>**N56 W 17000 Ridgewood Dr**<br>**Menomonee Falls, WI 53051** | | W | | | | | |
| | | | | | | | **0.00** |
| Account No. **3796** | | | Medical | | | | |
| **Medical Group**<br>**1301 Concord Ter.**<br>**Fort Lauderdale, FL 33323-2843** | | C | | | | | |
| | | | | | | | **226.00** |
| Account No. **3152** | | | Medical | | | | |
| **NTD Labs**<br>**80 Riland Road #1**<br>**Melville, NY 11747** | | C | | | | | |
| | | | | | | | **160.00** |
| Account No. **xxxxxxxxxxxxx7065** | | | Opened  2/12/09  Last Active  4/24/09<br>Collection Las Vegas Skin   Can | | | | |
| **Plusfour Inc.**<br>**6345 S Pecos Rd Ste 212**<br>**Las Vegas, NV 89120** | | W | | | | | |
| | | | | | | | **0.00** |
| Account No. **xxxxxxx6036** | | | Opened 12/15/04  Last Active  2/18/09<br>Mortgage | | | | |
| **Pnc Mortgage**<br>**6 N Main St**<br>**Dayton, OH 45402** | | H | | | | | |
| | | | | | | | **0.00** |

Sheet no. <u>**5**</u> of <u>**8**</u> sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**386.00**

B6F (Official Form 6F) (12/07) - Cont.

In re   **Randy Fitzgerald,**
    **Teresa Fitzgerald**

Case No.    **10-13624**

                                      Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxx6165**<br><br>**Pnc Mortgage**<br>**6 N Main St**<br>**Dayton, OH 45402** | | H | **Opened 12/15/04  Last Active  8/08/05 Mortgage** | | | | **Unknown** |
| Account No. **7268**<br><br>**Purchase Power**<br>**POB 856042**<br>**Louisville, KY 40285-6042** | | C | **Business Line of Credit** | | | | **16,200.00** |
| Account No.<br><br>**Quest Diagnostics**<br>**P.O. Box 79052**<br>**Phoenix, AZ 85062-9025** | | C | **Medical**<br>**Invoices: A36175808; A35718470; A36193737;A35782260; A35782266** | | | | **1,726.73** |
| Account No. **3392**<br><br>**Spring Valley Hospital Med Center**<br>**8801 West Sahara Ave, First Floor**<br>**Las Vegas, NV 89117** | | C | **Medical** | | | | **20,500.00** |
| Account No. **1222**<br><br>**Spring Valley Hospital Med Center**<br>**8801 West Sahara Ave, First Floor**<br>**Las Vegas, NV 89117** | | C | **Medical** | | | | **632.80** |

Sheet no. _**6**___ of _**8**___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**39,059.53**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Randy Fitzgerald,**
      **Teresa Fitzgerald**

Case No.   **10-13624**

_____,
                   Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. **3624** <br><br> **Spring Valley Hospital Med Center** <br> **8801 West Sahara Ave, First Floor** <br> **Las Vegas, NV 89117** | C | | | **Medical** | | | | **1,274.70** |
| Account No. **3392** <br><br> **St. Rose Dominican Hospitals** <br> **PO Box 33349** <br> **Phoenix, AZ 85067** | C | | | **Medical** | | | | **1,274.70** |
| Account No. **xxxxxxxxxxxx4717** <br><br> **Target Nb** <br> **Po Box 673** <br> **Minneapolis, MN 55440** | | W | | **Opened  5/02/04  Last Active  1/01/10** <br> **Credit Card** | | | | **596.00** |
| Account No. **xxxxx6423** <br><br> **Tnb - Target** <br> **Po Box 673** <br> **Minneapolis, MN 55440** | | W | | **Opened  5/02/04  Last Active 10/02/05** <br> **ChargeAccount** | | | | **0.00** |
| Account No. **xxxxx4396** <br><br> **United Compucred Collections Inc.** <br> **5715 Harrison Ave.** <br> **POB 111100** <br> **Cincinnati, OH 45211-1100** | C | | | **Club Car Lounge 1830** | | | | **500.00** |

Sheet no. __**7**__ of __**8**__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**3,645.40**

B6F (Official Form 6F) (12/07) - Cont.

In re    **Randy Fitzgerald,**                                           Case No.    **10-13624**
         **Teresa Fitzgerald**

_____,
                        Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. **xxxxxxxxxxxx1998** <br><br> **Wells Fargo Bank Nv Na** <br> **Po Box 31557** <br> **Billings, MT 59107** | | | C | | **Opened 11/11/03  Last Active  7/01/04 Mortgage** | | | | 0.00 |
| Account No. **xxxxxxxxxxxxx1998** <br><br> **Wells Fargo Bank Nv Na** <br> **Po Box 31557** <br> **Billings, MT 59107** | | | C | | **Opened  7/07/04  Last Active 10/20/06 Mortgage** | | | | 0.00 |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |

| | | |
|---|---|---|
| Sheet no. __8___ of __8___ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal <br> (Total of this page) | 0.00 |
| | Total <br> (Report on Summary of Schedules) | 64,653.43 |

**EXHIBIT B**

**APPRAISALS FOR REAL PROPERTY LISTED ON DEBTORS' SCHEDULE A**

# APPRAISAL REPORT OF

**Randall and Teresa Fitzgerald**

**652 Homewillow Ave.**

Las Vegas, NV 89123

# AS OF

March 15, 2010

# PREPARED FOR

**Teresa Fitzgerald**
**Randall and Teresa Fitzgerald**
6960 Schirlls St.
Las Vegas, NV 89118

# PREPARED BY

**B. Kent Vollmer**
**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118



**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118
(702) 876-7799

March 25, 2010

**Randall and Teresa Fitzgerald**
6960 Schirils St.
Las Vegas, NV 89118

RE:    **Randall and Teresa Fitzgerald**
       **652 Homewillow Ave,**
       Las Vegas, NV 89123
File No.   2010020320
Case No.

Dear  Teresa Fitzgerald,

In accordance with your request, I have personally inspected and prepared an appraisal report of the real property located at:

**652 Homewillow Ave., Las Vegas, NV 89123**

The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation of the property.  The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of  **March 15, 2010** is:

                            **$ 225,000**

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this report.

It has been a pleasure to assist you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature:

**B. Kent Vollmer**
American Real Estate Appraisal

American Real Estate Appraisal

File No.   2010020320
Case No.

## Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | City | Las Vegas | | State | NV | Zip Code | 89123 |
| Owner | Randall and Teresa Fitzgerald | | Intended User | Randall and Teresa Fitzgerald | | County | | Clark |
| Legal Description | Crystal Springs R-2 #22 TM #15 Plat Book 105 Page 4 Lot 6 Block 7 | | | | | | |
| Assessor's Parcel # | | 177-22-213-006 | | Tax Year | 2010 | | R.E. Taxes $ | 3,123.32 |
| Neighborhood Name | Crystal Springs | | Map Reference | | | Census Tract | 0028.33 |

Occupant [ ] Owner [X] Tenant [ ] Vacant  Special Assessments $   None   PUD [ ]  HOA $ [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Intended Use   Bankruptcy Settlement
Client   **Randall and Teresa Fitzgerald**   Address   **6960 Schirlls St., Las Vegas, NV 89118**
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offering price(s), and date(s).  GLVAR MLS Services.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $   Date of Contract   Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [ ] Stable [X] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit 80 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [ ] In Balance [X] Over Supply | | | Low 1 | | 2-4 Unit 5 % |
| Growth [ ] Rapid [ ] Stable [X] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 25 | | Multi-Family 5 % |
| Neighborhood Boundaries  Neighborhood is bounded on the north by Windmill Lane, to the south by | | | | | | 609 High 47 | | Commercial 5 % |
| Cactus Avenue, to the west by Las Vegas Blvd., and to the east by Eastern Avenue. | | | | | | 140 Pred. 10 | | Other Vacant 10 % |

Neighborhood Description  Area is located approx 10 miles south of the Las Vegas CBD in the Paradise Township.  Area consists of avg to good quality production homes in average condition.  Area is mostly developed.  Freeway access is 2 miles.  All other facilities such as schools, shopping, churches, and employment are within acceptable distances.

Market Conditions (including support for the above conclusions)  The greater Las Vegas Housing Market has been in a depressed state since late 2006, with over 19,000 homes for sale through MLS.  This has created a "buyers market" and depressed prices.  The is in reaction to the heated appreciation rates from 2003 to 2006.  Market activity is depressed.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dimensions | Irregular - See Plat  Map | | Area | 6,970 SqFt | Shape | Irregular | View | Residential |
| Specific Zoning Classification | R-2 | | Zoning Description | | | Medium Density Residential | |

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street | Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley | None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone   Zone X   FEMA Map #   32003C 2569 E   FEMA Map Date   9/2/2002
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.
No adverse easements or encroachments observed.  Site is a large interior residential lot.

| General Description | | Foundation | | Exterior Description  materials/condition | | Interior  materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls | Concrete/Avg | Floors | Carpet/C. Tile/Avg |
| # of Stories  2 Story | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls | Frm/Stucco/Avg | Walls | Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area  sq. ft. | | | Roof Surface | Conc. Tile/Avg | Trim/Finish | Wood/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish  % | | | Gutters & Downspouts | None | Bath Floor | Carpet/Ceramic Tile/Avg |
| Design (Style)  Conventional | [ ] Outside Entry/Exit [ ] Sump Pump | | | Window Type | Alum. Slider/Avg | Bath Wainscot | Fiberglass/C.Tile/Avg |
| Year Built  2004 | Evidence of [ ] Infestation | | | Storm Sash/Insulated | Insulated | Car Storage | None |
| Effective Age (Yrs)  6 | [ ] Dampness [ ] Settlement | | | Screens | Screens/Avg | [X] Driveway  # of Cars  2 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | [ ] Woodstove(s) # | Driveway Surface | Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other  [ ] Fuel  Gas | | [X] Fireplace(s) #  [X] Fence  Conc. Block | [X] Garage  # of Cars  2 | |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | | [X] Patio/Deck  Open [X] Porch  Covered | [ ] Carport  # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | | [ ] Pool  Pool/Spa [ ] Other | [ ] Att. [ ] Det. [X] Built-in | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area above grade contains:   9  Rooms   4  Bedrooms   3.00  Bath(s)   2,744  Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.)  See Attached Comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   No functional, physical or external inadequacies observed.  Home is rated average condition.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe

American Real Estate Appraisal

File No.   2010020320
Case No.

## Residential Appraisal Report

There are  21  comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 195,000  to $ 299,000
There are  33  comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 180,000  to $ 329,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 652 Homewillow Ave. | 195 Apache Tear Ct. | | 9194 Cazador St. | | 9232 Marlia St. | |
| | Las Vegas, NV 89123 | Iron Horse Est | | Crystal Springs | | Crystal Springs | |
| Proximity to Subject | | 0.87 miles W | | 0.16 miles E | | 0.10 miles SW | |
| Sale Price | $ | $ 210,000 | | $ 226,000 | | $ 219,000 | |
| Sale Price/Gross Liv. Area | $  0sq.ft. | $ 90.24 sq. ft. | | $ 93.12 sq. ft. | | $ 90.23 sq. ft. | |
| Data Source(s) | Subject | M.L.S. #1000198 | | M.L.S. #1003506 | | M.L.S. #903526 | |
| Verification Source(s) | Inspection | Doc. #20100126:04011 | | Doc. #20100304:02132 | | Doc. #20100211:00651 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | F.H.A./REO | | F.H.A. | | F.H.A./Short Sale | |
| Concessions | | Seller Pd $3,738 | | No Seller Pts. | | Seller Pd $3,766 | |
| Date of Sale/Time | 3/15/2010 Insp | 12/18/09; 1/26/10 | | 1/9/10; 3/4/10 | | 10/1/09; 2/11/10 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,970 SqFt | 8,184 SqFt | -1,214 | 6,137 SqFt | +833 | 6,534 SqFt | +436 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 6 yrs | 11 yrs | | 8 yrs | | 7 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9  4  3.00 | 7  4  3.00 | 0 | 8  4  3.00 | 0 | 8  4  3.00 | 0 |
| Gross Living Area | 2,744 sq. ft. | 2,327 sq. ft. | +10,425 | 2,427 sq. ft. | +7,925 | 2,427 sq. ft. | +7,925 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2-Garage | 3-Garage | -3,000 | 2-Garage | 0 | 2-Garage | 0 |
| Porch/Patio/Deck | Patio,Porch | Patio,Porch | | Patio,Porch | | Patio,Porch | |
| Fireplace(s) | 0-Fireplace | 1 Fireplace | -1,500 | 1 Fireplace | -1,500 | 0-Fireplace | 0 |
| Pool | Pool/Spa | Pool/Spa | | Pool | | Pool/Spa | |
| Landscaping | Front/Rear | Front/Rear | | Front/Rear | | Front/Rear | |
| Net Adjustment (Total) | | X + - | $ 4,711 | X + - | $ 7,258 | X + - | $ 8,361 |
| Adjusted Sale Price | | Net Adj: 2% | | Net Adj: 3% | | Net Adj: 4% | |
| of Comparables | | Gross Adj: 8% $ 214,711 | | Gross Adj: 5% $ 233,258 | | Gross Adj: 4% $ 227,361 | |

I  X did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research    did  X  did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
My research  X did    did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | 9/23/2008 | 6/11/2009 | N/A |
| Price of Prior Sale/Transfer | N/A | $275,000 Trustees Deed | $165,500 Trustees Deed | N/A |
| Data Source(s) | Clark County Assessor | Clark County Assessor | Clark County Assessor | Clark County Assessor |
| Effective Date of Data Source(s) | 3/25/2010 | 3/25/2010 | 3/25/2010 | 3/25/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Prior transfers reflect the depressed state of the current market.

Summary of Sales Comparison Approach  Sales were researched throughout the subject's market area. Site area differences have been adjusted at $1/SF. GLA differences have been adjusted at $25/SF. All other adjustments reflect typical market reactions to basic amenity differences. Sale comps provide an indicated range of values of $214,711 to $233,258. After careful consideration of all influencing factors, a final estimate value of $132,000 is arrived at.

Indicated Value by Sales Comparison Approach $  225,000
Indicated Value by: Sales Comparison Approach $  225,000   Cost Approach (if developed) $  0   Income Approach (if developed) $  0
Market analysis is the best approach to a residential valuation. Income approach is not consistent and data is minimal. Cost approach is not considered.

This appraisal is made  X  "as is",    subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,    subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or    subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Appraisal is made as is.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  225,000  , as of  March 15, 2010  , which is the date of inspection and the effective date of this appraisal.

American Real Estate Appraisal

File No.   2010020320
Case No.

## Residential Appraisal Report

The subject property is improved with a two-story average quality production built residence with frame and stucco exterior, concrete tile roofing and built-in two-car garage with extended bay. Rear yard is fenced with concrete block wall fencing along the rear and sides. Inground pool/spa with diving board, gas heat, air blower, colorized concrete surround. Large covered entry porch and open concrete patio in the rear yard. Front and rear yard landscaping is desert rock, grass and shrubs.

Living room has carpet flooring, 2 story ceiling. Kitchen has ceramic tiled countertops, maple colored cabinets.

### ADDITIONAL COMMENTS

### COST APPROACH TO VALUE (If applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED | REPRODUCTION OR | REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | |
|---|---|---|---|---|---|---|
| Source of cost data | | | Dwelling | 2,744 Sq. Ft. @ $ | =$ | |
| Quality rating from cost service | | Effective date of cost data | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | | |
| COST APPROACH WILL CARRY NO WEIGHT IN THIS APPRAISAL | | | Garage/Carport | 556 Sq. Ft @ $ | =$ | 0 |
| | | | Total Estimate of Cost-new | | =$ | 0 |
| | | | Less    Physical  11 | Functional | External | |
| | | | Depreciation      0 | 0 | 0 | =$ ( 0 ) |
| | | | Depreciated Cost of Improvements | | =$ | 0 |
| | | | "As-is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only) | | 50 Years | Indicated Value By Cost Approach | | =$ | 0 |

### INCOME APPROACH TO VALUE (If applicable)

Estimated Monthly Market Rent $        X Gross Multiplier        =$        0        Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)   Rental Data Attached.

### PROJECT INFORMATION FOR PUDs (If applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)?   [ ] Yes [X] No   Unit type(s)   [X] Detached   [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   [ ] Yes   [ ] No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   [ ] Yes   [ ] No   Data source.

Are the units, common elements, and recreation facilities complete?   [ ] Yes   [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association?   [ ] Yes   [ ] No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities

American Real Estate Appraisal

File No.    2010020320
Case No.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**DEFINITION OF MARKET VALUE:** As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

American Real Estate Appraisal

File No.    2010020320
Case No.

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

American Real Estate Appraisal

File No.    2010020320
Case No.

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

APPRAISER

Signature
Name                             **B. Kent Vollmer**
Company Name              **American Real Estate Appraisal**
Company Address                    6441 Crystal Dew Dr.
                                            Las Vegas, NV 89118
Telephone Number                  702-876-7799
Email Address                    Kent@VollmerOnline.Net
Date of Signature and Report         March 25, 2010
Effective Date of Appraisal          March 15, 2010
State Certification #                  A.00111-CG
or State License #                  Certified General
or Other (describe)                              State #    NV
State                                NV
Expiration Date of Certification or License        4/30/2011

ADDRESS OF PROPERTY APPRAISED
                       **652 Homewillow Ave.**
                         Las Vegas, NV 89123

APPRAISED VALUE OF SUBJECT PROPERTY $    225,000
CLIENT
Name                             **Teresa Fitzgerald**
Company Name        **Randall and Teresa Fitzgerald**
Company Address                    6960 Schrills St.
                                            Las Vegas, NV 89118
Email Address

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature
Name
Company Name
Company Address

Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

NL - General Certification 5/2007        This form may be reproduced unmodified without written permission, however Bradford Technologies Inc must be acknowledged and credited

American Real Estate Appraisal
**ASSESSORS RECORD**

File No.   2010020320
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | | | Randall and Teresa Fitzgerald | | | |
| Property Address | 652 Homewillow Ave. | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirls St., Las Vegas, NV 89118 | | |

## CLARK COUNTY PROPERTY

| | | | | | |
|---|---|---|---|---|---|
| Parcel # | 177-22-213-006 | Address | 652 HOMEWILLOW AVE | | |
| | | PropCity | LAS VEGAS | Zip Cd | 89123-3715 |
| TN-RG-SE | 22- 61.0- 22 | Tax Dist | PARADISE TOWN | ReAssd | 2009 |
| Tot Value | $106,576 | Land Use | 1100010001/SFR | Update | 03/19/10 |
| GEO Id | PT S2 NW4 22-61.0-22 | | | Status | |

### ASSESSOR DESCRIPTION

| | | | | | |
|---|---|---|---|---|---|
| File-Page | PB 0105-0004 | Subdivision | / CRYSTAL SPRINGS R-2 #22 TM #15 | | |
| Assr Lot | 6 | Block | 7 | Phase | | Bdg | | Unit |
| Assr Apt | | Parcel | | Area | | Tract | | Outlot |
| Assr Desc | CRYSTAL SPRINGS R-2 #22 TM #15 PLAT BOOK 105 PAGE 4 | | | | |
| | LOT 6 BLOCK 7 | | | | |

### OWNER & DOC INFORMATION

| | | ETAL | DOC DATE | DOC NUMBER | DV | MU |
|---|---|---|---|---|---|---|
| Owner Name | FITZGERALD RANDALL S & TERESA | N | 11/17/03 | 2003111702584 | | 0 |
| 2nd Owner | | | 03/08/02 | 2002030801983 | N | 0 |
| Address  (S) | 652/ HOMEWILLOW/ AV | | | | | |
| City | LAS VEGAS | State | NV | Zip Code | 89123- 3715 | |
| Prev Owner | PARDEE HOMES NEVADA | | | | | |
| Own Phone | | | | Tenant Phone | | |

### LAND & BUILDING INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Land Value | $17150 | | | | | Nuisance | |
| Front/Dpth | | | | | | | |
| Acres | 0.16 | Irregular | | Adj Parking | | St Lights | |
| Lot Sqft | 6970 | Zoning Juri | | Rec Area | | Curb Gutt | |
| Topography | | St. Paved | | Sidewalks | | Traffic | |
| Schools | | View | | | | Landscaping | |
| Shopping | | | | Metro Map | 85- A1 | Area | 303 |
| Impr Value | $89,426 | Act Yr Blt | 2004 | Carpet | 80 % | Tot Rooms | 9 |
| Type Style | 2 STORY | Eff Yr Blt | 2004 | Ceramic Tl | 5 % | Bedrooms | 4 |
| Architect | | Cost Class | | Vinyl Tile | 15 % | Bathrooms | 3.00 |
| Ext Wall | FRM STUCCO | Units | 1 | Hardwood | | Family Rms | 3 |
| Roof Matl | CONC TILE | Home Auto | | Contrl Vac | N | Formal Din | N |
| Flooring | CONC | Security | N | Bl Refrig | N | Fireplaces | 1 |
| Heat Systm | FORCE AIR | Intercom | N | Bl Micro | Y | Garbg Disp | |
| Air Cond | CENT COOL | Range Fan | | Trash Cmpt | N | Dishwasher | |
| Centrl Air | | Range Oven | | | | | |

### PROPERTY SUB-AREAS SQ FT

| | | | | | |
|---|---|---|---|---|---|
| Living Area | 2745 | First Flr | 1258 | Porch 1 | 151 | Garage | 556 |
| Building 1 | 3301 | Second Flr | 1492 | Porch 2 | | Carport | |
| Total Bldg | 3301 | Abv Second | | Porch 3 | | Storage | |
| Pool (Y) | 450 | Basement F | | Paving 1 | 1/450 | Deck | 300 |
| Fence | | Basement U | | Paving 2 | /200 | | |

### EXTRA FEATURE INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pool Heatr | Y | Tennis Cts | | Poly Water | 6 | Sprinkle | MINI |
| Jacuz/Spa? | | The Lights | N | Fron Cover | 5 | Sprinkl P | |
| Deck | KOOL DECK | Tns Fence | N | Fron Deck | 1 | Water | |
| Fence | | Oth | | | | | |

### SALES & LOAN INFORMATION

| Src code | PRICE | DATE | TYPE | NOT OWN | DT |
|---|---|---|---|---|---|
| Mult sale | | | | | |
| County 1 | $284,303 | 11-01-03 | R RECORDED VALUE | | |
| County 2 | | | | | |
| County 3 | | | | | |

| | LAND AREA  FT | | UNIT  OR | TYPE | RAT | TITLE |
|---|---|---|---|---|---|---|
| | | $254002 | 0535 | C | | 16 P |

| | TOTAL L | TOTAL BLD | IMP | LAND | LIVE | | |
|---|---|---|---|---|---|---|---|
| | $3123.82 | $106,576 | $89,426 | $17,150 | | 2010 | |
| | $3,770.85 | $140,037 | $83,337 | $56,700 | | 2009 | |
| | 2.9306 | | | | | | |

American Real Estate Appraisal
## LOCATION MAP ADDENDUM

File No.    2010020320
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | | | Randall and Teresa Fitzgerald | | | | |
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**PLAT MAP**

File No.  2010020320
Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020320
Case No.

| | | | | | |
|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | |
| Property Address | 652 Homewillow Ave. | | | | |
| City  Las Vegas | County | Clark | State | NV | Zip Code  89123 |
| Lender/Client  Randall and Teresa Fitzgerald | | Address  6960 Schirlis St., Las Vegas, NV 89118 | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | |
|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | Subtotals |
| GLA1 | First Floor | 1253.0 | 1253.0 | First Floor | |
| GAR | Garage | 556.0 | 556.0 | 35.0 x 13.0 | 455.0 |
| P/P | Cov. Porch | 152.8 | 152.8 | 36.0 x 4.0 | 144.0 |
| | | | | 6.0 x 35.0 | 210.0 |
| | | | | 4.0 x 15.0 | 60.0 |
| | | | | 4.0 x 21.0 | 84.0 |
| | | | | 12.0 x 25.0 | 300.0 |

| Net LIVABLE Area | (rounded) | 1253 | 6 Items | (rounded) | 1253 |
|---|---|---|---|---|---|

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020320
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | |
| Property Address | 652 Homewillow Ave. | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA2 | Second Floor | 1491.4 | 1491.4 |

| LIVING AREA BREAKDOWN | | | |
|---|---|---|---|
| Breakdown | | | Subtotals |
| Second Floor | | | |
| | 35.0 x | 18.0 | 630.0 |
| | 4.0 x | 22.0 | 88.0 |
| 0.5 x | 2.0 x | 2.0 | 2.0 |
| | 13.0 x | 20.0 | 260.0 |
| | 25.0 x | 9.0 | 225.0 |
| | 35.0 x | 7.0 | 245.0 |
| 0.5 x | 3.5 x | 3.5 | 6.1 |
| | 8.0 x | 3.5 | 28.0 |
| 0.5 x | 3.5 x | 3.5 | 6.1 |
| Curve | 3.1 @ | 90.0° | 1.1 |

| | | | |
|---|---|---|---|
| Net LIVABLE Area | (rounded) | 1491 | 10 Items | (rounded) | 1491 |

**SUBJECT PHOTO ADDENDUM**

File No.   2010020320
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | | |
| Property Address | 652 Homewillow Ave. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



FRONT VIEW



FRONT VIEW



STREET SCENE

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.  2010020320
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower  Randall and Teresa Fitzgerald | | | | | | |
| Property Address  652 Homewillow Ave. | | | | | | |
| City  Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client  Randall and Teresa Fitzgerald | | Address  6960 Schirlls St., Las Vegas, NV 89118 | | | | |



REAR VIEW



POOL AREA

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address  6960 Schirlis St., Las Vegas, NV 89118 | | | | |



INTERIOR



INTERIOR

American Real Estate Appraisal
**COMPARABLES 1-2-3**

File No. 2010020320
Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |



**COMPARABLE #** 1
195 Apache Tear Ct.
Iron Horse Est



**COMPARABLE #** 2
9194 Cazador St.
Crystal Springs



**COMPARABLE #** 3
9232 Marlia St.
Crystal Springs

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

Information about the subject property was obtained from public records using the County's websites, and, if a reasonably recent listing of the property was detected, from Multiple Listing data. This information included the age of the improvements, the last date of sale, the tax account number and legal description contained in these records, physical characteristics, including square foot information and room count, the assessed valuation of the land and the improvements, current real estate taxes and zoning information. Maps showing the subject site and the subject market area were examined and prepared for inclusion in the appraisal report.

A physical inspection of the subject property was made, including both the exterior and interior of the subject dwelling, and an analysis was made of the neighborhood, site and improvements. This inspection and analysis included the consideration of any known factors that could be expected to have an impact on the value of the subject property. Although due diligence was exercised, the appraiser is not an expert in matters such as pest control, structural engineering, hazardous substances or environmental hazards, and no warranty is given as to these elements.

The subject improvements were measured and sketched, and the pertinent square foot areas of the improvements were calculated. Personal property was not included within the estimate of value.

An analysis was made of the subject real estate market and of available market/sales data, utilizing Clark County Assessors Records and Multiple Listing data. Those sales considered to provide the best indication of the market value of the subject property were selected and compared to the subject in the Sales Comparison Analysis. Information about the comparables was verified, including pertinent financing information relating to the transaction, using the named sources.

Dollar adjustments were made to each of the comparable properties, reflecting estimated market reaction to those items of significant variation between the subject and comparable properties. If a significant item in a comparable property was superior to, or more favorable than the subject property, a minus (-) adjustment was made to the comparable, thus reducing the indicated value of the subject in comparison to that comparable; if a significant item in a comparable was inferior to, or less favorable than the subject, a plus (+) adjustment was made, thus increasing the indicated value of the subject.

Further analysis was made, considering such factors as the comparables' relative proximity to the subject property, recentness of sale and overall similarity to the subject property, in order to reconcile to the final estimate of the value of the subject property by the Sales Comparison Approach to value.

The appraisal report was prepared, together with attached exhibits, and the completed appraisal report was delivered to the client, which constituted completion of the assignment.

THIS IS APPRAISAL IS PRESENTED IN A SUMMARY REPORT.


DIGITAL PHOTOS AND SIGNATURES
All digital photos are originals and have not been altered or enhanced in any way.

This report has been signed with my digital signature. The appraiser has taken the necessary steps needed to ensure the security of this appraisal. In this particular case, the lender was not provided with a computer file of the appraisal report that could be accessed by the appraisal program used by the appraiser. However, the lender has either received the appraisal report in a .PDF format or has received two hard copies (printed on paper) of the appraisal report, either one which upon receipt shall be considered delivered at that time. Therefore, it is the appraiser's opinion that there is no security risk involved with this report.

PURPOSE - The purpose of this appraisal is to provide an opinion of market value, as defined herein, of a fee simple title of the subject, and to provide sufficient and supportable data for legal proceedings and settlement. This opinion of market value is to be used solely by the client. The function is to provide an opinion of value for legal proceedings and settlement purposes of the client.

| Appraiser Name | B. Kent Vollmer | Supervisor Name | |
|---|---|---|---|

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

INTENDED USERS - The Intended Use of this appraisal and appraisal report are as stated in the report form as follows: "The intended user of this appraisal report is the client". No other intended users have been identified to the Appraiser and none are assumed. Pursuant to USPAP SR1-2.a, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

Use of this appraisal and appraisal report by other users is not intended by the appraiser. Unless otherwise identified by the Client as being an Intended User, all other third parties are considered to be unintended users, including but not limited to the borrower in the pending loan transaction, other mortgage lending institutions and other governmental agencies not involved in the mortgage lending process. Specifically, any potential buyers or outside lenders contemplating purchase or mortgage activity on this property are urged to seek a separate opinion of value from a competent and duly licensed/certified appraiser. Any additional requests in this assignment by third parties must be requested in writing and may either be declined or if performed may be subject to additional billing to recover the costs associated with such requests.

INTENDED USE - The Intended Use of this appraisal and appraisal report as stated in the report form is "for the client to evaluate the property that is the subject of this appraisal for legal proceedings and settlement". No other intended uses have been communicated to the Appraiser and none are assumed.

Pursuant to USPAP SR1-2b, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

If a third party to this appraiser-client relationship desires an appraisal for their own uses, they are urged to seek one developed specifically for their uses from a competent and appropriately licensed/certified appraiser. The Appraiser in this assignment cannot accept responsibility for uses not otherwise identified at the time of engagement. Use of this appraisal report for other purposes is therefore not intended by the appraiser.

USE: Reading the appraisal report or possessing the report does not constitute use. Relying on the appraisal report to understand how the appraiser developed the opinion of value does not constitute use. Use means relying on the appraisal report to make a decision or to take an action.

This report may contain comments, conditions, and/or certifications added by the signing appraiser including, but not limited to, this Supplemental Addendum. These items shall supersede and take precedence over all other language, requirements, or conditions contained in any preprinted and/or third-party forms or documents included in, or incorporated by reference into, the appraisal report.

OWNERSHIP OF INTELLECTUAL PROPERTY AND/OR DATA - American Real Estate Appraisal expressly retains all right, title, and interest in all patents, trademarks, trade names, trade secrets, software, data, conclusions, opinions, valuations, or other information included in, arising out of, or in any way related to this appraisal or the provision of appraisal services to the named client and/or Intended User. The report and information supplied by the staff and/or agents of American Real Estate Appraisal is a culmination of intellectual education, professional experience, personal investigation, and know-how, which shall at all times remain the property of American Real Estate Appraisal. No person shall be entitled to break down, strip out, mine, or disseminate any component or part of this report, including, but not limited to, any conclusions, valuations, opinions, or other data compilations herein. Notwithstanding, the Intended User as defined above may use this appraisal report and the contents herein for the limited purpose and use identified above.

| | | | |
|---|---|---|---|
| Appraiser Name | B. Kent Vollmer | Supervisor Name | |

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

ADEQUACY OF SCOPE - The appraiser has proposed and the Client has agreed (prior to submission) that the level of development and reporting detailed above is sufficient to address the substantiate criteria of a reasonable Scope of Work within the context of the Intended Users and Intended Use. With the exception of revisions made for the purpose of correction of any errors, the Appraiser does not anticipate further development or reporting requirements for this assignment. Any additional requests from the Client or any third parties may represent a change in the assignment conditions and require the development of a new assignment. With the exception of corrections of any errors or omissions, any additional requests must be made in writing and may be subject to additional billing to recover the costs associated with the additional work.

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, complete visual observation of the interior and exterior of the subject property, its neighborhood, and selection of comparable sales within the subject's market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

The appraiser is not a home inspector and the appraisal report is not a home inspection. The appraisal report cannot be relied upon to disclose hidden defects that are not apparent from a visual observation of the surfaces of the subject property from standing height. The testing of systems (structural, electrical, mechanical, heating, cooling, plumbing) and components (such as appliances, fixtures, doors, windows, etc.) lies outside of the scope of this appraisal assignment.

This report is not intended for use by the client for the purpose of identifying any adverse conditions in the subject's systems and components which might be revealed by any inspections by licensed professionals in any relevant field. This appraisal does not guarantee that the subject property is free of undetected problems, possible defects or environmental hazards that could exist.

Complete visual inspection of the interior areas of the subject property: A visual observation from standing height of the accessible areas and unobstructed, exposed surfaces of the living area without removal of personal possessions. It includes the visual observation of attached automobile storage, if any, as well as of any attached accessory buildings judged by the appraiser to have contributory value.

Complete visual inspection of the exterior of the subject property: A visual observation of the unobstructed, exposed, and accessible perimeter of the residential improvements from standing height. It includes the visual observation of detached automobile storage, if any, as well as of any detached accessory buildings judged by the appraiser to have contributory value.

Living area: Living area is defined as legal, finished, permanently heated, living space contiguous with other living area and regarded by a typical purchaser as being habitable and as having utility. This appraisal report attempts to conform to The American National Standards Institute ANSI Z765-2003, approved November 2003.

Estimated marketing time is based on current and/or past studies of sales activity provided by the Las Vegas Multiple Listing Service, and the appraiser's knowledge of the property's market. The estimate assumes proper pricing and marketing. The estimated marketing time is typically less than three months but could be up to six months.

This appraisal utilizes digitized electronic signatures that prevent the altering of the appraisal report in any manor with the removal of the appraiser's signature. These signatures are secure and irrevocable, binding the appraiser(s) to the accuracy and completeness of the appraisal report.

ADDITIONAL COMMENTS

•The comments in this addendum are intended to expand on the information provided on the form appraisal. It is our desire to insure that the client fully understands the appraisal process and methodology as well as the facts pertinent to the valuation of the subject property. The expanded narrative provided in this addendum is an effort to clarify those areas of the report that we have found that cause the most concern to our clients.

•In the market grid, ROOM COUNT contains the adjustments for bedrooms and bathrooms. The next line, GROSS LIVING AREA (GLA), contains the adjustment for GLA and the total room count. Note that any extreme in living area and/or room count may result in a functional utility adjustment under the separate line UTILITY.

•The sketch of the subject property is primarily to assist the reader (reviewer) in visualizing the property as we have seen it from our on site inspection. The floor plan provided is not intended to duplicate the builder's plan to scale, but rather to be a guide to the reviewer in evaluating normal traffic patterns within the property.

| | |
|---|---|
| Appraiser Name  B. Kent Vollmer | Supervisor Name |

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

•Areas of limited access (i.e. attic, crawl spaces, eaves, etc.) may not necessarily be inspected due to limited access. For purposes of this appraisal, a condition for any such applicable area is determined after a visual inspection of related/adjoining parts of the structure. An appraiser is a trained and experienced observer of real estate, but recognizing, detecting, or measuring contamination is often beyond the scope of the appraiser's expertise. Remediation and compliance cost estimation involves knowledge and experience beyond that of appraisers.
•This inspection is not intended to serve as a termite inspection, although any problems observed are noted in the appraisal. The buyer or homeowner should contact a qualified inspection professional for this service if so desired.
•Please be advised that the estimated marketing time for the subject is typically up to three months and sometimes up to six months.
•No items of personal property are included in the appraised value of the subject.
•In the preparation of this appraisal some or all of the photographs may be digitized. In no case have the photos been altered of manipulated in any manner. All photos are accurate representations of the properties.
•The Americans with Disabilities Act (ADA) became effective January 26, 1992. This inspection does not represent a specific compliance survey or analysis to determine whether of not the physical aspects of the improvements meet the ADA accessibility guidelines. This inspection in no way suggests ADA compliance. Since compliance expectations can change with each owner's financial ability to cure deficiencies, the value of the subject does not consider possible noncompliance.

Opinions or estimates expressed herein represent our best judgment but should not be construed as advice or recommendation to act. The appraiser should be contacted with any questions before this report is relied upon for decision making. This appraisal represents an estimate of value based on an analysis of information known to us at the time the appraisal was completed. I do not assume any responsibility for incorrect analysis because of incorrect or incomplete information, which was provided to the appraiser. If new data or documentation is provided to the appraiser, the value in this report is subject to change based on the significance of this new data.

ADVERSE ENVIRONMENTAL CONDITIONS

The existence of any hazardous material, including but not limited to, Urea formaldehyde foam insulation, radon gas, asbestos products, lead based paints or toxic waste contaminant, which may or may not be present in the subject improvements, on the site or in the immediate vicinity of the subject has not been observed by the appraiser. The appraiser has no knowledge of the existence of such hazardous material in or on the property.

It should be noted that homes built before 1978 may contain lead based paint and the client should be advised of its possible existence. Also, the EPA suggests that all homes be tested for radon gas. If the client has a concern then a qualified expert should be contacted.

Homes clad with EIFS (Exterior Insulation and Finish Systems) a.k.a. synthetic stucco or Dryvit have a very strong tendency to retain moisture between the sheathing of the home and the finish system. The design of EIFS, unlike other systems (brick, stone, siding, etc.), does not allow the moisture to drain out. The moisture can sit in contact with the sheathing for a prolonged period and rotting may result. Damage can be serious. Left unchecked, it can affect the structural components of these homes.

Radon gas can be found in any home whether it is new, old, on slab, a crawl space, or a basement. Radon is odorless, colorless, and is a radioactive gas produced by the breakdown of uranium in soil, rock, and water. It typically rises up through the ground and into a home through holes in the foundations. It is the radiation given off by radon and its decay products that is the health risk concern. These decay products become attracted to almost any object including airborne particles such as dust. The Surgeon General has warned that radon is the second leading cause of lung cancer in the United States. The U.S. EPA has established an "action level" for indoor radon at 4 pCi / L (pico curies per liter of air). If a home has a radon level of 4 pCi / L the situation should be remedied. The only way to know if a problem exists is to have the property tested.

Soils known to be unstable (shrink or swell), exist in the Las Vegas valley area. This type of soil condition causes the soil around the foundation of a dwelling to expand and contract due to changes in its water content. Indications of this problem include:

•Foundation walls that are buckled or bowed.
•Doors and windows that stick or don't open.
•Cracks in foundation walls.
•Cracks in exterior walls.
•Cracks in interior walls and ceilings.
•Sunken or buckled interior concrete floors.
While the appraiser has made a diligent observation of the subject property and none of these indicators were noted, the only way to insure that this problem is not present is to have the property tested.

| Appraiser Name | B. Kent Vollmer | Supervisor Name | |
|---|---|---|---|

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.  2010020320
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

### NEIGHBORHOOD MARKET CONDITIONS

There is currently an over supply of homes for sale in the subject's market which has resulted in a "depressed market" and as a result homes are generally exposed for a moderate period of time before any offers for purchase are made. Currently few are made in excess of the asking price. As a result there are a sufficient number of recent transfers from which to select comparable sales data. This results in the use of market data that might require significant adjustments in order to compare to the subject property.

Current interest rates continue to remain at normal levels. Discount points and closing costs are typically negotiated between buyers and sellers and it is not uncommon for the Seller to pay some of these costs (between one and three percent of purchase price). A variety of loan packages are available including both conventional and government endorsed mortgages.

### HIGHEST AND BEST USE

Highest and Best Use is that reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal. Alternatively, it is that use, from among legally permissible, physically and reasonably possible uses, found to be economically and financially feasible, and which results in the most profitable of the alternatives.

Given the current zoning, location and size of the site, surrounding land uses (recognizing the principle of conformity) and development characteristics of the market area, our opinion of the highest and best use of the property "as vacant" is for single family residential development. Further, the existing use/improvements exceed the value of the site vacant; therefore our opinion of the highest and best use of the site "as improved" is for continued single family residential use.

### COMMENTS ON THE SALES COMPARISON ANALYSIS

Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen what are believed to be the best comparable sales available from a thorough and extensive search for comparable sales data in the subject's market. The sales selected for use in the analysis are considered to be the best indicators of value for the subject property. Other sales reviewed would have required excessive adjustments and were not considered to be as reliable as the sales chosen.

Adjustments within the Sales Comparison Analysis are based on the market extraction method, generally employing the matched pair process, and not specifically based on cost figures.

Every effort has been made to conform to FHLMC/FNMA Guidelines and in most cases, an even stricter interpretation found common to most investors in the secondary market.

To the best of the appraisers knowledge, all comparable sales were sold without special or creative financing or excessive sales concessions. Any excess seller concessions have been adjusted appropriately using "cash equivalency" to reflect accurate market response. Closing cost paid by the sellers of the comparable properties are equivalent to typical financing terms offered by third party institutional lenders in the local market. In the appraiser's opinion, these sales represent typical market financing transactions. The sales prices are not considered to be inflated due to special or excessive financing concessions. The indicated values of the comparable sales reflect the value of the subject real estate and include only those sellers closing cost normally paid by tradition or law in the market area.

Gross living areas shown for the comparable sales are estimates based on information form one or more of the following sources: Multiple Listing Service (MLS), county/city tax records, real estate agents, homeowners, builders, appraisers, interoffice data bank or actual measurements. Slight variations in size will have no effect on the estimate of value. All comparable sales are settled to the best of the appraiser's knowledge. Verification is with county records, and/or Realtor.

| Appraiser Name | B. Kent Vollmer | Supervisor Name | |
|---|---|---|---|

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.   2010020320
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | | |
| Property Address | 652 Homewillow Ave. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89123 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirils St., Las Vegas, NV 89118 | | | | |

FINAL RECONCILIATION

There is insufficient data available in the subject market to derive a gross rent multiplier or a gross monthly rent multiplier. As such, the methodology of the Income Approach was not developed to estimate the market value of the subject property. Furthermore, the Income Approach is not a generally accepted method for estimating the value of owner occupied single family residences in the subject's market.

Although the Cost Approach may not be required for the client specified in this report, the Appraiser is bound by the Uniform Standards of Professional Appraisal Practice (USPAP), which may or may not require the utilization of the Cost Approach for the specific subject property of this report. If the Appraiser has determined that the Cost Approach is necessary to produce a reliable and credible appraisal report than it has been included and supporting documentation is contained in the Appraiser's work file and summarized in the Cost Approach section of this report. If the Cost Approach was not considered necessary to produce a credible and reliable appraisal due to the age of the property and limitations in determining accrued depreciation, then the lack of inclusion of the Cost Approach does not result in departure from the USPAP.

Of the three traditional approaches to value, only the Sales Comparison Analysis has been applied. When sufficient data is available, the methodology of the Sales Comparison Analysis yields the most convincing indication of value for a single family residence in the subject's market area. Although substantial adjustments may be applied to the sales prices of the comparable properties, the data in this analysis is considered to be of sufficient quality and quantity to present a convincing estimate of value. Therefore, most weight is placed on the Sales Comparison Analysis in estimating the market value of the subject property as of the effective date of the appraisal. The value estimated by the Cost Approach, if used, is considered to be supportive.

COMPLIANCE TO INDUSTRY STANDARDS
The appraiser's analysis, opinions and conclusions were developed in accordance with and in conformity to the Uniform Standards of Professional Appraisal Practice (USPAP) standards rule 2-3.

COMPETENCY OF THE APPRAISER
In accordance with the Competency Rule of the Uniform Standards of Professional Appraisal Practice (USPAP), the appraiser certify that they have the education, experience and knowledge sufficient to appraiser the property being valued in this report. No one other than the appraiser signing the report has provided significant real property appraisal assistance in completing this report unless otherwise indicated.

SELF CONTAINMENT
This appraisal is intended to be a summary report with all the necessary information to enable the reader to understand the Appraisers opinion and follow the appraisers reasoning. No third party reports have been presented to, or reviewed by this appraiser, IE; sales contracts and addenda, pest reports, soil reports, title reports, structural, well, septic or roof reports (if applicable).

| | |
|---|---|
| Appraiser Name  B. Kent Vollmer | Supervisor Name |

# APPRAISAL REPORT OF

**Randall and Teresa Fitzgerald**

**6960 Schirls St.**

Las Vegas, NV 89118

# AS OF

March 15, 2010

# PREPARED FOR

**Teresa Fitzgerald**
**Randall and Teresa Fitzgerald**
6960 Schirls St.
Las Vegas, NV 89118

# PREPARED BY

**B. Kent Vollmer**
**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118



**American Real Estate Appraisal**
6441 Crystal Dew Dr.
Las Vegas, NV 89118
(702) 876-7799

March 25, 2010

**Randall and Teresa Fitzgerald**
6960 Schirlls St.
Las Vegas, NV 89118

RE:     **Randall and Teresa Fitzgerald**
        **6960 Schirlls St.**
        Las Vegas, NV 89118
File No.   2010020321
Case No.

Dear  Teresa Fitzgerald,

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

**6960 Schirlls St., Las Vegas, NV 89118**

The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property.  The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  **March 15, 2010**
is:

**$ 318,000**

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist  you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature:

**B. Kent Vollmer**
American Real Estate Appraisal

**American Real Estate Appraisal**

File No.  2010020321
Case No.

## Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | City | Las Vegas | State | NV | Zip Code | 89118 | |
| Owner | Randall Fitzgerald | Intended User | Randall and Teresa Fitzgerald | County | | Clark | | |

Legal Description  Parcel Map File 33 Page 79 Lot 1

| Assessor's Parcel # | 177-06-702-009 | Tax Year | 2010 | R.E. Taxes $ | 4,570.89 |
|---|---|---|---|---|---|
| Neighborhood Name | Clark County | Map Reference | | Census Tract | 0029.63 |

Occupant [X] Owner [ ] Tenant [ ] Vacant  Special Assessments $  None    [ ] PUD  HOA $ ___ [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Intended Use  Bankruptcy Settlement

Client  **Randall and Teresa Fitzgerald**  Address  **6960 Schirlls St., Las Vegas, NV 89118**

Is the subject property currently offered for sale or has it been offered for sale within the twelve months prior to the effective date of this appraisal?  [ ] Yes  [X] No

Report data source(s) used, offering price(s), and date(s).  GLVAR MLS Services.

**CONTRACT**

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $ ___ Date of Contract ___ Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | Property Values | [ ] Increasing [ ] Stable [X] Declining | PRICE $(000) | AGE (yrs) | One-Unit | 60 % |
| Built-Up | [ ] Over 75% [X] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage [ ] In Balance [X] Over Supply | Low 50 | 0 | 2-4 Unit | % |
| Growth | [ ] Rapid [ ] Stable [X] Slow | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | High 775 | 40 | Multi-Family | % |
| | | | | Pred. 130 | 5 | Commercial | 5 % |
| | | | | | | Other Vacant | 35 % |

Neighborhood Boundaries  Neighborhood is bounded on the north by Hacienda Ave., to the south by Wigwam Ave., to the west by Jones Boulevard, and to the east by Bermuda Road.

Neighborhood Description  Area is located approx 8 miles southwest of the Las Vegas CBD in the Enterprise Township.  Area consists of avg to good quality production and custom homes in average condition.  Area is partially developed.  Freeway access is 1 mile.  All other facilities such as schools, shopping, churches, and employment are within acceptable distances.

Market Conditions (including support for the above conclusions)  The greater Las Vegas Housing Market has been in a depressed state since late 2006, with over 19,000 homes for sale through MLS.  This has created a "buyers market" and depressed prices.  The is in reaction to the heated appreciation rates from 2003 to 2006.  Market activity is depressed.

**SITE**

| Dimensions | 102 x 300 | Area | 30,600 SqFt | Shape | Rectangular | View | Residential |
|---|---|---|---|---|---|---|---|

Specific Zoning Classification  R-E  Zoning Description  Rural Estates Residential

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street | Asphalt | [X] |
| Gas | [ ] | [X] Propane | Sanitary Sewer | [X] | | Alley | Other | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone  Zone X  FEMA Map #  32003C 2554 E  FEMA Map Date  9/2/2002

Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.
No adverse easements or encroachments observed.  Site is a large interior residential lot.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description  materials/condition | | Interior  materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls | Concrete/Avg | Floors | Carpet/Tile/Hdwood/Avg |
| # of Stories  2 Story | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls | Frm/Stucco/Avg | Walls | Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area ___ sq. ft. | | Roof Surface | Conc. Tile/Avg | Trim/Finish | Wood/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish ___ % | | Gutters & Downspouts | None | Bath Floor | Ceramic/Hardwood/Avg |
| Design (Style) | Conventional | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type | Alum. Slider/Avg | Bath Wainscot | Ceramic Tile/Avg |
| Year Built | 1990 | Evidence of [ ] Infestation | | Storm Sash/Insulated | Insulated | Car Storage | None |
| Effective Age (Yrs) | 20 | [ ] Dampness [ ] Settlement | | Screens | Screens/Avg | [X] Driveway  # of Cars  2 |  |
| Attic | None | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | Woodstove(s) # | Driveway Surface | Concrete |
| [ ] Drop Stair [ ] Stairs | | [ ] Other | Fuel  Gas | [X] Fireplace(s) # 2 [X] Fence  Conc Block | [X] Garage  # of Cars  2 | | |
| [ ] Floor [X] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck Cov [X] Porch  Open | [ ] Carport  # of Cars | | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [X] Pool  Pool/Spa | [ ] Att. [ ] Det. [X] Built-in | | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area **above** grade contains:  7 Rooms  4 Bedrooms  3.00 Bath(s)  3,553 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  See Attached Comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)  No functional, physical or external inadequacies observed.  Home is rated average condition.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe

American Real Estate Appraisal

File No.   2010020321
Case No.

## Residential Appraisal Report

| There are | 43 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 229,900 | to $ | 1,600,000 | . |

| There are | 24 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 196,000 | to $ | 550,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE #1 | | COMPARABLE SALE #2 | | COMPARABLE SALE #3 | |
|---|---|---|---|---|---|---|---|
| Address | 6960 Schirlls St. | 8440 Warbonnet Way | | 6195 W. Oquendo Rd. | | 7220 La Cienega St. | |
| | Las Vegas, NV 89118 | Clark County | | Clark County | | Clark County | |
| Proximity to Subject | | 4.31 miles SW | | 2.11 miles NW | | 2.06 miles E | |
| Sale Price | $ | $ | 285,000 | $ | 297,000 | $ | 290,000 |
| Sale Price/Gross Liv. Area | $ | 0 sq. ft. | $ 97.34 sq. ft. | | $ 89.59 sq. ft. | | $ 105.22 sq. ft. | |
| Data Source(s) | Subject | M.L.S. #949368 | | M.L.S. #999218 | | M.L.S. #988100 | |
| Verification Source(s) | Inspection | Doc. #Not Yet Available | | Doc. #20100223:00936 | | Doc. #20091215:01187 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Conventional/REO | | V.A./REO | | Cash/REO | |
| Concessions | | Seller Pd $8,440 | | No Seller Pts. | | Seller Pd $8,750 | |
| Date of Sale/Time | 3/15/2010 Insp | 9/15/09; 9/25/09 | | 12/21/09; 2/23/10 | | 11/15/09; 12/14/09 | |
| Location | Residential | Residential | | Residential | | Residential Cul-de-Sac | -15,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 30,600 SqFt | 44,968 SqFt | -14,368 | 30,928 SqFt | -328 | 26,550 SqFt | +4,050 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 20 yrs | 28 yrs | | 20 yrs | | 17 yrs | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 7  4  3.00 | 7  4  3.00 | 0 | 8  5  4.50 | -2,250 | 7  4  3.00 | 0 |
| Gross Living Area | 3,553 sq. ft. | 2,928 sq. ft. | +15,625 | 3,315 sq. ft. | +5,950 | 2,756 sq. ft. | +19,925 |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 3-Garage | 2-Garage | +6,000 | 3-Garage | -3,000 | 3-Garage | -3,000 |
| Porch/Patio/Deck | Cov. Patio,Porch/Deck | Cov. Patio,Porch | | Cov. Patio/Porch | | Cov. Patio/Porch | |
| Fireplaces | 2 Fireplaces | 1 Fireplace | +1,500 | 1 Fireplace | +1,500 | 1 Fireplace | +1,500 |
| Pool | Pool/Spa/Shop | Pool/Spa | +25,000 | Shop | +15,000 | Pool/Spa | +25,000 |
| Landscaping | Front/Rear | Front/Rear | | Front/Rear | | Front/Rear | |
| Net Adjustment (Total) | | X + - | $ 33,757 | X + - | $ 16,872 | X + - | $ 32,475 |
| Adjusted Sale Price | | Net Adj: 12% | | Net Adj: 6% | | Net Adj: 11% | |
| of Comparables | | Gross Adj : 22% | $ 318,757 | Gross Adj: 9% | $ 313,872 | Gross Adj: 24% | $ 322,475 |

| X did | | did not research the sale or transfer history of the subject property and comparable sales. If not, explain | |

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Greater Las Vegas Association of Realtors, Clark County Assessors Office.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | 2/5/2009 | 6/8/2007 | 10/15/2009 |
| Price of Prior Sale/Transfer | N/A | $585,227 Trustees Deed | $740,000 | $221,250 Trustees Deed |
| Data Source(s) | Clark County Assessor | Clark County Assessor | Clark County Assessor | Clark County Assessor |
| Effective Date of Data Source(s) | 3/25/2010 | 3/25/2010 | 3/25/2010 | 3/25/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Comp #2 also transferred 10/23/2009 for a reported price of $260,000
as a trustees deed as a repo.  Prior transfers reflect the depressed state of the current market.

Summary of Sales Comparison Approach   Sales were researched throughout the subject's market area.  Site area differences have been adjusted
at $1/SF.  GLA differences have been adjusted at $25/SF.  All other adjustments reflect typical market reactions to basic amenity
differences.  Sale comps provide an indicated range of values of $313,983 to $322,475.  After careful consideration of all influencing factors, a
final estimate value of $318,000 is arrived at.

Indicated Value by Sales Comparison Approach $   318,000

| Indicated Value by: Sales Comparison Approach $ | 318,000 | Cost Approach (if developed) $ | 0 | Income Approach (if developed) $ | 0 |

Market analysis is the best approach to a residential valuation.  Income approach is not consistent and data is minimal.  Cost approach is not
considered.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   Appraisal is made as is.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   318,000  , as of   March 15, 2010  , which is the date of inspection and the effective date of this appraisal.

NL - Residential 5/2007          This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal

File No.   2010020321
Case No.

## Residential Appraisal Report

The subject property is improved with a two-story average quality custom built residence with frame and stucco exterior, concrete tile roofing and built-in two-car garage.   Detached shop at the rear of the property has 14.5' ceiling height with 3 overhead doors 11'W by 12.5'H.  Interior is segregated into office areas and a work area.  Office has central HVAC, work area has gas space heater and evap cooler.

Rear yard is a large area with inground pool and spa with diving board and propane heat.  Rear yard is fenced, and front yard has short fencing with drive through gate.  Concrete driveway along the entire south side of the property provide drive-through access to the garage and shop at the rear of the property.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (if applicable)

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | |
|---|---|---|---|---|
| Source of cost data | Dwelling | 3,553 Sq. Ft. @ $ | =$ | |
| Quality rating from cost service          Effective date of cost data | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | |
| COST APPROACH WILL CARRY NO WEIGHT IN THIS APPRAISAL | Garage/Carport | 552 Sq. Ft. @ $ | =$ | 0 |
| | Total Estimate of Cost-new | | =$ | 0 |
| | Less     Physical   29 Functional   External | | | |
| | Depreciation      0      0      0 | | =$ ( | 0 ) |
| | Depreciated Cost of Improvements | | =$ | 0 |
| | "As-is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)      50      Years | Indicated Value By Cost Approach | | =$ | 0 |

### INCOME APPROACH TO VALUE (if applicable)

**INCOME**

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | 0 | Indicated Value by Income Approach |
|---|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)   Rental Data Attached.

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases            Total number of units            Total number of units sold
Total number of units rented      Total number of units for sale    Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data source.
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options

Describe common elements and recreational facilities

NL - Residential 5-2007        This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal

File No.    2010020321
Case No.

This appraisal report is subject to the scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. The Appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**DEFINITION OF MARKET VALUE:** As per Fannie Mae the definition of market value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

American Real Estate Appraisal

File No.    2010020321
Case No.

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal

File No.    2010020321
Case No.

21. I am aware that any disclosure or distribution of this appraisal report by me or the client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

22. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name    **B. Kent Vollmer** | Name |
| Company Name    **American Real Estate Appraisal** | Company Name |
| Company Address    6441 Crystal Dew Dr. | Company Address |
| Las Vegas, NV 89118 | |
| Telephone Number    702-876-7799 | Telephone Number |
| Email Address    Kent@VollmerOnline.Net | Email Address |
| Date of Signature and Report    March 25, 2010 | Date of Signature |
| Effective Date of Appraisal    March 15, 2010 | State Certification # |
| State Certification #    A.00111-CG | or State License # |
| or State License #    Certified General | State |
| or Other (describe)    State #    NV | Expiration Date of Certification or License |
| State    NV | |
| Expiration Date of Certification or License    4/30/2011 | |

ADDRESS OF PROPERTY APPRAISED

**6960 Schirlis St.**

Las Vegas, NV 89118

APPRAISED VALUE OF SUBJECT PROPERTY $    **318,000**

CLIENT

| Name | **Teresa Fitzgerald** |
|---|---|
| Company Name | **Randall and Teresa Fitzgerald** |
| Company Address | 6960 Schirlis St. |
| | Las Vegas, NV 89118 |
| Email Address | RTMailServices@lvcm.com |

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
  Date of Inspection
☐ Did inspect interior and exterior of subject property
  Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection

NL - General Certification 5/2007          This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.

American Real Estate Appraisal
**ASSESSORS RECORD**

File No.    2010020321
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | | Randall and Teresa Fitzgerald | | | | | |
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

---

### CLARK COUNTY PROPERTY

| | | | |
|---|---|---|---|
| Parcel # | 177-06-702-009 | Address | 6960 SCHIRLLS ST |
| | | PropCity | LAS VEGAS | Zip Cd | 89118-5158 |
| TN-RG-SE | 22- 61.0- 6 | Tax Dist | ENTRPRS-ARTSN-FR-911 | ReAssd | 2009 |
| Tot Value | $155,971 | Land Use | 1107010001/SFR | Update | 03/19/10 |
| GEO Id | PT NW4 SE4 22-61.0-6 | | | Status | |

#### ASSESSOR DESCRIPTION

| | | | | |
|---|---|---|---|---|
| File-Page | PM 0033-0079 | Subdivision | 9999 | |
| Assr Lot | 1 | Block | Phase | Bldg | Unit |
| Assr Apt | | Parcel | Area | Tract | Outlot |
| Assr Desc | PARCEL MAP FILE 33 PAGE 79 LOT 1 | | | |

#### OWNER & DOC INFORMATION

| | | ETAL | DOC DATE | DOC NUMBER | DV | MJL |
|---|---|---|---|---|---|---|
| Owner Name | FITZGERALD RANDALL S | N | 12/22/04 | 2004122204006 | | 0 |
| 2nd Owner | | | 07/21/94 | 1994072100327 | F | 1 |
| Address (S) | 6960/ SCHIRLLS/ ST | | | | | |
| City | LAS VEGAS | State NV | | Zip Code | 89118- 5158 | |
| Prev Owner | TERRY TOMMY J & BARBARA A FAM | | | | | |
| Own Phone | | | | Tenant Phone | | |

#### LAND & BUILDING INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Land Value | $70000 | | | | | Nuisance | N |
| FrontDepth | 102x300 | | | | | | |
| Acres | 0.70 | Irregular | | Adj Parking | Y | Str Lights | N |
| Lot SqFt | 30600 | Undrg Util | Y | Rec Area | N | Curb-Guttr | N |
| Topography | LEVEL | Str Paved | Y | Sidewalks | N | Traffic | AVERG |
| Schools | RESNBL DIS | View | | | | Landscaping | MODRT |
| Shopping | RESNBL DIS | | | Metro Map | 74- B2 | Area | 504 |
| Impr Value | $85,971 | Act Yr Blt | 1990 | Carpet | 40 % | Tot Rooms | 7 |
| Type Style | 2 STORY | Eff Yr Blt | 1990 | Ceramic Tl | | Bedrooms | 4 |
| Architectr | | Cost Class | | Vinyl Tile | | Bathrooms | 3.00 |
| Ext Wall | FRM STUCCO | Units | 1 | Hardwood | 60 % | Family Rms | 1 |
| Roof Matrl | CONC TILE | Home Auto | N | Centl Vac | N | Formal Din | N |
| Flooring | CONC | Security | N | El Refrig | N | Fireplaces | 2 |
| Heat Systm | FORCE AIR | Intercom | Y | El Micro | Y | Garbg Disp | |
| Air Cond | CENT COOL | Range Fan | Y | Trash Cmpt | N | Dishwasher | Y |
| Centrl Air | 100 % | Range Oven | | | | | |

#### PROPERTY SUB-AREAS SQ-FT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Living Area | 3361 | First Flr | 1993 | Porch 1 | 400 | Garage | 744 |
| Building 1 | 7305 | Second Flr | 1368 | Porch 2 | 77 | Carport | |
| Total Bldg | 7305 | Abv Second | | Porch 3 | 400 | Storage | |
| Pool (Y) | 450 | Basement F | | Paving 1 | 1793 | Deck | 800 |
| Fence | | Basement U | | Paving 2 | | | |

#### EXTRA FEATURE INFORMATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pool Heatr | Y | Tennis Cts | | Prch/Patio | 1/1/1 | Sprinklr | AVE |
| Spas/Sprd | Y | Tns Lights | N | Prch Cover | 2 | Sprinklr | |
| Deck | KOOL DECK | Tns Fence | N | Prch Deck | 1/1/7 | Other | |
| Fence | | Oth | | | | | |

#### SALES & LOAN INFORMATION

| | PRICE | DATE | TYPE | PCT OWN | DT |
|---|---|---|---|---|---|
| MLS Sale | | | | | |
| County 1 | $750,000 | 12 01 04 | R-RECORDED VALUE | | |
| County 2 | $260,000 | 07 01 94 | R-RECORDED VALUE | | |
| County 3 | $21,000 | 12 01 87 | R-VAC LND ABV: BLW MRK | | |
| | | | LOAN AMOUNT | LENDER | TYPE | INT | TITLE |
| | | | $600000 | 0090 | C | A | 3/13 |

| | TOTAL TAX | TOTAL ASSD | IMPRV | LAND | PREV YEAR | YEAR | EXEMPTION |
|---|---|---|---|---|---|---|---|
| | $5,579.89 | $155,971 | $85,971 | $70,000 | | 2010 | |
| Tax | $4904.01 | $166,539 | $93,039 | $73,500 | | 2009 | |
| Tax Rate | 2.9306 | | | | | | |

American Real Estate Appraisal
**LOCATION MAP ADDENDUM**

File No.    2010020321
Case No.

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**PLAT MAP**

File No.    2010020321
Case No.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | | | Randall and Teresa Fitzgerald | | | | |
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



Sketch by Apex Medina™

Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | | | |
|---|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | | | Subtotals |
| GLA1 | First Floor | 2185.0 | 2185.0 | First Floor | | | |
| GAR | Garage | 552.0 | 552.0 | | 66.0 x | 4.0 | 264.0 |
| P/P | Cov. Patio | 400.0 | | 0.5 x | 4.0 x | 4.0 | 8.0 |
| | Walled Opoen Patio | 140.0 | 540.0 | | 8.0 x | 24.0 | 192.0 |
| | | | | | 32.0 x | 50.0 | 1600.0 |
| | | | | | 8.0 x | 4.0 | 32.0 |
| | | | | 0.5 x | 2.0 x | 2.0 | 2.0 |
| | | | | 0.5 x | 5.0 x | 5.0 | 12.5 |
| | | | | 0.5 x | 4.0 x | 4.0 | 8.0 |
| | | | | | 6.0 x | 2.0 | 12.0 |
| | | | | | 8.0 x | 5.0 | 40.0 |
| | | | | 0.5 x | 2.0 x | 2.0 | 2.0 |
| | | | | 0.5 x | 5.0 x | 5.0 | 12.5 |
| | Net LIVABLE Area | (rounded) | 2185 | 12 Items | | (rounded) | 2185 |

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower    Randall and Teresa Fitzgerald | | | | | | |
| Property Address    6960 Schirlls St. | | | | | | |
| City  Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client    Randall and Teresa Fitzgerald | | Address    6960 Schirlls St., Las Vegas, NV 89118 | | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA2 | Second Floor | 1368.0 | 1368.0 |
| | | | |
| | Net LIVABLE Area | (rounded) | 1368 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| Second Floor | | |
| 50.0 x 22.0 | | 1100.0 |
| 0.5 x 2.0 x 2.0 | | 2.0 |
| 14.0 x 18.0 | | 252.0 |
| 6.0 x 2.0 | | 12.0 |
| 0.5 x 2.0 x 2.0 | | 2.0 |
| 5 Items | (rounded) | 1368 |

Produced by ClickFORMS Software BradfordSoftware.com

American Real Estate Appraisal
**SKETCH ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



Sketch by Apex Medina™
Comments:

| AREA CALCULATIONS SUMMARY | | | | | AREA BREAKDOWN | |
|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | | Breakdown | Subtotals |
| OTH | Shop Building | 2500.0 | 2500.0 | | | |

American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | |



FRONT VIEW



FRONT VIEW



FRONT VIEW

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client    Randall and Teresa Fitzgerald | | | Address  6960 Schirlls St., Las Vegas, NV 89118 | | | | |

STREET SCENE



POOL AREA



DETACHED SHOP



American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

| | | | | | | File No. | 2010020321 |
|---|---|---|---|---|---|---|---|
| | | | | | | Case No. | |

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR SHOP



INTERIOR SHOP



INTERIOR SHOP

**SUBJECT PHOTO ADDENDUM**

File No.    2010020321
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | |
| Property Address | 6960 Schirlls St. | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code    89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address  6960 Schirlls St., Las Vegas, NV 89118 | | | |

REAR VIEW



REAR VIEW



VIEW OF SHOP AREA



American Real Estate Appraisal

## SUBJECT PHOTO ADDENDUM

File No.   2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR GARAGE



PATIO BBQ



FRONT WALLED PATIO

American Real Estate Appraisal

### SUBJECT PHOTO ADDENDUM

File No.  2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City  Las Vegas | | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | |



INTERIOR



INTERIOR

American Real Estate Appraisal

**SUBJECT PHOTO ADDENDUM**

File No.    2010020321
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower   Randall and Teresa Fitzgerald | | | | | | |
| Property Address    6960 Schirlls St. | | | | | | |
| City   Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client    Randall and Teresa Fitzgerald | | Address   6960 Schirlls St., Las Vegas, NV 89118 | | | | |



DRIVEWAY TO THE
REAR SHOP AREA



VIEW FROM DECK
TOWARDS LAS VEGAS

American Real Estate Appraisal

**COMPARABLES 1-2-3**

| | | | | | File No. | 2010020321 |
|---|---|---|---|---|---|---|
| | | | | | Case No. | |

| Borrower | | | Randall and Teresa Fitzgerald | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | |



**COMPARABLE #  1**
8440 Warbonnet Way
Clark County



**COMPARABLE #  2**
6195 W. Oquendo Rd.
Clark County



**COMPARABLE #  3**
7220 La Cienega St.
Clark County

Case 10-13624-bam    Doc 65    Entered 10/07/10 17:31:31    Page 103 of 108

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

Information about the subject property was obtained from public records using the County's websites, and, if a reasonably recent listing of the property was detected, from Multiple Listing data. This information included the age of the improvements, the last date of sale, the tax account number and legal description contained in these records, physical characteristics, including square foot information and room count, the assessed valuation of the land and the improvements, current real estate taxes and zoning information. Maps showing the subject site and the subject market area were examined and prepared for inclusion in the appraisal report.

A physical inspection of the subject property was made, including both the exterior and interior of the subject dwelling, and an analysis was made of the neighborhood, site and improvements. This inspection and analysis included the consideration of any known factors that could be expected to have an impact on the value of the subject property. Although due diligence was exercised, the appraiser is not an expert in matters such as pest control, structural engineering, hazardous substances or environmental hazards, and no warranty is given as to these elements.

The subject improvements were measured and sketched, and the pertinent square foot areas of the improvements were calculated. Personal property was not included within the estimate of value.

An analysis was made of the subject real estate market and of available market/sales data, utilizing Clark County Assessors Records and Multiple Listing data. Those sales considered to provide the best indication of the market value of the subject property were selected and compared to the subject in the Sales Comparison Analysis. Information about the comparables was verified, including pertinent financing information relating to the transaction, using the named sources.

Dollar adjustments were made to each of the comparable properties, reflecting estimated market reaction to those items of significant variation between the subject and comparable properties. If a significant item in a comparable property was superior to, or more favorable than the subject property, a minus (-) adjustment was made to the comparable, thus reducing the indicated value of the subject in comparison to that comparable; if a significant item in a comparable was inferior to, or less favorable than the subject, a plus (+) adjustment was made, thus increasing the indicated value of the subject.

Further analysis was made, considering such factors as the comparables' relative proximity to the subject property, recentness of sale and overall similarity to the subject property, in order to reconcile to the final estimate of the value of the subject property by the Sales Comparison Approach to value.

The appraisal report was prepared, together with attached exhibits, and the completed appraisal report was delivered to the client, which constituted completion of the assignment.

THIS IS APPRAISAL IS PRESENTED IN A SUMMARY REPORT.

DIGITAL PHOTOS AND SIGNATURES
All digital photos are originals and have not been altered or enhanced in any way.

This report has been signed with my digital signature. The appraiser has taken the necessary steps needed to ensure the security of this appraisal. In this particular case, the lender was not provided with a computer file of the appraisal report that could be accessed by the appraisal program used by the appraiser. However, the lender has either received the appraisal report in a .PDF format or has received two hard copies (printed on paper) of the appraisal report, either one which upon receipt shall be considered delivered at that time. Therefore, it is the appraiser's opinion that there is no security risk involved with this report.

PURPOSE - The purpose of this appraisal is to provide an opinion of market value, as defined herein, of a fee simple title of the subject, and to provide sufficient and supportable data for legal proceedings and settlement. This opinion of market value is to be used solely by the client. The function is to provide an opinion of value for legal proceedings and settlement purposes of the client.

Appraiser Name   B. Kent Vollmer                                    Supervisor Name

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

| Borrower | Randall and Teresa Fitzgerald | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6960 Schirlls St. | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

INTENDED USERS - The Intended Use of this appraisal and appraisal report are as stated in the report form as follows: "The intended user of this appraisal report is the client". No other intended users have been identified to the Appraiser and none are assumed. Pursuant to USPAP SR1-2.a, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

Use of this appraisal and appraisal report by other users is not intended by the appraiser. Unless otherwise identified by the Client as being an Intended User, all other third parties are considered to be unintended users, including but not limited to the borrower in the pending loan transaction, other mortgage lending institutions and other governmental agencies not involved in the mortgage lending process. Specifically, any potential buyers or outside lenders contemplating purchase or mortgage activity on this property are urged to seek a separate opinion of value from a competent and duly licensed/certified appraiser. Any additional requests in this assignment by third parties must be requested in writing and may either be declined or if performed may be subject to additional billing to recover the costs associated with such requests.

INTENDED USE - The Intended Use of this appraisal and appraisal report as stated in the report form is "for the client to evaluate the property that is the subject of this appraisal for legal proceedings and settlement". No other intended uses have been communicated to the Appraiser and none are assumed.

Pursuant to USPAP SR1-2b, this appraisal is developed strictly and solely in accordance with those intended uses communicated to the Appraiser at the time of engagement.

If a third party to this appraiser-client relationship desires an appraisal for their own uses, they are urged to seek one developed specifically for their uses from a competent and appropriately licensed/certified appraiser. The Appraiser in this assignment cannot accept responsibility for uses not otherwise identified at the time of engagement. Use of this appraisal report for other purposes is therefore not intended by the appraiser.

USE: Reading the appraisal report or possessing the report does not constitute use. Relying on the appraisal report to understand how the appraiser developed the opinion of value does not constitute use. Use means relying on the appraisal report to make a decision or to take an action.

This report may contain comments, conditions, and/or certifications added by the signing appraiser including, but not limited to, this Supplemental Addendum. These items shall supersede and take precedence over all other language, requirements, or conditions contained in any preprinted and/or third-party forms or documents included in, or incorporated by reference into, the appraisal report.

OWNERSHIP OF INTELLECTUAL PROPERTY AND/OR DATA - American Real Estate Appraisal expressly retains all right, title, and interest in all patents, trademarks, trade names, trade secrets, software, data, conclusions, opinions, valuations, or other information included in, arising out of, or in any way related to this appraisal or the provision of appraisal services to the named client and/or Intended User. The report and information supplied by the staff and/or agents of American Real Estate Appraisal is a culmination of intellectual education, professional experience, personal investigation, and know-how, which shall at all times remain the property of American Real Estate Appraisal. No person shall be entitled to break down, strip out, mine, or disseminate any component or part of this report, including, but not limited to, any conclusions, valuations, opinions, or other data compilations herein. Notwithstanding, the Intended User as defined above may use this appraisal report and the contents herein for the limited purpose and use identified above.

Appraiser Name   B. Kent Vollmer                              Supervisor Name

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.   2010020321
Case No.

Borrower   Randall and Teresa Fitzgerald

| Property Address | 6960 Schirlls St. | | | | | | |
|---|---|---|---|---|---|---|---|
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | |

ADEQUACY OF SCOPE - The appraiser has proposed and the Client has agreed (prior to submission) that the level of development and reporting detailed above is sufficient to address the substantive criteria of a reasonable Scope of Work within the context of the Intended Users and Intended Use. With the exception of revisions made for the purpose of correction of any errors, the Appraiser does not anticipate further development or reporting requirements for this assignment. Any additional requests from the Client or any third parties may represent a change in the assignment conditions and require the development of a new assignment. With the exception of corrections of any errors or omissions, any additional requests must be made in writing and may be subject to additional billing to recover the costs associated with the additional work.

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, complete visual observation of the interior and exterior of the subject property, its neighborhood, and selection of comparable sales within the subject's market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

The appraiser is not a home inspector and the appraisal report is not a home inspection. The appraisal report cannot be relied upon to disclose hidden defects that are not apparent from a visual observation of the surfaces of the subject property from standing height. The testing of systems (structural, electrical, mechanical, heating, cooling, plumbing) and components (such as appliances, fixtures, doors, windows, etc.) lies outside of the scope of this appraisal assignment.

This report is not intended for use by the client for the purpose of identifying any adverse conditions in the subject's systems and components which might be revealed by any inspections by licensed professionals in any relevant field. This appraisal does not guarantee that the subject property is free of undetected problems, possible defects or environmental hazards that could exist.

Complete visual inspection of the interior areas of the subject property: A visual observation from standing height of the accessible areas and unobstructed, exposed surfaces of the living area without removal of personal possessions. It includes the visual observation of attached automobile storage, if any, as well as of any attached accessory buildings judged by the appraiser to have contributory value.

Complete visual inspection of the exterior of the subject property: A visual observation of the unobstructed, exposed, and accessible perimeter of the residential improvements from standing height. It includes the visual observation of detached automobile storage, if any, as well as of any detached accessory buildings judged by the appraiser to have contributory value.

Living area: Living area is defined as legal, finished, permanently heated, living space contiguous with other living area and regarded by a typical purchaser as being habitable and as having utility. This appraisal report attempts to conform to The American National Standards Institute ANSI Z765-2003, approved November 2003.

Estimated marketing time is based on current and/or past studies of sales activity provided by the Las Vegas Multiple Listing Service, and the appraiser's knowledge of the property's market. The estimate assumes proper pricing and marketing. The estimated marketing time is typically less than three months but could be up to six months.

This appraisal utilizes digitized electronic signatures that prevent the altering of the appraisal report in any manor with the removal of the appraiser's signature. These signatures are secure and irrevocable, binding the appraiser(s) to the accuracy and completeness of the appraisal report.

ADDITIONAL COMMENTS

•The comments in this addendum are intended to expand on the information provided on the form appraisal. It is our desire to insure that the client fully understands the appraisal process and methodology as well as the facts pertinent to the valuation of the subject property. The expanded narrative provided in this addendum is an effort to clarify those areas of the report that we have found that cause the most concern to our clients.

•In the market grid, ROOM COUNT contains the adjustments for bedrooms and bathrooms. The next line, GROSS LIVING AREA (GLA), contains the adjustment for GLA and the total room count. Note that any extreme in living area and/or room count may result in a functional utility adjustment under the separate line UTILITY.

•The sketch of the subject property is primarily to assist the reader (reviewer) in visualizing the property as we have seen it from our on site inspection. The floor plan provided is not intended to duplicate the builder's plan to scale, but rather to be a guide to the reviewer in evaluating normal traffic patterns within the property.

| | |
|---|---|
| Appraiser Name   B. Kent Vollmer | Supervisor Name |

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.    2010020321
Case No.

Borrower    Randall and Teresa Fitzgerald

| Property Address | 6960 Schirlls St. | | | | | | |
|---|---|---|---|---|---|---|---|
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

•Areas of limited access (i.e. attic, crawl spaces, eaves, etc.) may not necessarily be inspected due to limited access. For purposes of this appraisal, a condition for any such applicable area is determined after a visual inspection of related/adjoining parts of the structure. An appraiser is a trained and experienced observer of real estate, but recognizing, detecting, or measuring contamination is often beyond the scope of the appraiser's expertise. Remediation and compliance cost estimation involves knowledge and experience beyond that of appraisers.
•This inspection is not intended to serve as a termite inspection, although any problems observed are noted in the appraisal. The buyer or homeowner should contact a qualified inspection professional for this service if so desired.
•Please be advised that the estimated marketing time for the subject is typically up to three months and sometimes up to six months.
•No items of personal property are included in the appraised value of the subject.
•In the preparation of this appraisal some or all of the photographs may be digitized. In no case have the photos been altered of manipulated in any manner. All photos are accurate representations of the properties.
•The Americans with Disabilities Act (ADA) became effective January 26, 1992. This inspection does not represent a specific compliance survey or analysis to determine whether or not the physical aspects of the improvements meet the ADA accessibility guidelines. This inspection in no way suggests ADA compliance. Since compliance expectations can change with each owner's financial ability to cure deficiencies, the value of the subject does not consider possible noncompliance.

Opinions or estimates expressed herein represent our best judgment but should not be construed as advice or recommendation to act. The appraiser should be contacted with any questions before this report is relied upon for decision making. This appraisal represents an estimate of value based on an analysis of information known to us at the time the appraisal was completed. I do not assume any responsibility for incorrect analysis because of incorrect or incomplete information, which was provided to the appraiser. If new data or documentation is provided to the appraiser, the value in this report is subject to change based on the significance of this new data.

ADVERSE ENVIRONMENTAL CONDITIONS

The existence of any hazardous material, including but not limited to, Urea formaldehyde foam insulation, radon gas, asbestos products, lead based paints or toxic waste contaminant, which may or may not be present in the subject improvements, on the site or in the immediate vicinity of the subject has not been observed by the appraiser. The appraiser has no knowledge of the existence of such hazardous material in or on the property.

It should be noted that homes built before 1978 may contain lead based paint and the client should be advised of its possible existence. Also, the EPA suggests that all homes be tested for radon gas. If the client has a concern then a qualified expert should be contacted.

Homes clad with EIFS (Exterior Insulation and Finish Systems) a.k.a. synthetic stucco or Dryvit have a very strong tendency to retain moisture between the sheathing of the home and the finish system. The design of EIFS, unlike other systems (brick, stone, siding, etc.), does not allow the moisture to drain out. The moisture can sit in contact with the sheathing for a prolonged period and rotting may result. Damage can be serious. Left unchecked, it can affect the structural components of these homes.

Radon gas can be found in any home whether it is new, old, on slab, a crawl space, or a basement. Radon is odorless, colorless, and is a radioactive gas produced by the breakdown of uranium in soil, rock, and water. It typically rises up through the ground and into a home through holes in the foundations. It is the radiation given off by radon and its decay products that is the health risk concern. These decay products become attracted to almost any object including airborne particles such as dust. The Surgeon General has warned that radon is the second leading cause of lung cancer in the United States. The U.S. EPA has established an "action level" for indoor radon at 4 pCi / L (pico curies per liter of air). If a home has a radon level of 4 pCi / L the situation should be remedied. The only way to know if a problem exists is to have the property tested.

Soils known to be unstable (shrink or swell), exist in the Las Vegas valley area. This type of soil condition causes the soil around the foundation of a dwelling to expand and contract due to changes in its water content. Indications of this problem include:

•Foundation walls that are buckled or bowed.
•Doors and windows that stick or don't open.
•Cracks in foundation walls.
•Cracks in exterior walls.
•Cracks in interior walls and ceilings.
•Sunken or buckled interior concrete floors.
While the appraiser has made a diligent observation of the subject property and none of these indicators were noted, the only way to insure that this problem is not present is to have the property tested.

| Appraiser Name    B. Kent Vollmer | Supervisor Name |
|---|---|

American Real Estate Appraisal
**COMMENT ADDENDUM**

File No.   2010020321
Case No.

Borrower  Randall and Teresa Fitzgerald
Property Address  6960 Schirlls St.

| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 |
|------|-----------|--------|-------|-------|----|----|-------|
| Lender/Client | Randall and Teresa Fitzgerald | Address | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

NEIGHBORHOOD MARKET CONDITIONS

There is currently an over supply of homes for sale in the subject's market which has resulted in a "depressed market" and as a result homes are generally exposed for a moderate period of time before any offers for purchase are made.  Currently few are made in excess of the asking price.  As a result there are a sufficient number of recent transfers from which to select comparable sales data.  This results in the use of market data that might require significant adjustments in order to compare to the subject property.

Current interest rates continue to remain at normal levels.  Discount points and closing costs are typically negotiated between buyers and sellers and it is not uncommon for the Seller to pay some of these costs (between one and three percent of purchase price).  A variety of loan packages are available including both conventional and government endorsed mortgages.

HIGHEST AND BEST USE

Highest and Best Use is that reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal.  Alternatively, it is that use, from among legally permissible, physically and reasonably possible uses, found to be economically and financially feasible, and which results in the most profitable of the alternatives.

Given the current zoning, location and size of the site, surrounding land uses (recognizing the principle of conformity) and development characteristics of the market area, our opinion of the highest and best use of the property "as vacant" is for single family residential development.  Further, the existing use/improvements exceed the value of the site vacant; therefore our opinion of the highest and best use of the site "as improved" is for continued single family residential use.

COMMENTS ON THE SALES COMPARISON ANALYSIS

Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen what are believed to be the best comparable sales available from a thorough and extensive search for comparable sales data in the subject's market.  The sales selected for use in the analysis are considered to be the best indicators of value for the subject property.  Other sales reviewed would have required excessive adjustments and were not considered to be as reliable as the sales chosen.

Adjustments within the Sales Comparison Analysis are based on the market extraction method, generally employing the matched pair process, and not specifically based on cost figures.

Every effort has been made to conform to FHLMC/FNMA Guidelines and in most cases, an even stricter interpretation found common to most investors in the secondary market.

To the best of the appraisers knowledge, all comparable sales were sold without special or creative financing or excessive sales concessions.  Any excess seller concessions have been adjusted appropriately using "cash equivalency" to reflect accurate market response.  Closing cost paid by the sellers of the comparable properties are equivalent to typical financing terms offered by third party institutional lenders in the local market.  In the appraiser's opinion, these sales represent typical market financing transactions.  The sales prices are not considered to be inflated due to special or excessive financing concessions.  The indicated values of the comparable sales reflect the value of the subject real estate and include only those sellers closing cost normally paid by tradition or law in the market area.

Gross living areas shown for the comparable sales are estimates based on information form one or more of the following sources: Multiple Listing Service (MLS), county/city tax records, real estate agents, homeowners, builders, appraisers, interoffice data bank or actual measurements.  Slight variations in size will have no effect on the estimate of value.  All comparable sales are settled to the best of the appraiser's knowledge.  Verification is with county records, and/or Realtor.

Appraiser Name  B. Kent Vollmer          Supervisor Name

American Real Estate Appraisal
## COMMENT ADDENDUM

File No.    2010020321
Case No.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Borrower | Randall and Teresa Fitzgerald | | | | | | | |
| Property Address | 6960 Schirlls St. | | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89118 | |
| Lender/Client | Randall and Teresa Fitzgerald | Address | | 6960 Schirlls St., Las Vegas, NV 89118 | | | | |

FINAL RECONCILIATION

There is insufficient data available in the subject market to derive a gross rent multiplier or a gross monthly rent multiplier. As such, the methodology of the Income Approach was not developed to estimate the market value of the subject property. Furthermore, the Income Approach is not a generally accepted method for estimating the value of owner occupied single family residences in the subject's market.

Although the Cost Approach may not be required for the client specified in this report, the Appraiser is bound by the Uniform Standards of Professional Appraisal Practice (USPAP), which may or may not require the utilization of the Cost Approach for the specific subject property of this report. If the Appraiser has determined that the Cost Approach is necessary to produce a reliable and credible appraisal report than it has been included and supporting documentation is contained in the Appraiser's work file and summarized in the Cost Approach section of this report. If the Cost Approach was not considered necessary to produce a credible and reliable appraisal due to the age of the property and limitations in determining accrued depreciation, then the lack of inclusion of the Cost Approach does not result in departure from the USPAP.

Of the three traditional approaches to value, only the Sales Comparison Analysis has been applied. When sufficient data is available, the methodology of the Sales Comparison Analysis yields the most convincing indication of value for a single family residence in the subject's market area. Although substantial adjustments may be applied to the sales prices of the comparable properties, the data in this analysis is considered to be of sufficient quality and quantity to present a convincing estimate of value. Therefore, most weight is placed on the Sales Comparison Analysis in estimating the market value of the subject property as of the effective date of the appraisal. The value estimated by the Cost Approach, if used, is considered to be supportive.

COMPLIANCE TO INDUSTRY STANDARDS
The appraiser's analysis, opinions and conclusions were developed in accordance with and in conformity to the Uniform Standards of Professional Appraisal Practice (USPAP) standards rule 2-3.

COMPETENCY OF THE APPRAISER
In accordance with the Competency Rule of the Uniform Standards of Professional Appraisal Practice (USPAP), the appraiser certify that they have the education, experience and knowledge sufficient to appraiser the property being valued in this report. No one other than the appraiser signing the report has provided significant real property appraisal assistance in completing this report unless otherwise indicated.

SELF CONTAINMENT
This appraisal is intended to be a summary report with all the necessary information to enable the reader to understand the Appraisers opinion and follow the appraisers reasoning. No third party reports have been presented to, or reviewed by this appraiser, IE; sales contracts and addenda, pest reports, soil reports, title reports, structural, well, septic or roof reports (if applicable).

| | |
|---|---|
| Appraiser Name  B. Kent Vollmer | Supervisor Name |